**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**JOHN DOE,**

                    **Plaintiff,**

          -against-

**THE BOARD OF DIRECTORS OF NEW YORK**
**UNIVERSITY, EZRA SACKS, and CRAIG JOLLEY,**

                    **Defendants.**
-------------------------------------------------------------------X

            **Civil Action No:**

            **COMPLAINT**

       Plaintiff John Doe, by and through his undersigned attorneys Nesenoff & Miltenberg LLP, hereby alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

       1.    This is an action for damages against New York University ("NYU" or the "University"), Ezra Sacks ("Defendant Sacks"), and Craig Jolley ("Defendant Jolley") (NYU, Sacks, and Jolley are collectively referred to as "Defendants") for their acts and omissions condoning and/or failing to adequately address severe, pervasive, and objectively offensive student on-student gender-based harassment, in violation of state and federal law

       2.    Plaintiff matriculated to the Tisch School at NYU in Fall 2018 and, until Spring semester his senior year (2022), he was a standout student, receiving top grades and numerous extracurricular opportunities and accolades.

       3.    Throughout his life, Plaintiff has always been passionate about film production and dreamed of working in the film industry. Plaintiff believed it was an honor and a privilege to be accepted to the Tisch School at NYU and upon acceptance, was looking forward to making the

most of his college experience by not only participating in his classes but by getting involved in any and all film projects and extracurricular activities available to him.

4.      His goal, as with most aspiring film majors, was to learn as much as possible from the esteemed faculty at NYU, as well as his fellow classmates, guest lectures and professional film makers.  Students at the Tisch school rely not only upon the formal education they receive to prepare them for their post-graduate career, but also the connections they make and the portfolio they are able to compile.

5.      Unfortunately, due to Defendants' unlawful conduct, as explained further below, Plaintiff was deprived of the full benefits of his educational experience and suffered severe reputational, mental, emotional, physical and economic harm.

6.      In or about April 2022, a then-anonymous group of NYU students created, updated, and/or shared to the NYU community a Google spreadsheet accusing various male NYU students/faculty of sexual misconduct (the "Blacklist"). One entry on the Blacklist falsely and baselessly accused Plaintiff of criminal sexual misconduct

7.      Upon information and belief, the Blacklist was created and disseminated specifically for the purpose of encouraging female and gender non-binary students to anonymously publish allegations of purported sexual misconduct against men. On information and belief, the Blacklist was publicly accessible online, including by scanning a QR code that was conspicuously placed, *inter alia*, on the NYU campus.

8.      The QR codes placed by students around the NYU campus were employed by NYU as TA's (teaching assistants) who were "on the clock" at the time they posted the QR codes.

9.      On information and belief, participants interested in contributing to the Blacklist were invited to publish their allegations without providing corroborating evidence or any means

of determining/ensuring the credibility of the contributors (or the accusations themselves).

10.     The statements published in the Blacklist about Plaintiff were abusive, vulgar, entirely false, damning to Plaintiff's reputation, and extremely destructive to his mental health and well-being.  On information and belief, these libelous statements were then repeated orally by some NYU students on campus and/or at NYU-sponsored events.

11.     As a result of the Blacklist, Plaintiff was subjected to severe harassment by other students, with long-lasting, devastating results.  NYU had knowledge about the Blacklist and about Plaintiff specifically being named on the Blacklist and further harassed as a result thereof, yet did virtually nothing to address the harassment, prevent its recurrence, or redress its effects.

12.     Specifically, Plaintiff spoke with at least four (4) members of the NYU staff and faculty about the Blacklist and the effect it was having on his scholastic success and his mental health.[1]  All four (4) were "mandatory reporters" under NYU's Title IX policies and all four (4) failed to properly act or report the harassment, and the University failed to conduct an investigation or otherwise take reasonable steps to remediate the situation.

13.     Not only did NYU fail to intervene and investigate the Blacklist and resultant harassment faced by Plaintiff, but NYU's knowing, and deliberate inaction functionally facilitated the further/continued dissemination of the Blacklist, causing additional and escalating harm to Plaintiff.

14.     As of the date of this filing, the Blacklist is still available online for viewing. Additionally, new entries are continuously being added to the Blacklist and, upon information and belief, the list of administrators of the Blacklist has been increased, allowing more individuals the ability to accept the anonymous posts and republish the Blacklist.

---

[1] The members of the faculty and staff to whom Plaintiff spoke about the situation include but is not limited to Gizelle Sanchez, Craig Jolley, Ezra Sacks and Oliver Davis.

15.     As a result of NYU's deliberate indifference to student-on-student gender-based harassment, Plaintiff's mental health suffered tremendously, and his ability to participate in film projects both on and off campus and extracurricular activities on campus was impeded, causing immediate and long-term damage to his ability to gain experience in the film industry and make meaningful contacts within the industry – the main goal of pursuing an education at the Tisch School at NYU.  Many would argue that one of the main goals of attending the Tisch School is to network and meet potential contacts.  In fact, while addressing the graduating class in 2022, Adam Sandler focused on the importance of networking while in college.

16.     As a result of NYU's actions/failure to act, Plaintiff suffered from PTSD, depression, self-harm, and suicidal ideation, as well as a downslide in his academic performance and related educational and career opportunities.  As such, Plaintiff seeks relief in this action under Title IX of the Education Amendments of 1972; Violation of New York Executive Law Section 296(4)); Violation of New York Civil Rights Law Section 40-c; Breach of Contract, Covenant of Good Faith and Fair Dealing; Intentional Infliction of Emotional Distress, Negligence.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

18.     This Court has personal jurisdiction over Defendants on the grounds that Defendants either worked or resided in the Southern District of New York.

