

| | | | |
|---|---|---|---|
| | Ira S. Nesenoff<br>Andrew T. Miltenberg | Barbara H. Trapasso<br>Adrienne D. Levy<br>Regina M. Federico<br>Ben Goldstein<br>Amy Zamir<br>Kristen Mohr<br>Helen Setton | Philip A. Byler<br>Diana R. Warshow<br>Kara L. Gorycki<br>Susan E. Stark<br>*Senior Litigation Counsel* |
| | Stuart Bernstein<br>Tara J. Davis<br>Gabrielle M. Vinci | | |
| ATTORNEYS AT LAW<br>**nmllplaw.com** | | | Marybeth Sydor<br>*Title IX Consultant* |

April 25, 2023

**VIA ECF AND EMAIL**
The Honorable Katherine Polk Failla
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

     Re: *Doe v. New York University*, Case No 1:23-cv-01307

Dear Judge Failla:

  Plaintiff John Doe ("Plaintiff") respectfully submits this response to Defendants New York University's ("NYU"), Ezra Sacks' ("Defendant Sacks") and Craig Jolley's ("Defendant Jolley") (collectively "Defendants") pre-motion letter dated April 21, 2023, ECF No. 24.[1] As noted in the Pre-Motion Letter, Plaintiff opposes Defendants' proposed motion to dismiss and corresponding application.

  During Plaintiff's senior year at NYU's Tisch School of the Arts—the most important time in a film student's academic and future professional life—he was viciously and groundlessly attacked by female NYU students who published false sexual misconduct accusations about Plaintiff to a Google spreadsheet know as the Blacklist. The express purpose of the unvetted Blacklist was to identify male NYU students who allegedly engaged in sexual misconduct. The Blacklist was accessible via a QR Code posted across NYU's campus. Over the span of nearly a month, Plaintiff made several reports to Defendants concerning the sex and gender-based harassment he was subjected to by his peers as a consequence of being falsely accused via the Blacklist. NYU did nothing to investigate Plaintiff's reports. Instead, NYU issued a public statement that encouraged the female students who posted to the Blacklist to report the "potential misconduct" of the male students identified. There is no allegation that any reports were ever made to NYU about Plaintiff. Because NYU took no action to investigate, or discipline, the students who published the Blacklist, Plaintiff was forced to continue his education in an extremely hostile

---

[1] The letter will be referred to herein as the "Pre-Motion Letter" and cited herein as "Pre-Motion Ltr."



environment and suffered concrete, negative effects. Plaintiff became depressed, suicidal and developed PTSD. He was also removed from film projects, unable to finish a number of his course assignments and unable to attend class. Plaintiff was further ostracized by his peers. *See* ECF No. 18, First Amended Complaint ("Am. Compl.") ¶¶ 1-20, 19-79.

## I. Plaintiff Has Adequately Alleged A Title IX Deliberate Indifference Claim

Whether a university acted with deliberate indifference is a fact-laden question that is ill suited for disposition on a motion to dismiss. *Cianciotto v. New York City Dep't of Educ.*, 600 F. Supp. 3d 434, 452 (S.D.N.Y. Apr. 22, 2022) (citing *Tesoriero v. Syosset Centr. Sch. Dist.*, 382 F. Supp. 2d 387, 398 (E.D.N.Y. 2005)). As detailed below in response to the arguments set forth in the Pre-Motion Letter, there are no grounds upon which Plaintiff's Title IX deliberate indifference claim (Count I) should be dismissed.[2]

### A. NYU's Response Was Clearly Unreasonable

Plaintiff has plausibly alleged that NYU's response to his numerous reports of sexual and gender-based harassment was clearly unreasonable, precluding the dismissal of his deliberate indifference claim. As alleged in the Complaint, NYU's response was, at the very least, grossly inadequate. *K.F. v. Monroe Woodbury Centr. Sch. Dist.*, 2013 WL 177911, at *6 (S.D.N.Y. Jan. 16, 2013) ("Title IX liability attaches where a school… either through grossly inadequate action or no action at all … effectively causes the student to encounter discrimination."). NYU's deliberate indifference "at a minimum, caused [Plaintiff] to undergo harassment or ma[de] [Plaintiff] … vulnerable to it." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 645 (1999); *Campisi v. City University of N.Y.*, 2016 WL 4203549, at *8 (S.D.N.Y. Aug. 9, 2016).