19.     Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants work in this district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## THE PARTIES

20.     Plaintiff John Doe is a natural person and resident of the State of New York.

21.     Defendant New York University is an elite private University located in New York, New York. Upon information and belief, NYU receives    federal funding for research and development. The Tisch School of Arts ("Tisch School" or "Tisch") is a department within the NYU educational system offering, *inter alia*, a degree in film and media.

22.     Upon information and belief, New York University operates under a charter granted by the New York State Legislature in 1831 as amended from time to time (the "NYU Charter"). The NYU Charter places the institution under a Board of Trustees -- namely, the Board of Trustees of New York University.

23.     Defendant Ezra Sacks ("Defendant Sacks") is and was at all relevant times the Chair, Undergraduate Film and Television at the Tisch School at NYU.

24.     Defendant Craig Jolley ("Defendant Jolley") is and was at all relevant times the Direct of Student Conduct at NYU.

### FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A. Plaintiff Experienced a Hostile Environment and was the
   Victim of Intense Bullying as a Result of the Blacklist**

25.     Plaintiff began his college career at the Tisch School at NYU in the Fall of 2018.

26.     The Tisch School, the performing, cinematic and media arts school of NYU, was founded in 1965 and has become one of the foremost leaders in training future artists and filmmakers.

27.     Attending college at the Tisch School was the start of Plaintiff's formal advanced education in film making and Plaintiff began his college career with the intentions of taking advantage of all that the Tisch School had to offer.

28.     During his first few years at the Tisch School, Plaintiff was thriving.  He was doing well in his classes, was respected by his professors, and his hard work and abilities provided him

with many opportunities to work on projects by both fellow students and outside artists that utilized

exceptional Tisch School students on their films, to provide them with experience and to foster a

mentor/mentee relationship.

29.     In the Spring of 2022 (Plaintiff's senior year, and arguably the most important year

to showcase his talent and all he learned during his time at the Tisch School), however, Plaintiff's

opportunities to work on films and complete his final film project suddenly diminished.

30.     On April 5, 2022, non-party IW[2], a female friend of Plaintiff's, notified him that

there were rumors going around that he was a rapist.   She told Plaintiff about the Blacklist and

showed it to him. It was at this time that Plaintiff first found out that he had been falsely and

baselessly accused of criminal sexual misconduct via the anonymous spreadsheet.

31.     On information and belief, the Blacklist was created as a Google spreadsheet, and

was initially publicly available for anyone to view. Further, posters containing QR codes[3], which

enabled anyone with a smartphone to access the Blacklist easily and directly without even having

to type in a web address, were posted around campus, including in the women's bathrooms (but,

on information and belief, not in the men's bathrooms).  The QR codes made list accessible to the

public at the click of a button.

32.     As a result of the Blacklist, Plaintiff was no longer a sought-after asset to assist on

films.  He became depressed, experienced self-harm and suicidal ideation, and was diagnosed with

PTSD. He was concerned about graduating on time and extremely worried about his future career

prospects.  One of his classmates told him people were referring to him as Harvey Weinstein.

33.     Plaintiff later learned that that Blacklist was authored by non-party VA ("Non-Party

VA") and consisted of anonymous unsubstantiated allegations about himself, and other male

---

[2] To protect the privacy of non-parties, all non-parties are referred to by their initials.
[3] A QR code is a type of barcode than can be "read" by, inter alia, a smartphone camera.

members of the NYU student body.  He further learned that the allegations were submitted     by unidentified     parties, including     some of anonymous students.

### A. Plaintiff Was Unsuccessful in Removing the Blacklist and Having a Public Retraction Issued

34.    On or about April 3, 2022, Plaintiff, fearful of disclosing his identity, emailed the author of the Blacklist under the pseudonym Alex Kaufman, explaining the harm that the Blacklist was causing him and the other victims named therein.  They communicated via email for months, but despite Plaintiff pleading with the author to remove the false allegations from the Blacklist, the author refused to do so.

35.    Moreover, the author of the Blacklist vowed to continue to republish and disseminate the Blacklist without retraction or corrections.

36.    In April 2022, as a result of being falsely, anonymously accused of criminal sexual misconduct via the widely disseminated Blacklist, Plaintiff suffered the following adverse consequences:

   a. At the suggestion of the head of the Tisch School Student Council, he was removed from a classmate's film shoot;

   b. An article was published in WSN about the Blacklist, drawing more attention to its existence;

   c. Memes about the Blacklist started circulating on campus, drawing more attention to its existence;

   d. A student from another university, who had seen the Blacklist, began stalking Plaintiff and publicly harassing him based on the entry in the Blacklist.  She even appeared at group projects that Plaintiff believed would be a safe space and verbally attacked him in front of other students, instilling fear and trepidation in him every time he left his home;

   e. Plaintiff stopped receiving offers from alumni of NYU to work on professional projects, including commercials and music videos;

   f. Plaintiff was not accepted to work on professional gigs which, previously, he had been constantly booking;

   g. Plaintiff was kicked off of films that later won prestigious awards at top film festivals that would have bolstered his career;

h.  Students, including former friends ostracized Plaintiff, pretending they couldn't hear him when he spoke, ignored messages, changed seats if he sat near them and walked the other way to avoid him; and

i.  Plaintiff was denied the opportunity to work on a film project shooting at another University because, on information and belief, an NYU student told the project manager that Plaintiff had done "horrible things" and referenced the Blacklist.