In April 2022, Plaintiff reported the sexual and gender-based harassment he was experiencing at the hands of fellow NYU students as a result of the Blacklist to numerous mandatory reporters: i) Public Safety; ii) Defendant Jolley in the Office of Student Conduct; iii) NYU's Bias Response Line and Office of Equal Opportunity; iv) an NYU professor; and v) Defendant Sacks. Am. Compl. ¶¶ 56-57, 66-69, 71-73, 91. In response to his repeated complaints, spanning nearly a month, NYU took *no action* to investigate, or discipline, the female NYU

---

[2] NYU asserts that Plaintiff's Title IX hostile environment claim (Count II) should be dismissed if the deliberate indifference claim is dismissed. Pre-Motion Ltr., at 3. This is not the case. A hostile environment claim can be supported by conduct that amounts to deliberate indifference *or* a university's failure to act in response to a report of harassment. *Doe v. Syracuse Univ.*, 2022 WL 4094555, at *6 n. 3. As detailed *infra*, Plaintiff has adequately alleged a deliberate indifference claim. He has also alleged that NYU took no action at all in response to his repeated reports of sexual and gender-based harassment, which would separately support his hostile environment claim. Am. Compl. ¶¶ 55-79. Plaintiff's claims under the New York State Human Rights Law (Counts III-V) will also survive if either Title IX claim moves forward. Plaintiff offers no opinion on the court's exercise of supplemental jurisdiction—which lies within the Court's discretion—because NYU offers no viable basis for dismissing his federal claims.



students who had published unvetted, false sexual misconduct accusations against Plaintiff to the Blacklist. Am. Compl. ¶¶ 12, 66-70, 73-76, 78-113, 135. Instead, NYU issued a statement that *supported* and *encouraged* the female students who had posted to the Blacklist. This emboldened the students involved, and others, to continue their harassment and bullying of Plaintiff. *Id.* ¶¶ 61-65, 78-79, 114-117. Consequently, Plaintiff was forced to complete his senior year in an extremely hostile environment and was subjected to bullying, false accusations and harassment on the basis of his sex and gender identity. *Id.* ¶¶ 12, 20, 39, 53, 79, 88, 115, 140.

NYU distorts the allegations of the Complaint to argue that its response to Plaintiff's repeated complaints of sexual harassment was reasonable. Pre-Motion Ltr., at 2. The plain language of the statement that NYU issued to its film students was *not* an expression of "public disapproval." Am. Compl. ¶ 61. In the statement, NYU expressed a desire to assist female and nonbinary students with reporting the males named on the Blacklist, while only offering "support" to the male students named therein. *Id.* ¶¶ 61-65. NYU did not arrange a meeting with Plaintiff's Department Chair—Plaintiff requested a meeting and Defendant Sacks only agreed to speak "off the record" at a coffee shop. *Id.* ¶¶ 74-75. That Public Safety provided Plaintiff with a list of resources or that Plaintiff received certain academic accommodations is not dispositive. *Id.* ¶¶ 58, 78. "Responses that are not reasonably calculated to end harassment are inadequate." *Zeno v. Pine Plains Centr. Sch. Dist.*, 702 F.3d 655, 669 (2d Cir. 2012). Moreover, "it is not enough to try to help a student cope with the misbehavior of other students" by offering counseling services or a listening ear. *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1313-1314 (10th Cir. 2020). *See Feminist Maj'y Found. v. Hurley*, 911 F.3d 674, 689 (4th Cir. 2018) ("mere act of listening" was not enough and deliberate indifference found where university made no real effort to investigate online harassment and threats).

This is not a case where Plaintiff is demanding a "particular disciplinary action." Pre-Motion Ltr., at 2. NYU took *no* disciplinary action at all. Am. Compl. ¶¶ 12, 66-70, 73-76, 78-113, 135. Nor is this a case where NYU faced a potential retaliation claim for disciplining the students who published the Blacklist. Pre-Motion Ltr. at 2. There is no allegation that the female students who anonymously posted to the Blacklist, or published the false accusations against Plaintiff, made any reports about Plaintiff to NYU. *See Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 171, 173-175 (2005) (plaintiff made complaints to direct supervisors); *Boucher v. Trustees of Canisius College*, 2023 WL 2544625, at *11 (W.D.N.Y. Mar. 17, 2023) (protected activity includes reporting discrimination, testifying in a proceeding or participating in an investigation about discrimination). The students who published the Blacklist did not personally accuse Plaintiff of sexual misconduct, nor could they be witnesses in any proceeding because there is no allegation that the creators of the Blacklist had personal knowledge regarding the accusations posted on the Blacklist. Am. Compl. ¶ 40.

NYU's reliance on *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 371 ( S.D.N.Y. 2017) ("*Nungesser II*") to argue that its response was reasonable in light of its obligation to



promote free speech on campus is misplaced. In *Nungesser II*, the court declined to consider whether such an obligation was a valid defense to a claim of deliberate indifference. *Id. Cf. Feminist Maj'y Found.*, 911 F.3d at 691-692 (rejecting university's argument that the First Amendment circumscribed university's ability to respond to online harassment). This is also not a case involving the outcome of any disciplinary proceedings or false accusations made within the framework of a former complainant's academic speech, such as a student art project.