37.  Around this time, Plaintiff learned from another NYU student, N.F., that the Blacklist was "the talk of the town" and was being discussed on and off campus, including during film shoots and film production meetings.

38.  N.F. told Plaintiff that another NYU student, L.V., told everyone on a set she was working on that Plaintiff "raped her and all of her friends".  According to N.F., members of the NYU Student Council were present and encouraged L.V. and others in their efforts to disparage and defame Plaintiff, doing nothing to diffuse or deter the situation.

39.  In reality, Plaintiff has never had *any* kind of sexual contact with L.V., nor her friends let alone criminal sexual contact or rape.  The accusations were completely fabricated and false. On information and belief, L.V.'s false claims were based upon the entry about Plaintiff in the Blacklist.

**B.  The University Failed to Take Plaintiff's Complaint
    Seriously and Refused to Conduct and Investigation**

40.  Towards the end of the Spring 2022 semester, Plaintiff was so distraught he was unable to attend classes and he fell behind in his assignments.  He was depressed and suicidal and was diagnosed with PTSD as a result of the effect of the Blacklist on him.

41.  However, despite Plaintiff's efforts to navigate and mitigate the serious and escalating harm caused by the Blacklist, the bullying continued, and Plaintiff received no help from the University in investigating the Blacklist or its creators/contributors, nor seeking to limit its reach or remediating its damaging effects.

42.     On information and belief, no NYU students have faced any consequences from the University for their participation in creating/sharing the list or harassing other students based upon it.

      **a.**  **The University Had Actual Knowledge of the**
              **<u>Blacklist and Failed to Act</u>**

43.     There is no question that NYU was aware that Plaintiff was the victim of gender-based harassment and bullying and failed to take reasonable steps to protect Plaintiff and provide a safe environment for him.

44.     In April 2022, Plaintiff reported the gender-based harassment to numerous members of the faculty and staff at NYU who were/are mandatory reporters under NYU's Title IX policy, yet no formal investigation was ever commenced.

45.     The first report Plaintiff made was to NYU Campus Safety on April 7, 2022. Plaintiff was thereafter contacted by Gizelle Sanchez, Lieutenant, Investigations and Victim Services at Campus Safety, and Plaintiff and Sanchez met via zoom to discuss the defamatory and harassing conduct lodged against Plaintiff and the effect it had on his mental health.

46.     Sanchez referred Plaintiff to various resources for mental health assistance/victim's support but did not seem to be pursuing the matter otherwise.

47.     Between April 7, 2022 and April 14, 2022, Plaintiff had several more email exchanges with Sanchez.  In the email exchanges, Sanchez assured Plaintiff that she would continue to monitor the situation and proceed to investigate the situation.  Sanchez further stated that she would try to find the source of the Blacklist.

48.     On or about April 11, 2022, NYU formally acknowledged the existence of the Blacklist and issued a statement in response (the "NYU Statement").

49.     The NYU Statement was sent by email from NYU Student Affairs and stated as

follows:

> To the NYU Film Student Community
>
> The Tisch School has recently become aware of a list that has been circulated among film students that contains serious allegations by students against other students.
>
> For its part, NYU is committed to promoting an environment where all members of our community are safe, and to addressing issues of sexual misconduct, harassment, and other forms of misconduct.
>
> To that end, we have long maintained policies and procedures that are designed to address instances of misconduct with fairness; that rely on thorough investigation; that provide resources and support to the parties involved; and that seek an impartial outcome.
>
> This list, though, is another matter.  We understand the desire for students to share concerns with each other.  When those aspirations result in public anonymous claims, however, there are several challenges:  it places significant limitations on the actions that NYU can take to address any potential misconduct; it makes it all but impossible to provide support to those involved; and all parties involved are deprived of impartiality and process to which they should be entitled.
>
> For all these reasons, we want to specifically encourage members of our community to avail themselves of the reporting options available at NYU.  And we want to reiterate the support options for anyone impacted by the circulation of this list.
>
> A list of resources is included below.
>
> *Title IX/Office of Equal Opportunity (title9@nyu.edu)
> *NYU Bias Response Line (bias.response@nyu.edu)
> *NYU Wellness Exchange (wellness.exchange@nyu.edu)
> *Tisch office of Student Affairs (tisch.student.affairs@nyu.edu)
> *NYU Office of Student Conduct (student.conduct@nyu.edu)
>
> Thank you.
>
> Allyson Green
> Dean
>
> Anita R. Gupta
> Associate Dean Student Affairs

Ezra Sacks
Chair, Undergraduate Film and Television

50.     On or about April 14, 2022, Sanchez advised Plaintiff that "there is nothing that Campus Safety can do to shut down the page.  The matter has been referred to the Office of General Counsel and Student Conduct".[4]

51.     On April 14, 2022, Plaintiff emailed Defendant Jolley, Director of the Division of Student Affairs, Office of Student Conduct.  Plaintiff offered his assistance to NYU in conducting the investigation into the origin of the Blacklist by introducing Defendant Jolley to an outside contractor with the means necessary to identify the individual(s) who posted the Blacklist.

52.     Defendant Jolley should have identified the situation as violative of Title IX and should have counseled Plaintiff on his rights pursuant to NYU's Sexual Misconduct Policy or Anti-Harassment Policy.  Instead, Defendant Jolley stated, "[a]s of right now, the University does not intend to pursue disciplinary action against the organizers of the list.  NYU also does not plan to engage with external contractors on this matter at this time."