### B. Plaintiff Was Denied Access to Educational Opportunities and Benefits

In *Davis*, 526 U.S. at 652, the Supreme Court held that the "dropoff in [the petitioner's] grades provide[d] necessary evidence of a potential link between [the petitioner's] education" and the sexual harassment she suffered. *Id.* at 653. The petitioner also alleged that she became unable to concentrate on her studies and had written a suicide note. *Id.* at 634. These allegations supported the petitioner's deliberate indifference claim as a concrete, negative effect on the petitioner's ability to receive an education. *Id.* at 643. "Examples of such negative effects include a drop in grades, missing school, being forced to transfer schools, or mental health issues requiring therapy or medication." *Nungesser II*, 244 F. Supp. 3d at 367-368.

Here, Plaintiff's allegations readily demonstrate the concrete, negative effect the sexual and gender-based harassment had on his ability to receive an education. Plaintiff: i) was unable to complete his final film project (Am. Compl. ¶ 38); ii) experienced depression, self-harm, suicidal ideation and PTSD such that he could not attend classes (*Id.* ¶ 39); iii) was removed from a film shoot by the head of the Tisch School Student Council (*Id.* ¶ 43a.); iv) stopped receiving offers from NYU alumni to work on their film projects (*Id.* ¶ 43e.); v) was verbally attacked during group projects with fellow students (*Id.* ¶ 43d.); vi) was unable to complete a short, live action film for one of his classes and received an "F" as a result (*Id.* ¶ 50); and vii) was unable to complete a short film for an animation class (*Id.*¶ 51). Plaintiff was also denied the same senior year film and networking opportunities as his peers. *Id.* ¶¶ 17-19, 43g, 43i.

NYU's focus on Plaintiff's academic transcript is misplaced. Plaintiff's academic transcript is not "integral" to the Amended Complaint because the Amended Complaint does not rely "heavily upon its terms and effect." *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 503 (S.D.N.Y. 2015). Moreover, the transcript itself provides no explanation as to why the "F" was received, when the "F" was recorded on Plaintiff's transcript and any attendant circumstances. For this reason, the transcript also cannot be considered by the Court as a document which in any way contradicts the allegations set forth in the Complaint. NYU has already been provided with information about Plaintiff's F grade being recorded on his transcript in Spring 2022—as opposed to Spring 2020—but chose to disregard it and, instead, mischaracterize Plaintiff's academic record. In any event, as detailed above, Plaintiff suffered far more than a decline in his grades as a result of NYU's inaction and decision to support female students over male students.



### C. **Plaintiff Was Subjected to Harassment Based On Sex and Gender**

The term "rapist" may properly be considered by the Court as a gender-based slur. *Doe v. Columbia Univ.*, 2022 WL 4537851, at *30 n. 9 (S.D.N.Y. Sept. 28, 2022) (accepting "rapist" as gender-based slur for purposes of motion to dismiss); *Nungesser II*, 244 F. Supp. 3d at 364; (same); *Doe v. Univ. of Chicago*, 2017 WL 4163960, at *7 (N.D. Ill. Sept. 20, 2017) ("To be sure accusations of sexual assault might be part of gender-based harassment.") Accordingly, NYU is incorrect that accusations of sexual misconduct are always motivated by personal animus as opposed to gender. Pre-Motion Ltr., at 2. Here, there is no allegation that the students who published the unvetted posts to the Blacklist had personal animus towards Plaintiff. Am. Compl. ¶¶ 6, 40. Moreover, the Blacklist was exclusively used by female and nonbinary students to lodge unsubstantiated accusations ***against male students***. *Id.* ¶¶ 7, 35. Unlike *Nungesser I and II*, this is not a case involving disagreement between accuser and accused over the outcome of a Title IX disciplinary proceeding. There is no allegation that any posters to the Blacklist made any Title IX reports about Plaintiff to NYU.