53.     Defendant Jolley should not have made that determination without conducting the proper investigation first.

54.     On April 15, 2022, Plaintiff reported the issue to NYU's Bias Response Line, under the purview of the Office of Equal Opportunity.  Plaintiff did not receive a response and had to send a follow up email.   On April 28, 2022, Plaintiff finally received a response from Oliver Davis, Assistant Director of Diversity and Inclusion in the Office of Equal Opportunity, notifying Plaintiff that upon review of his report, it did not fall under the jurisdiction of the Office of Equal

---

[4] The Office of Student Conduct is one of the Offices named in the Student Anti-Harassment Policy as a proper department to report allegations of harassment and bullying.

Opportunity.  Davis purportedly forwarded the report to NYU's Office of Student Conduct.

55.    Around this same time frame, Plaintiff also spoke with one of his professors and mentors (a mandatory reporter under NYU's policies), who suggested that Plaintiff contact Defendant Sacks, Chair of the Media and Film Department (also a mandatory reporter), for assistance.

56.    It was obvious to Plaintiff from the start that Defendant Sacks was not interested in helping Plaintiff get the list taken down and was merely offering a proverbial "sympathetic ear" for Plaintiff to vent.  In fact, Defendant Sacks made clear his intention to do nothing about the Blacklist by only offering to speak with Plaintiff off the record, at a coffee shop off campus, rather than in his office in his official capacity, as sought by Plaintiff.

57.    On information and belief, no investigation was ever conducted by the Office of the General Counsel or the Office of Student Conduct, or any other office or department at NYU, to identify the Blacklists' creator or contributors, to have it removed from Google, or even to block access to the Blacklist on the campus internet.

58.    Although NYU did provide Plaintiff with certain academic accommodations in light of his severe bullying and mental health decline, NYU's deliberate refusal to identify/investigate the creators of the list and its overt statement that it would not discipline the students who created/contributed to the list, only emboldened those students and other bad actors in their continued gender-based harassment and bullying.

59.    On information and belief, NYU's decision not to pursue disciplinary action or make an attempt to help take down the list was made without the University even conducting a *pro forma* investigation.

60.    As a result of NYU's refusal to act, Plaintiff was forced to complete his senior year

in an extremely hostile environment, subjected to bullying, false accusations, and harassment.

C.      **The University Failed to Follow its own Standards and Guidelines**

61.     In accordance with the NYU Non-Discrimination and Anti-Harassment Policy and

Complaint Procedure for Students (the "Anti-Harassment Policy") conduct violative of the policy

is defined as follows:

>  **DEFINITIONS**
>
>  ***Prohibited discrimination*** is adverse treatment of any student
>  based on actual or perceived race, sex, gender and/or gender
>  identity or expression, color, religion, creed, age, national origin,
>  ethnicity, shared ancestry or ethnic characteristic, disability,
>  veteran or military status, sexual orientation, marital status,
>  pregnancy, citizenship status, or genetic information rather than on
>  the basis of the student's individual merit. ***Prohibited
>  discrimination*** also includes any conduct that constitutes illegal
>  discrimination under the law of the jurisdiction in which the
>  conduct occurs.
>
>  ***Prohibited harassment*** is unwelcome verbal or physical conduct
>  based on actual or perceived race, sex (including unwelcome
>  verbal or physical conduct of a sexual nature), gender and/or
>  gender identity or expression, color, religion, creed, age, national
>  origin, ethnicity, shared ancestry or ethnic characteristic, disability,
>  veteran or military status, sexual orientation, marital status,
>  pregnancy, citizenship status, or genetic information that, from the
>  viewpoint of a reasonable person under all the relevant
>  circumstances, would create an intimidating, hostile, or offensive
>  academic or residential environment or otherwise adversely affect
>  the individual's academic opportunities or participation in an NYU
>  program, activity, or benefit. ***Prohibited harassment*** also includes
>  any conduct that constitutes illegal discrimination under the law of
>  the jurisdiction in which the conduct occurs.
>
>  Examples of actions that can constitute prohibited discrimination
>  or harassment include, but are not limited to:
>
>  • Repeated verbal abuse or use of racist, sexist, homophobic, anti-
>    Arab, or anti-Semitic slurs or hostile behavior, which could
>    include insulting, teasing, mocking, degrading, or ridiculing
>    another person or group regardless of whether the person is
>    actually a member of the group;

• Denying access to or refusing to allow an individual to participate in any program or activity or service of the University, including, for example, refusing to grant a student some expected benefit (e.g., such as a letter of recommendation) because of how an individual looks (e.g., because the individual has or lacks stereotypical physical features of a certain ethnic group or conforms or fails to conform to gender stereotypes), dresses (e.g., because the individual wears religious or ethnic attire such as a kippah, Star of David, turban, or hijab or burka), or on the basis of the individual's language (e.g., because the individual speaks a particular language or English with a certain accent), or on the basis of the individual's actual or perceived religious identity, or the individual's actual or perceived association with a religious organization or religious student club, or because that student is actually or perceived to be from a particular country or region;

* * *

• Inappropriate physical contact, comments, questions, advances, jokes, epithets, or demands based on one or more protected or perceived protected characteristics;

• Physical assault, intimidation, or stalking on the basis of one or more protected or perceived protected characteristics; or

• Displays or electronic transmission of derogatory, demeaning, or hostile materials related to one or more protected or perceived protected characteristics.