### D. **NYU Had the Requisite Control Over the Blacklist**

NYU exercised "substantial control over both the harasser[s] and the context in which the known harassment occurr[ed]." *Feminist Maj'y Found.*, 911 F.3d at 687-688 (university had substantial control over student Yik Yak postings about campus feminist group). While the Blacklist was maintained on a Google spreadsheet, NYU exercised substantial control over the context in which the harassment occurred because it transpired on NYU's campus and was exclusively directed at NYU students. *Id.* As alleged in the Complaint, NYU students posted QR Codes around NYU's campus through which the Blacklist was accessed at the click of a button on one's cell phone. Am. Compl. ¶¶ 8-9, 36. Presumably, NYU's WiFi network was used by students, and others, who access the Blacklist on campus. The QR Codes were posted by NYU-employed teaching assistants. *Id.* ¶ 9. NYU students posted to and published the Blacklist, which targeted male NYU film school students. *Id.* ¶¶ 35-36, 40. NYU also lent credibility to the Blacklist rather than taking steps to correct the hostile environment it created. *Id.* ¶¶ 60-65. *See Feminist Maj'y Found.*, 911 F.3d at 688. That NYU issued a statement about the Blacklist demonstrates that it had substantial control over the context in which the harassment was occurring. Am. Compl. ¶¶ 60-65. While Campus Safety said that it could not shut down the page, it also referred the matter to NYU's Office of General Counsel and Student Conduct, suggesting that those offices had the power to act. *Id.* ¶ 66. Finding NYU liable for exercising substantial control comports with *Davis*—it is not a "dramatic expansion" of Title IX liability. Pre-Motion Ltr., at 3.



## II.      Plaintiff Has Adequately Pleaded A Breach of Contract Claim

Plaintiff has alleged that the Blacklist fell within the definitions of prohibited conduct under each of NYU's applicable policies. Am. Compl. ¶¶ 80-112. NYU's Anti-Harassment Policy states that allegations falling within the policy will be investigated under the Student Conduct Procedures. *Id.* ¶ 93. The Anti-Harassment Policy covers online harassment. *Id.* ¶ 83. NYU does not have discretion regarding conduct that occurs online. Rather its Student Conduct Policy states that NYU shall not interfere with the rights of a student "beyond the University environment." Student Conduct Policy, at 5. As discussed *supra*, the conduct at issue occurred on campus.[3] The Student Conduct Procedures require NYU to act in response to a report of alleged misconduct, "Upon receipt of a report of alleged misconduct, the Office of Student Conduct ***shall*** review the matter and determine an appropriate forum for resolution based on its assessment of potential sanctions for the conduct in question." *Id.* at p. 1 (emphasis added). The Procedures offer two options—informal resolution and formal resolution. *Id.* at 2. *See* Am. Compl. ¶¶ 93-94, 103.

The alleged sexual and gender-based harassment also fell within NYU's Sexual Misconduct Policy. Am. Compl. ¶ 105. NYU was required to conduct an initial assessment of Plaintiff's reports and notify Plaintiff of the results of that assessment. *Id.* ¶ 106. As part of the initial assessment, NYU was required to contact Plaintiff to offer supportive measures and guidance on filing a formal complaint. Sexual Misconduct Policy, at 2-3. These procedures were not discretionary. *Id.*

## III.      Plaintiff's Tort Claims Should Not Be Dismissed

Plaintiff's claim for intentional infliction of emotional distress should not be dismissed. NYU incorrectly argues that it is not a tort of "last resort" because Plaintiff's claims "sound in defamation." Pre-Motion Ltr., at 3. Plaintiff cannot assert defamation claims against the named defendants in this action. Whether or not defendants acted with the requisite intent or reckless disregard of the substantial probability that Plaintiff would suffer severe emotional distress is a question of fact. Plaintiff pleads a claim for ***deliberate*** indifference (as opposed to "indifference"), which constitutes an ***intentional*** violation of Title IX. *See* Pre-Motion Ltr., at 3; *Davis*, 526 U.S. 643-644. Plaintiff has also adequately alleged "extreme and outrageous conduct." Am. Compl. ¶¶ 5-118, 206-207. *See Rich v. Fox News Network, LLC*, 939 F.3d 112, 122-123 (2d Cir. 2019) (conduct became extreme and outrageous when defendants, aware of susceptibility of plaintiffs to emotional distress, continued with plan); *Gardner v. St. Bonaventure Univ.*, 171 F. Supp. 2d 118, 131-132 (W.D.N.Y. 2001).

Plaintiff's claims for negligence and negligent infliction of emotional distress should also

---

[3] NYU's policy regarding "Use of NYU Computers and Data," also applies because it covers the behavior of NYU Students towards fellow students on the internet. Am. Compl. ¶ 100.



proceed to discovery. *See Doe v. Sarah Lawrence College*, 453 F. Supp. 3d 653, 669 (S.D.N.Y. 2020) (duty may be imposed to protect students from misconduct where university encourages students to report misconduct and takes affirmative steps to supervise and control the reporting and investigation process).[4]

For the above stated reasons, Defendants set forth no grounds upon which dismissal of this case, or any claims alleged therein, is warranted.

Respectfully Submitted,

/s/ *Kara L. Gorycki*
Kara L. Gorycki

---

[4] In *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 484 (S.D.N.Y. 2015), the court contemplated a negligence claim grounded in the school's duty to protect students from harm inflicted by false allegations of sexual misconduct but dismissed the claim because the plaintiff had been found responsible for sexual misconduct.