62.    The Anti-Harassment Policy further provides as follows:

### INVESTIGATION AND RESOLUTION PROCEDURES

Where allegations are made against students for possible violation of this policy, the matter will be investigated and resolved in accordance with the University Student Conduct Policy,

63.    The University Student Conduct Policy provides in relevant part as follows:

### I.    PROHIBITED CONDUCT

The following behavior is prohibited for New York University students and all student organizations:

* * *

## A.  *THREATENING   AND ABUSIVE  BEHAVIOR*

1.  Engaging in or threatening to engage in behavior(s) that, by virtue of their intensity, repetitiveness, or otherwise, endanger or compromise the health, safety, or well-being of oneself, another person, or the general University community. This includes, but is not limited to, **threatening, tormenting, mocking, intimidating**, maliciously or inappropriately ridiculing another's work or comments beyond the scope of scholarly inquiry, and exploiting known psychological or physical vulnerabilities or impairment.

2.  Abusive behavior toward a University employee or agent acting in performance of their duties.

3.  Physical violence, actual or threatened, against any individual or group of persons.

4.  Unjustified abuse, neglect, or violence toward an animal.

* * *

## B.  *DISCRIMINATION AND  HARASSMENT*

1.  Engaging in behavior

prohibited under the NYU Non-Discrimination and Anti- Harassment Policy for __Students or for Employees.

* * *

### I.   INFORMATION TECHNOLOGY

1.   Engaging in conduct as prohibited under the NYU Policy on Responsible Use of NYU

Computers and Data.

2.   Engaging in conduct as prohibited under the NYU Policy on Appropriate Use of Email.

### J.   SEXUAL MISCONDUCT

1.   Engaging in behavior prohibited under the NYU Sexual Misconduct, Relationship

Violence, and Stalking Policy. Note: procedures for resolving allegations of sexual misconduct are also defined under that policy. Allegations of conduct that could constitute a violation of both this University Student Conduct Policy and the Sexual Misconduct, Relationship Violence, and Stalking Policy will be administered according to the latter policy.

K. **VIOLATIONS OF OTHER POLICIES**

1. Engaging in behavior as prohibited under other established NYU policies not otherwise cited above.
2. Failure to abide by any University policy or governmental orders issued concerning public health.

64.     The NYU Sexual Misconduct Policy defines Sexual Harassment as follows:

A. **Sexual Harassment**: In accordance with Title IX regulations, Sexual Harassment is defined under this policy as conduct on the basis of sex that satisfies one or more of the following:

* * *

2. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the University's education program or activity; and

* * *

E. Stalking:  Stalking occurs when a person engages in a course of conduct directed at a specific person under circumstances that would cause a reasonable person to fear for their own safety or the safety of others or suffer substantial emotional distress.

Course of conduct means two or more instances including but not limited to unwelcome acts in which an individual directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property. **Substantial emotional distress means significant mental suffering or anguish.**

65.     Plaintiff was bullied and harassed as a result of his gender.  The actions of his tormentors fall within the above-mentioned violations of the NYU Anti-Harassment Policy, Student Conduct Policy and Sexual Misconduct Policy.

66.     Pursuant  the NYU Sexual Misconduct Policy, all of the individuals to whom Plaintiff reported the harassment were mandatory reporters, meaning they were required to report the matter to the Title IX Coordinator.

67.     Specifically, the Sexual Misconduct Policy states:

Employees in a leadership or supervisory position, or who have significant responsibility for the welfare of Students or Employees, are required to report Prohibited Conduct to the Title IX Coordinator.  In addition, some employees, because of their role on campus, also have additional reporting responsibilities under the Clery Act.  These employees are called Campus Security Authorities (CSAs).  CSAs have a duty to report Sexual Assault Dating Violence, Domestic Violence, and Stalking and other Clery Act-defined crimes. This reporting helps to provide the community with an accurate picture of the extent and nature of campus crime in order to ensure greater community safety and enable campus community members to make important decisions about their own safety.  **CSAs include NYU Department of Public Safety, Student Affairs Deans and Administrators, Student Conduct Staff, Residence Life Staff, including Residence Hall Directors, Assistant Directors and Resident Assistants, Advisors to Student Organizations, Faculty Members and Staff accompanying students on NYU-Sponsored travel, Athletics Coaches and Staff and any other official with significant responsibility for student and campus activities**.  For more information, see Campus Security Authority Reporting.

(emphasis added)

68.     The Anti-Harassment Policy States as follows:

## **RESPONSIBILITIES TO REPORT**

NYU strongly encourages all members of the University community who have been victims of prohibited discrimination, prohibited harassment, or retaliation to report the conduct. In the case of incidents of prohibited discrimination and prohibited harassment alleged to have been committed against students, the student complainant or other reporting party may make a report to any of the following:

• the Office of the Chief Strategy Officer, Global Programs and University Life,
• the Director of the Office of Student Conduct and Community Standards,
• the Dean of Student Affairs, or equivalent position, of the applicable School, Portal Campus, or Study Away Site,
• or the Assistant Vice President of Office of Equal Opportunity & Title IX Coordinator.

69.     On information and belief, all of the individuals that Plaintiff reported the incidents

to were mandatory reporters and failed to act

70.     NYU's failure to follow its own guidelines and conduct an investigation constitute,

*inter alia*, gender-based harassment and misconduct against Plaintiff.  Plaintiff, and other victims

on the Blacklist were targeted because they are male. The Blacklist subjected Plaintiff to verbal

aggression, intimidation, and hostility based on his gender. The purpose of the Blacklist was to create an intimidating, hostile, demeaning, and offense learning and living environment. NYU's effective sponsorship of the gender-based harassment and defamation of Plaintiff resulted in an intimidating, hostile, demeaning, and offense learning and living environment. NYU was deliberately indifferent to the gender-based harassment, which permitted it to continue unabated.

71.     Plaintiff's ability to obtain employment upon graduation has been severely jeopardized by Defendants' wrongdoings. Plaintiff was prevented from seeking opportunities on film projects of which the rest of the Tisch School's students had access. These opportunities are the types of projects that lead to the experience needed to obtain gainful employment after graduation and were a motivating factor for Plaintiff to choose the Tisch School to obtain his undergraduate degree.  Without the opportunity to participate in projects the end of his senior year, Plaintiff was unable to build a portfolio truly representative of his capabilities.   As a result, Plaintiff's resume and portfolio are not as exhaustive as they can be.

72.     Moreover, the rumors and false allegations have followed Plaintiff after he graduated and began attempting to find full time work in his chosen profession.   In contrast Plaintiff was receiving very impressive offers of work before publication of the Blacklist which ruined his social and professional networks.

73.     In addition to the policy violations cited above, NYU's Non-Discrimination and Anti-Harassment Policy and Complaint Procedures for Students, effective date August 16, 2021 requires the University to maintain a safe environment for all students and establishes policies to investigate gender bias claims ("Student Anti-Harassment Policy"). https://www.nyu.edu/content/dam/nyu/compliance/documents/Non-Discrimination%20Policy%20for%20Students%20-%208.10.21.pdf.

74.     Plaintiff reported the gender biased Blacklist and the harassment directed at him to several employee and faculty members in compliance with The Student Anti-Harassment Policy and Sexual Misconduct Policy .  Such employee and faculty members include,  Sanchez, Defendant Sacks and Defendant Jolley    Notwithstanding the numerous complaints lodged and multiple discussions Plaintiff had with representatives of the University, NYU failed to act under both the Student Anti-Harassment Policy and the NYU's Sexual Misconduct  Policy.

75.     Moreover, despite NYU confirming to Plaintiff that there had been no conduct or Title IX complaints filed against him, ever, it has refused to issue a statement or provide Plaintiff with a letter clearly indicating that Plaintiff has never been the subject of a Title IX complaint filed against him to help him clear his name.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Violation of Title IX of the Education Amendments of 1972)

76.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

77.     Title IX of the Education Amendments of 1972 provides, in relevant part, that:

> No person in the United States shall, on the basis of sex, be
> excluded from participation in, be denied the benefits of, or be
> subjected to discrimination under any education program or
> activity receiving Federal financial assistance.

78.     Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds.  Upon information and belief, NYU receives federal funding for research and development.

79.     Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student complaints alleging any action which

would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice). Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape. *See* U.S. Dep't of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX* (2001) at 19 20,21 & nn. 98-101.

80. The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also "accord[] due process to both parties involved..." U.S. Dep't of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX* (2001) at 22.

81. A school also has an obligation under Title IX to make sure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment, which includes "alleged sexual assaults." U.S. Dep't of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX'* (2001) at 21.

82. The Defendants, in violation of Title IX, have intentionally discriminated against Plaintiff on the basis of his male sex by condoning a hostile educational environment due to knowingly permitting the dissemination of the Blacklist and posting of the QR codes to access the Blacklist on campus.

83. The anonymous students violated NYU's policy and the Defendants permitted and encouraged the prolonged gender-based harassment of and gender-based misconduct as to Plaintiff by failing to investigate Plaintiff's claims of harassment and by failing to take any measures to

have the offending students remove the list and issue a retraction of the false and defamatory statements.

84.     Moreover, the Defendants continually permitted gender-based harassment of and gender-based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said gender-based harassment and gender-based misconduct, with the consequence that Plaintiff was unfairly excluded and effectively denied equal access to NYU's resources and opportunities, thereby undermining and detracting from Plaintiff's educational experience.

85.     Plaintiff has suffered and continues to suffer from student-on-student gender-based harassment and gender-based misconduct condoned by the University Defendants.

86.     The anonymous students engaged in a campaign of gender-based harassment and defamation by falsely labeling Plaintiff a sexual predator and by publishing the Blacklist.   The University Defendants took no action to intercede and stop the gender-based harassment and gender-based misconduct. To the contrary, in complete disregard of Plaintiff's rights, and the rights of the other victims on the Blacklist, the Defendants allowed the QR codes to be posted on campus and allowed Plaintiff to be excluded from student film projects and other opportunities available to students at NYU as a result of the publication and dissemination of the Blacklist.

87.     As a result of the Defendants' approved gender-based harassment and gender-based misconduct, Plaintiff has been subjected to severe, pervasive and objectively objectionable harassing and threatening behavior by other NYU students, believing that Plaintiff engaged in sexual assault whenever Plaintiff appeared on campus or attempted to participate in various projects.

88.     Plaintiff lodged numerous reports and complaints with NYU officials about the

gender-based harassment and defamation, but NYU has acted with, at best deliberate indifference

to, and at times apparent approval of what have been known acts of gender-based harassment and

gender-based misconduct in NYU's programs and activities.

89.     As a result of the University Defendants' approved gender-based harassment and

gender-based misconduct, Plaintiff has had his educational experience at NYU undermined and

detracted from as described above.

90.     As a result of the foregoing, Plaintiff is entitled to damages for past acts of gender-

based harassment and defamation in an amount to be determined at trial, plus prejudgment interest,

attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Violation of New York Executive Law Section 296(4))

91.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth

herein.

92.     New York Executive Law, Article 15, Human Rights Law, section 296(4) provides

in pertinent part:

> It shall be an unlawful discriminatory practice for an education corporation
> or association ... to permit the harassment of any student or applicant, by
> reason of his race, color, religion, disability, national origin, sexual
> orientation, military status, sex, age, or marital status[.]

93.     NYU, in violation of New York Executive Law, Article 15, Human Rights Law,

section 296(4), has intentionally discriminated against Plaintiff on the basis of his male sex by

condoning a hostile educational environment due to knowingly permitting the Non-Party Students

to engage in prolonged gender-based harassment of and gender-based misconduct as to Plaintiff

and permitting that gender-based harassment and gender-based misconduct in the school's

programs or activities with actual knowledge of, a deliberate indifference to and an apparent

approval of said gender-based harassment and gender-based misconduct, with the consequence that Plaintiff has been effectively denied equal access to NYU's resources and opportunities, thereby undermining and detracting from Plaintiff's educational experience.

94.     As a result of the foregoing, Plaintiff is entitled to damages for past acts of gender-based harassment and defamation in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A THIRD CAUSE OF ACTION
## (Violation of New York Civil Rights Law Section 40-c)

95.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

96.     New York Civil Rights Law section 40-c states:

> All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.

> No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

97.     NYU, in violation of New York Civil Rights Law section 40-c, has intentionally discriminated against Plaintiff on the basis of his male sex by condoning a hostile educational environment due to knowingly permitting the Non-Party Students to engage in prolonged gender-based harassment of and general based misconduct as to Plaintiff based on the false allegations in the Blacklist and permitting that gender-based harassment in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said gender-

based harassment and gender-based misconduct, with the consequence that Plaintiff has been effectively denied equal access to NYU's resources and opportunities, thereby undermining and detracting from Plaintiff's educational experience.

98.     As a result of the foregoing, Plaintiff is entitled to damages for past acts of gender-based harassment and defamation in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursement

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract)

99.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

100.    Based on the aforementioned facts and circumstances, NYU breached express and/or implied agreement(s) with Plaintiff.

101.    NYU committed several breaches of its agreements with Plaintiff, including, without limitation to enforce its Anti-Harassment Policy, Sexual Misconduct Policy and Student Conduct Policy to provide a learning environment free of gender-based discrimination and harassment.

102.    More specifically, Defendants breached its obligations in the Sexual Misconduct Policy and Anti-Harassment Policy by failing to properly report the incidents and failing to commence an investigation.

103.    As a direct and foreseeable consequence of these breaches, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational opportunities, economic injuries and other direct and consequential damages.

104.    Plaintiff is entitled to recover damages for NYU's breach of the express and/or

implied contractual obligations described above.

105.   As a direct and proximate result of the above conduct, actions and inactions, Plaintiff has suffered psychological, emotional and reputational damages, economic injuries and the loss of educational opportunities.

106.   As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Covenant of Good Faith and Fair Dealing)

107.   Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

108.   Based on the aforementioned facts and circumstances, NYU breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with Plaintiff by intentionally discriminating against Plaintiff on the basis of his male sex by condoning a hostile educational environment due to knowingly permitting the anonymous students  to engage in prolonged gender-based harassment of and gender-based misconduct as to Plaintiff and permitting that gender-based harassment and gender-based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said gender-based harassment and gender-based misconduct, with the consequence that Plaintiff has been excluded from and effectively denied equal access to NYU's resources and opportunities, thereby undermining and detracting from Plaintiff's educational experience.

109.   Based on the aforementioned facts and circumstances, NYU  breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with Plaintiff by intentionally discriminating against Plaintiff  on the basis of his male sex by condoning a hostile educational

environment due to knowingly permitting the Non-Party Students to engage in prolonged gender-based harassment of and gender-based misconduct as to Plaintiff  based on the allegations and publication of the Blacklist which were untrue allegations and permitting that gender-based harassment and gender-based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said gender-based harassment and gender-based misconduct, with the consequence that Plaintiff has been effectively denied equal access to NYU's  resources and opportunities, thereby undermining and detracting from Plaintiff's educational experience.

110.    As a direct and foreseeable consequence of these breaches, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, psychological damages, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

111.    Plaintiff is entitled to recover damages for NYU's breach of the express and/or implied contractual obligations described above.

112.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

113.    Plaintiff repeats and re alleges each and every allegation hereinabove as if fully set forth herein.

114.    Based on the foregoing facts and circumstances, the  Defendants intentionally discriminated against Plaintiff on the basis of his male sex by condoning a hostile educational environment due to knowingly permitting the Non-Party Students to engage in prolonged gender-

based harassment of and gender-based misconduct as to Plaintiff based on the allegations contained in and the publication of the Blacklist, and permitting that gender-based harassment and gender-based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said gender-based harassment and gender-based misconduct, with the consequence that Plaintiff has been effectively denied equal access to NYU's resources and opportunities, thereby undermining and detracting from Plaintiff's educational experience.

115.    Plaintiff was so distraught by the discriminatory and harassing treatment he received as a result of the Blacklist, which was further compounded by the lack of proper response of NYU that he was depressed, engaged in self harm and has contemplated suicide.

116.    He begged and pleaded with members of the NYU staff and faculty for assistance in removing the Blacklist and clearing his name, but instead the University sat by and washed their hands of the situation and merely referred him to counseling, leaving the offenders – fellow anonymous NYU Tisch Students, to continue with their harassment and bullying resulting in Plaintiff being excluded from many school sponsored activities and projects.

117.    The above actions and inactions by NYU were so outrageous and utterly intolerable that they caused mental anguish and severe psychological and emotional distress to Plaintiff, as well as financial loss, humiliation, loss of reputation and other damages.

118.    As a direct and proximate result of the above conduct, Plaintiff sustained substantial damages, including, without limitation, emotional distress, loss of educational opportunities, economic injuries and other direct and consequential damages.

119.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR AN SEVENTH CAUSE OF ACTION
### (Negligence)

120.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

121.    Defendants owed duties of care to Plaintiff, an enrolled student at the University. Such duties included a duty of reasonable care to protect a student from tortious acts of third parties.

122.    Defendants breached their duties owed to Plaintiff by condoning a hostile educational environment due to knowingly permitting the anonymous students, some of whom were also employees of the University, to engage in prolonged gender-based harassment of and gender-based misconduct as to Plaintiff based on the allegations contained in and the publication of the Blacklist and permitting that gender-based harassment of and gender-based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said gender-based harassment and gender-based misconduct, with the consequence that Plaintiff  has been effectively denied access to NYU's resources and opportunities, thereby undermining and detracting from Plaintiff's  educational experience.

123.    Defendants' actual knowledge of, a deliberate indifference to the dissemination of the Blacklist caused harm to the Plaintiff including PTSD, self-harm and suicidal ideations.  \

124.    As a direct and proximate result of the above conduct, Plaintiff sustained substantial damages, including, without limitation, emotional distress, psychological damages, loss of educational opportunities, economic injuries and other direct and consequential damages.

125.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

i. On the First Cause of Action against all Defendants for violation of Title IX of the Education Amendments of 1972, a judgment awarding Plaintiff: (i) damages in an amount to be determined at trial, including, without limitation, damages to physical well- being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, (ii) injunctive relief from to prevent threatened future acts of harassment that subject Plaintiff to a hostile educational environment in violation of Title IX, and (iii) a declaratory judgment pursuant to 28 U.S.C. § 2201, that Defendant NYU intentionally discriminated against Plaintiff  on the basis of his male sex by condoning a hostile educational environment due to knowingly permitting Non-Party Students to engage in prolonged gender based harassment of and gender based misconduct as to Plaintiff  and permitting that gender-based harassment in the school's programs and activities with actual knowledge of, a deliberate indifference to and an apparent approval of said gender based harassment and gender based misconduct, with the consequence that Plaintiff has been effectively denied equal access to Defendant NYU's resources and opportunities, thereby undermining and detracting from Plaintiff's   educational experience;

ii. On the Second Cause of Action against all Defendants  for violation of New York Executive Law Section 296(4), a judgment awarding Plaintiff: (i) damages in an amount to be determined at trial, including, without limitation, damages to physical well- being, emotional and psychological damages,· damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, (ii) injunctive relief from to prevent threatened future acts of harassment that subject Plaintiff to a hostile educational environment in violation of New York Executive Law Section 296(4), and (iii) a declaratory judgment pursuant to 28 U.S.C. § 2201, that Defendant NYU has intentionally discriminated against Plaintiff on the basis of his male sex by condoning a hostile educational environment due to knowingly permitting Non-Party Students to engage in prolonged gender based harassment of and gender based misconduct as to Plaintiff and permitting that gender based harassment and gender based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said gender based harassment and gender based misconduct, with the consequence that Plaintiff  has been effectively denied equal

access to Defendant NYU's resources and  opportunities, thereby undermining and detracting from Plaintiff's educational experience;

iii. On the Third Cause of Action against Defendant NYU for violation of New York Civil Rights Law section 40-c, a judgment awarding Plaintiff: (i) damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, (ii) injunctive relief from to prevent threatened future acts of harassment that subject Plaintiff to a hostile educational environment in violation of New York Civil Rights Law section 40-c, and (iii) a declaratory judgment pursuant to 28 U.S.C. § 2201, that Defendant NYU a has intentionally discriminated against Plaintiff on the basis of his male sex by condoning a hostile educational environment due to knowingly permitting the Non-Party Students to engage in prolonged gender based harassment of and gender based misconduct as to Plaintiff and permitting that gender based harassment and gender based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said gender based harassment and gender based misconduct, with the consequence that Plaintiff has been effectively denied equal access to Defendant NYU's resources and opportunities, thereby undermining and detracting from Plaintiff's educational experience;

iv. On the Fourth Cause of Action  a judgment awarding Plaintiff  damages in an amount to be determined at trial, including, without limitation damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements,

v. On the Fifth Cause of Action a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

vi. On the Sixth Cause of Action for intentional infliction of emotional distress, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

vii. On the Seventh Cause of Action a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical

well-being, emotional and psychological damages, damages to reputation, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

viii.   such other and further relief as the Court deems just and proper.

**Dated: New York, NY**
**February 15, 2023**

**NESENOFF & MILTENBERG, LLP**
**Attorneys for Plaintiff**

By:   */s/ Andrew Miltenberg*

**Andrew T. Miltenberg, Esq.**
**Amy J. Zamir, Esq.**
**Kara Gorycki, Esq.**

**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**Tel: (212) 736-4500**
amiltenberg@nmllplaw.com
azamir@nmllplaw.com