# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

*Plaintiff*,

v.

NEW YORK UNIVERSITY, EZRA SACKS, and
CRAIG JOLLEY,

*Defendants*.

No. 1:23 Civ. 01307 (KPF)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS NEW YORK UNIVERSITY, EZRA SACKS, AND CRAIG JOLLEY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Roberta A. Kaplan
Gabrielle E. Tenzer
Matthew J. Craig
Amit Jain
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
mcraig@kaplanhecker.com
ajain@kaplanhecker.com

*Attorneys for Defendants New York University, Ezra Sacks, and Craig Jolley*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

RELEVANT BACKGROUND ................................................................................................ 3

LEGAL STANDARD.............................................................................................................. 6

ARGUMENT .......................................................................................................................... 7

    I.    Plaintiff Fails to State Title IX Claims Against NYU for Peer Harassment.................... 7

        A.    Plaintiff Fails to Allege that NYU's Response Was "Clearly Unreasonable"........ 9

        B.    Plaintiff Fails to Allege that Students Harassed Him Based on His Gender ........ 14

        C.    Plaintiff Fails to Allege a Systemic Deprivation of Educational Opportunities... 16

        D.    Plaintiff Fails to Allege that NYU Exercised Control Over the Alleged
            Harassment................................................................................................................ 17

        E.    Plaintiff's "Hostile Education Environment" Claim Is Unavailing and
            Duplicative ............................................................................................................... 20

    II.    Plaintiff's State-Law Claims Should Also Be Dismissed............................................. 20

        A.    Plaintiff Fails to State Claims Under the New York State Human Rights Law ... 20

        B.    Plaintiff Fails to State a Claim for Breach of Contract or the Implied
            Covenant of Good Faith and Fair Dealing............................................................ 21

        C.    Plaintiff Fails to State Claims in Tort ................................................................... 23

CONCLUSION....................................................................................................................... 26

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*,
 No. 12 Civ. 4828, 2018 WL 1273343 (S.D.N.Y. Mar. 5, 2018) ................................... 3, 5, 7

*Alterescu v. N.Y.C. Dep't of Educ.*,
 No. 21 Civ. 925, 2022 WL 3646050 (S.D.N.Y. Aug. 23, 2022) ........................................ 23

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................... 6

*B.B. v. The New Sch.*,
 No. 17 Civ. 8347, 2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018) ...................................... 10

*Barker v. Bancorp, Inc.*,
 No. 21 Civ. 869, 2022 WL 595954 (S.D.N.Y. Feb. 25, 2022) ......................................... 10

*Bd. of Regents of Univ. of Wis. Sys. v. Southworth*,
 529 U.S. 217 (2000) ..................................................................................................... 19

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................... 6

*Black v. Ranley*,
 No. 17 Civ. 9026, 2018 WL 2766138 (S.D.N.Y. June 8, 2018) ........................................ 24

*Brandy B. v. Eden Cent. Sch. Dist.*,
 934 N.E.2d 304 (N.Y. 2010) .......................................................................................... 25

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
 87 F. Supp. 3d 499 (S.D.N.Y. 2015) ............................................................................ 6, 7

*Carabello v. N.Y.C. Dep't of Educ.*,
 928 F. Supp. 2d 627 (E.D.N.Y. 2013) ............................................................................ 25

*Chanko v. Am. Broad. Cos.*,
 49 N.E.3d 1171 (N.Y. 2016) .......................................................................................... 23

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
 752 F.3d 173 (2d Cir. 2014) .......................................................................................... 10

*Corley v. Vance*,
 365 F. Supp. 3d 407 (S.D.N.Y. 2019) ............................................................................ 24

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)............................................................................... 25

*Cromwell-Gibbs v. Staybridge Suite Times Square*,
  No. 16 Civ. 5169, 2017 WL 2684063 (S.D.N.Y. June 20, 2017)...................................... 20

*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir. 2000)............................................................................... 25

*Davis v. Monroe Cty. Bd. of Educ.*,
  526 U.S. 629 (1999)............................................................................... *passim*

*Davis v. Willheim*,
  No. 17 Civ. 5793, 2020 WL 1903982 (S.D.N.Y. Apr. 17, 2020)...................................... 20

*Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*,
  810 F.3d 861 (2d Cir. 2015)............................................................................... 23

*DiRuzza v. Lanza*,
  685 F. App'x 34 (2d Cir. 2017) ............................................................................... 23

*Doe v. Columbia Coll. Chicago*,
  299 F. Supp. 3d 939 (N.D. Ill. 2017) ............................................................................... 15

*Doe v. Columbia Univ.*,
  551 F. Supp. 3d 433 (S.D.N.Y. 2021)............................................................................... 6

*Doe v. Columbia Univ.*,
  No. 20 Civ. 6770, 2022 WL 4537851 (S.D.N.Y. Sept. 28, 2022).................................. 9, 19

*Doe v. Hobart & William Smith Colls.*,
  546 F. Supp. 3d 250 (W.D.N.Y. 2021)............................................................................... 25

*Doe v. Syracuse Univ.*,
  No. 18 Civ. 1100, 2022 WL 798058 (N.D.N.Y. Mar. 16, 2022).................................. 22, 25

*Doe v. Syracuse Univ.*,
  No. 21 Civ. 977, 2022 WL 4094555 (N.D.N.Y. Sept. 7, 2022) .......................................... 20

*Doe v. Torrington Bd. of Educ.*,
  179 F. Supp. 3d 179 (D. Conn. 2016)............................................................................... 12

*Doe v. Trs. of Columbia Univ. in City of N.Y.*,
  No. 19 Civ. 4327, 2022 WL 3666997 (S.D.N.Y. Nov. 26, 2018) ...................................... 13

*Doe v. Univ. of Chicago*,
 No. 16 Civ. 8298, 2017 WL 4163960 (N.D. Ill. Sept. 20, 2017) ................. 9, 12, 13, 15, 16

*Doe v. Univ. of Mass.-Amherst*,
 No. 14 Civ. 30143, 2015 WL 4306521 (D. Mass. July 14, 2015)...................................... 15

*Doe v. Univ. of S. Ala.*,
 No. 17 Civ. 0394, 2020 WL 759895 (S.D. Ala. Feb. 14, 2020)........................................ 15

*Doe v. Wash. Univ.*,
 434 F. Supp. 3d 735 (E.D. Mo. 2020)................................................................................ 14

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
 747 F.3d 145 (2d Cir. 2014)............................................................................................... 10

*Eiseman v. State*,
 511 N.E.2d 1128 (N.Y. 1987)............................................................................................ 24

*Fawn Second Ave. LLC v. First Am. Title Ins. Co.*,
 610 F. Supp. 3d 621 (S.D.N.Y. 2022).................................................................................. 6

*Feibleman v. Trs. of Columbia Univ. in City of N.Y.*,
 No. 19 Civ. 4327, 2020 WL 3871075 (S.D.N.Y. July 9, 2020) ................................... 17, 22

*Flatscher v. Manhattan Sch. of Music*,
 551 F. Supp. 3d 273 (S.D.N.Y. 2021)................................................................................ 21

*Francis v. Kings Park Manor, Inc.*,
 992 F.3d 67 (2d Cir. 2021)................................................................................................. 24

*Guest v. Hansen*,
 603 F.3d 15 (2d Cir. 2010)................................................................................................. 24

*HB v. Monroe Woodbury Cent. Sch. Dist.*,
 No. 11 Civ. 5881, 2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012)...................................... 17

*Healy v. James*,
 408 U.S. 169 (1972)........................................................................................................... 19

*Immuno AG v. Moor-Jankowski*,
 567 N.E.2d 1270 (N.Y. 1991)............................................................................................ 19

*In re Columbia Tuition Refund Action*,
 523 F. Supp. 3d 414 (S.D.N.Y. 2021)................................................................................ 21

*Jackson v. Birmingham Bd. of Educ.*,
　　544 U.S. 167 (2005) ............................................................................... 11

*KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*,
　　No. 12 Civ. 2200, 2013 WL 177911 (S.D.N.Y. Jan. 16, 2013) ...................... 9, 12

*Mahanoy Area Sch. Dist. v. B.L.*,
　　141 S. Ct. 2038 (2021) ............................................................................ 19

*Noakes v. Syracuse Univ.*,
　　369 F. Supp. 3d 397 (N.D.N.Y. 2019) ........................................................ 21

*Nungesser v. Columbia Univ.*,
　　169 F. Supp. 3d 353 (S.D.N.Y. 2016) .......................................... 9, 15, 21, 24

*Nungesser v. Columbia Univ.*,
　　244 F. Supp. 3d 345 (S.D.N.Y. 2017) .................................................. *passim*

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
　　720 F.3d 490 (2d Cir. 2013) ..................................................................... 19

*Palsgraf v. Long Island R. Co.*,
　　162 N.E. 99 (1928) .................................................................................. 25

*Poindexter v. EMI Rec. Grp. Inc.*,
　　No. 11 Civ. 559, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ...................... 10

*Ramirez v. Temin & Co., Inc.*,
　　No. 20 Civ. 6258, 2021 WL 4392303 (S.D.N.Y. Sept. 24, 2021) ................... 24

*Roe v. St. John's Univ.*,
　　No. 19 Civ. 4694, 2021 WL 1224895 (E.D.N.Y. Mar. 31, 2021) .................... 14

*Roskin-Frazee v. Columbia Univ.*,
　　No. 17 Civ. 2032, 2018 WL 6523721 (S.D.N.Y. 2018) .............................. 9, 13

*Rynasko v. New York Univ.*,
　　63 F.4th 186 (2d Cir. 2023) ...................................................................... 21

*Sabel v. Halsted Fin. Servs., LLC*,
　　No. 20 Civ. 1216, 2020 WL 6274986 (S.D.N.Y. Oct. 26, 2020) ................... 25

*Salmon v. Blesser*,
　　802 F.3d 249 (2d Cir. 2015) ..................................................................... 24

*T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*,
    No. 11 Civ. 5133, 2012 WL 860367 (S.D.N.Y. Feb. 27, 2012) ........................................ 20

*Underwood v. Coinbase Glob., Inc.*,
    --- F. Supp. 3d ----, No. 21 Civ. 8353, 2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023) .......... 10

*Wai Chu v. Samsung Electrs. Am., Inc.*,
    No. 18 Civ. 11742, 2020 WL 1330662 (S.D.N.Y. Mar. 23, 2020) .................................... 25

*White v. Pacifica Found.*,
    973 F. Supp. 2d 363 (S.D.N.Y. 2018) ................................................................................. 21

*Wiley v. Plattsburgh*,
    407 F. Supp. 3d 119 (N.D.N.Y. 2019) ................................................................................. 15

*Yu v. Vassar Coll.*,
    97 F. Supp. 3d 448 (S.D.N.Y. 2015) ............................................................................. 23, 25

## STATUTES AND RULES

28 U.S.C. § 1681(a) ...................................................................................................................... 18

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 6

## REGULATIONS

34 C.F.R. § 106.44(a) ............................................................................................................. 11, 18

## OTHER AUTHORITIES

Carmo Moniz, *Tisch Blacklist Prompts Administration to Address Student Misconduct*, Wash.
    Square News (May 3, 2022) ................................................................................... 5, 10, 11

Defendants New York University ("NYU" or the "University"), Ezra Sacks, and Craig Jolley (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss ("Motion") the First Amended Complaint ("FAC").

## PRELIMINARY STATEMENT

This case arises from sexual misconduct allegations against Plaintiff that were made anonymously online while Plaintiff was an NYU student, presumably by his peers. NYU had no control over the Google spreadsheet in which the allegations appeared, and no NYU resources were used to create or maintain the spreadsheet. Once Plaintiff reported the spreadsheet to the University, NYU took immediate action. It spoke out against the spreadsheet, met with Plaintiff multiple times, referred him to counseling services, and offered him academic accommodations. NYU even provided him with a letter making it absolutely clear that he had not been the subject of any misconduct investigations. Soon after Plaintiff reported the spreadsheet, it disappeared from public view.

Almost a year after his graduation from NYU, Plaintiff filed a defamation suit in state court against the individuals he believes to be behind the spreadsheet and the accusations against him. He also filed the present action, seeking damages from NYU principally on the theory that the University itself committed sex discrimination under Title IX by not investigating and punishing those same individuals. But the law is clear that an educational institution is not liable for its students' independent actions. Instead, for a school to be liable for student-on-student harassment, the school's conduct must have been so "clearly unreasonable" that it can properly be viewed as having "effectively 'cause[d]' the discrimination" that the plaintiff experienced. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642–43, 648 (1999) (cleaned up). This high pleading bar is based on the commonsense reality that a school, particularly a college or university with thousands of

adult students on one or more campuses, cannot be responsible for all the actions of all its students—especially where, as here, the action involves students' speech.

Plaintiff not only fails to satisfy the exacting "clearly unreasonable" standard, but he comes up short on the other elements of his Title IX deliberate indifference claim as well. First, as court after court has concluded, a sexual misconduct allegation—false or otherwise—does not qualify as gender-based harassment. Second, the harms that Plaintiff claims he experienced during his final weeks as an NYU student, while unfortunate, do not amount to the pervasive interference with a student's overall educational opportunities required under Title IX. And finally, NYU did not control either the adult students who allegedly engaged in the off-campus speech of which Plaintiff complains, or the particular online context in which that speech occurred—namely, a Google spreadsheet. A contrary holding would turn universities into online content moderators and effect a radical, unprecedented expansion of the Title IX framework. Plaintiff's other Title IX claim, while labeled a "hostile education environment" claim, is simply a repeat of his deliberate indifference claim and should be dismissed for all the same reasons. Plaintiff's fallback claims under state statutory provisions and common law suffer a host of additional—and fatal—flaws.

It is disappointing that the final weeks of Plaintiff's undergraduate experience were not what he, or Defendants, would have wanted. But Plaintiff is wrong to place the blame on Defendants, who took his concerns about the spreadsheet very seriously and acted reasonably in their efforts to address those concerns. The law did not require anything more than that. Courts must "refrain from second-guessing the disciplinary decisions made by school administrators"; plaintiffs, like John Doe here, have no right under Title IX to insist that "particular disciplinary action[s]" be taken against their fellow students. *Davis*, 526 U.S. at 648.

As further explained below, the Court should grant Defendants' motion to dismiss.

## RELEVANT BACKGROUND[1]

Plaintiff, a 2022 graduate of NYU's Tisch School of the Arts, challenges NYU's alleged failure to adequately investigate a Google spreadsheet, which he asserts was created by anonymous NYU students in March 2022. ¶¶ 2, 6, 15.[2] According to the FAC, the spreadsheet included three anonymously submitted entries that labeled Plaintiff a narcissist or accused him of rape. ¶ 6. Plaintiff does not allege that the Google spreadsheet was created using NYU resources, shared or administered by any NYU account or device, hosted on NYU servers, or otherwise within NYU's ability to edit or delete. Nor does Plaintiff allege that NYU credited the anonymous allegations, investigated him based on those allegations, or took any disciplinary action against him.

Plaintiff claims that he became aware of the spreadsheet on April 5, 2022, about a month before classes ended at NYU and roughly six weeks before graduation day, when a friend notified him of rumors arising from the spreadsheet. ¶¶ 34–35. He alleges that the spreadsheet was created with "the purpose of" enabling "female and nonbinary NYU students to post unfounded sexual misconduct allegations against male students," based on an article in the student newspaper and the belief that QR codes linking to the spreadsheet were posted only in women's restrooms. ¶¶ 7, 35–36. Plaintiff reported the spreadsheet to NYU faculty and staff, beginning with a report to NYU Campus Safety on April 7, 2022. ¶¶ 56–57. Plaintiff does not allege that NYU possessed information establishing the truth or falsity of any of the claims that appeared on the spreadsheet.

NYU took several steps in response to Plaintiff's report. According to the FAC's (incomplete) account, within four days, Tisch administrators (including Defendant Sacks) issued

---

[1] The factual allegations in the FAC are accepted as true only for purposes of this Motion, but not to the extent that they are contradicted by other, more specific allegations, by documents attached or integral to the pleading or incorporated by reference, or by documents of which this Court can take judicial notice. *See, e.g.*, *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, No. 12 Civ. 4828, 2018 WL 1273343, at *8 n.4 (S.D.N.Y. Mar. 5, 2018) (Failla, J.).

[2] Citations to "¶ _" refer to paragraphs of the FAC, ECF 18. Citations to "Ex. __" refer to exhibits to the Declaration of Gabrielle E. Tenzer, dated June 20, 2023, accompanying Defendants' Motion.

a statement disapproving of the spreadsheet and urging students against using it. ¶ 61. This statement reiterated NYU's commitment to promoting a safe environment and addressing issues of sexual misconduct, and it noted that NYU had "long maintained policies and procedures that are designed to address instances of misconduct with fairness; that rely on thorough investigation; that provide resources and support to the parties involved; and that seek an impartial outcome." *Id.* The statement contrasted these policies and procedures with the spreadsheet, warning that the "public anonymous claims" on the spreadsheet posed "several challenges," including that "all parties involved are deprived of impartiality and process to which they should be entitled." *Id.* The statement encouraged students to "avail themselves of the reporting options available at NYU" and "reiterate[d] the support options for anyone impacted by the circulation of th[e] list." *Id.*

In addition, an NYU Campus Safety employee met with Plaintiff about his report and referred him to mental health assistance and victim's support resources. ¶¶ 57–58. That employee also looked into the spreadsheet and informed Plaintiff that NYU Campus Safety was unable to shut it down directly. ¶ 66. Defendant Sacks, the chair of Plaintiff's department at NYU, held an in-person meeting with Plaintiff to lend a sympathetic ear about his experience. ¶ 75. In response to the concerns Plaintiff expressed, NYU provided Plaintiff with multiple academic accommodations. ¶ 78. NYU later also gave Plaintiff a letter, signed by Defendant Jolley, stating that Plaintiff had never been the subject of a Title IX investigation. Ex. A.[3]

Soon after Plaintiff first reported it, the spreadsheet was taken down from public view. *See* ¶¶ 8, 36 (alleging that the spreadsheet "*was* publicly accessible online" and "was *initially* publicly available" (emphases added)); *see also* Carmo Moniz, *Tisch Blacklist Prompts Administration to*

---

[3] Plaintiff's initial complaint referenced this letter, but inaccurately claimed that NYU had failed to provide it, *see* ECF 1 ¶ 75, an allegation that was dropped from his FAC because NYU had, in fact, provided such a letter several months prior to the initiation of this action. The Court may consider the letter on this Motion for reasons discussed below. *See infra* note 8.

*Address Student Misconduct*, Wash. Square News (May 3, 2022), https://nyunews.com/news/2022/05/03/tisch-blacklist-prompts-administrative-action/ (noting that the spreadsheet "was made private in April [2022]").[4] Overall, it had been publicly available for about a month or less. *See id.*; ¶ 6. At some point thereafter, Plaintiff alleges, Defendant Jolley told him that NYU did not intend to pursue disciplinary action against the creators of the list. ¶ 69.

Plaintiff claims to have faced several difficult consequences due to the accusations against him that were included on the spreadsheet. He alleges that during his final weeks as an NYU student, he was removed from a classmate's film shoot and was treated harshly by other students. ¶¶ 43(a), (h). Plaintiff also claims that he was unable to complete a short film for an animation class (resulting in an F on his academic transcript) and that he fell behind on other assignments and was unable to attend certain classes. ¶¶ 20, 39, 49–51, 90, 137, 158, 171. Plaintiff's academic transcript, however, reflects that his Spring 2022 grades boosted his overall grade point average slightly, and that the only F he received was for a class in the Spring 2020 semester, approximately two years before the Google spreadsheet was created. Ex. B.[5] Outside of NYU, Plaintiff alleges that he was stalked and harassed by a student from another university, was removed from a project at another university, and did not receive off-campus professional offers. ¶¶ 43(d)–(g), (i). Plaintiff also claims to have experienced significant mental and emotional distress as a result of the sexual misconduct accusations against him. ¶¶ 18, 20, 38–39, 52, 142–43.

Almost a year after his graduation, Plaintiff filed a defamation suit in state court against the individuals he believes are responsible for the spreadsheet. ECF 30 at 9, 15. Plaintiff initiated the present action around the same time. In his FAC, Plaintiff claims that NYU's alleged failure

---

[4] The FAC incorporates the Moniz article by reference. ¶¶ 7, 43(b); *see A.V.E.L.A., Inc.*, 2018 WL 1273343, at *1 n.1.

[5] Plaintiff's transcript is cited extensively in his FAC, *see* ¶¶ 20, 39, 50, 90, 137, 158, 171, and is therefore incorporated by reference, *see A.V.E.L.A., Inc.*, 2018 WL 1273343, at *1 n.1.

to investigate and discipline the students responsible for the Google spreadsheet makes the University responsible for sex discrimination under Title IX of the Education Amendments of 1972 (Counts I–II). He also claims that the same conduct makes NYU (and, in certain instances, Defendants Sacks and Jolley) liable for violations of the New York State Human Rights Law (Counts III–V), breach of contract (Count VI), intentional infliction of emotional distress (Count VII), negligent infliction of emotional distress (Count VIII), and negligence (Count IX). Plaintiff's breach of contract claim, in particular, turns on various NYU policies for investigating and disciplining gender-based and other student misconduct: the Non-Discrimination and Anti-Harassment Policy and Complaint Procedures for Students (the "Anti-Harassment Policy"), Ex. C; the Sexual Misconduct, Relationship Violence, and Stalking Policy (the "Sexual Misconduct Policy"), Ex. D; the Student Conduct Policy, Ex. E; and the Student Conduct Procedures, Ex. F.[6]

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *see also, e.g.*, *Fawn Second Ave. LLC v. First Am. Title Ins. Co.*, 610 F. Supp. 3d 621, 627–28 (S.D.N.Y. 2022) (Failla, J.).

A complaint is deemed to include documents incorporated into it by reference. *E.g.*, *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 503 (S.D.N.Y. 2015) (Failla, J.). "Even where a document is not incorporated by reference, the court may nevertheless consider it [at the 12(b)(6) stage] where the complaint relies heavily upon its terms and effect, which renders the

---

[6] Plaintiff incorporates each of these policies into the FAC by reference. *E.g.*, ¶¶ 80–85, 94–103, 105–10, 192; *see Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 467 (S.D.N.Y. 2021).

document integral to the complaint." *Id.* (internal quotation marks omitted). And "where . . . documents properly considered on a motion to dismiss contradict the pleadings, the Court need not accept those pleadings as true." *A.V.E.L.A., Inc.*, 2018 WL 1273343, at *8 n.4.

## ARGUMENT

The crux of Plaintiff's claims is that, by allegedly declining to investigate and punish the individuals who anonymously created and used the online Google spreadsheet that was available to the public for about a month or less, NYU exhibited deliberate indifference to gender-based harassment. Because he has failed to satisfy Title IX's strict requirements for holding colleges and universities liable for student-on-student harassment, and because the exercise of supplemental jurisdiction over his state-law claims is unwarranted and those claims independently fail on their merits, the Court should dismiss the FAC in its entirety.

## I.   Plaintiff Fails to State Title IX Claims Against NYU for Peer Harassment

The Supreme Court has made clear that Title IX claims against colleges and universities for student-on-student harassment may proceed only in extremely limited circumstances. When the Supreme Court first recognized such liability in *Davis v. Monroe County Board of Education*, it was deeply concerned about the "risk that [a school] would be liable in damages not for its own official decision but instead for its [students'] independent actions." 526 U.S. at 643 (internal quotation marks omitted). To "eliminate" that risk and "cabin[] the range of [actionable] misconduct" to those rare cases in which a school's "own deliberate indifference effectively caused the discrimination," the Supreme Court announced what it made clear would be a "high standard" for such claims. *Id.* at 642–44, 652 (cleaned up).

Acutely aware of the reality of how students can sometimes behave, the Supreme Court was careful to specify that this standard does not demand that schools "purg[e]" themselves of "actionable peer harassment." *Id.* at 648; *see also id.* (Title IX does not require schools "to

'remedy' peer harassment" or to ensure that "'students conform their conduct' to certain rules"). Further, plaintiffs have no right "to make particular remedial demands" or insist that administrators "engage in particular disciplinary action." *Id.* To the contrary, the *Davis* Court admonished that "courts should refrain from second-guessing the disciplinary decisions made by school administrators," so as to afford schools "the flexibility they require" in order to function. *Id.* Such restraint is particularly warranted in cases involving universities, as opposed to the elementary school that was at issue in *Davis*, since a "university might not . . . be expected to exercise the same degree of control over its students that a grade school would enjoy." *Id.* at 649.

Plaintiff cannot satisfy the *Davis* standard for deliberate indifference here. To properly state such a Title IX claim against NYU, he must show that (1) NYU's actions were "clearly unreasonable in light of the known circumstances," (2) the harassment was "sexual" or gender-based, and (3) the harassment was "so severe, pervasive, and objectively offensive" that it "bar[red]" him from "access to . . . educational opportunities or benefits." *Id.* at 633, 648–50. He must also allege that NYU "exercises substantial control over both the harasser and the context in which the known harassment occurs," as "[o]nly then can [NYU] be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the [school]'s programs." *Id.* at 645.

The FAC does not meet any of these requirements. In fact, to Defendants' knowledge, no Title IX claims like Plaintiff's—that is, claims concerned with a university's response to sexual misconduct allegations made directly against one student by another—have survived a motion to dismiss. To the contrary, substantially more severe claims have been dismissed at the pleading stage. In *Nungesser v. Columbia University*, for instance, the plaintiff could not satisfy Title IX's high standard even though his accuser carried a mattress around campus throughout their senior year to draw attention to her rape accusation, spoke at an on-campus press conference about sexual

violence with a sitting U.S. senator, and generated national and international media coverage—all without receiving any discipline from the university. 244 F. Supp. 3d 345, 351–60, 362–71 (S.D.N.Y. 2017) (*Nungesser II*); *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 360–62, 364–69 (S.D.N.Y. 2016); *see also, e.g.*, *Doe v. Columbia Univ.*, No. 20 Civ. 6770, 2022 WL 4537851, at *29–*30 (S.D.N.Y. Sept. 28, 2022) (similarly rejecting deliberate indifference claim based on peer misconduct accusations); *Doe v. Univ. of Chicago*, No. 16 Civ. 8298, 2017 WL 4163960, at *7–*8 (N.D. Ill. Sept. 20, 2017) (rejecting deliberate indifference claim by student accused by peers on public list, even where accuser publicly lied about results of plaintiff's disciplinary proceeding and school provided plaintiff with virtually no support). Given the very serious concerns Justice O'Connor expressed in *Davis* about holding schools liable for their students' independent actions, these results are hardly surprising. In light of those concerns, and for the reasons that follow, the Court should dismiss this case as well.

A.     **Plaintiff Fails to Allege that NYU's Response Was "Clearly Unreasonable"**

Plaintiff does not and cannot allege that NYU's actions in response to the spreadsheet were "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. This standard demands more than "mere" unreasonableness, *id.* at 649, and "ample authority" makes clear that a defendant's negligence alone will not suffice, *Roskin-Frazee v. Columbia Univ.*, No. 17 Civ. 2032, 2018 WL 6523721, at *9 (S.D.N.Y. Nov. 26, 2018) (internal quotation marks omitted); *see also, e.g.*, *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, No. 12 Civ. 2200, 2013 WL 177911, at *7 (S.D.N.Y. Jan. 16, 2013) (violation of policy requiring formal investigation not "clearly unreasonable"), *aff'd*, 531 F. App'x 132 (2d Cir.). Indeed, Plaintiff acknowledges that he may avoid dismissal only if NYU took "no action at all" or action that was "grossly inadequate." ECF 26 at 2 (quoting *KF ex rel. CF*, 2013 WL 177911, at *6).

This is far from such a case. Plaintiff himself concedes that NYU took substantial steps in

response to his reports about the spreadsheet and "the effect it was having on his academics and mental health." ¶ 13. NYU administrators issued a statement against the spreadsheet within four days of his reporting it, which, among other things, made clear that the spreadsheet "deprived" students "of impartiality and process to which they should be entitled" and encouraged students to "avail themselves of the reporting options available at NYU" rather than resorting to "public anonymous claims." ¶ 61.[7] NYU Campus Safety looked into whether it would be possible for NYU to shut down the list somehow and determined that it could not. ¶ 66. NYU referred Plaintiff to mental health assistance and victim's support services. ¶ 58. The head of Plaintiff's department met with him to discuss the matter. ¶¶ 73–75. And NYU provided Plaintiff with multiple academic accommodations in light of the difficulties he was reportedly facing. ¶ 78. NYU also provided Plaintiff with a letter confirming that he had never been investigated or disciplined for any such violation. *See* Ex. A.[8] Even setting aside the additional measures NYU undertook that Plaintiff does not mention, these steps he pleads in his own complaint, standing alone, defeat his claim.

The reasonableness of NYU's response here is further demonstrated by other aspects of the

---

[7] The Court need not adopt Plaintiff's characterization of NYU's statement as somehow "lend[ing] credibility to the Blacklist" or "effectively sponsor[ing] the list." ¶¶ 65, 114. "Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted 'by more specific allegations in the Complaint.'" *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014) (internal citation omitted). Here, Plaintiff's characterizations of the NYU statement "are contradicted by other matters asserted" in his pleading—namely, the content of the NYU statement itself. *B.B. v. The New Sch.*, No. 17 Civ. 8347, 2018 WL 2316342, at *6 (S.D.N.Y. Apr. 30, 2018); *see also* ¶ 61. Were there any doubt, the student newspaper article about the spreadsheet reveals that NYU's statement prompted students who *supported* the Google spreadsheet to criticize the University's response from the other direction. *See* Moniz, *supra* at 4–5.

[8] *See supra* note 3. The Court may consider the letter on this Motion for multiple reasons. First, it is incorporated by reference into Plaintiff's initial complaint, *see* ECF 1 ¶ 75, and allegations lodged in that complaint but omitted from the FAC are properly considered on this Motion, *see Underwood v. Coinbase Glob., Inc.*, --- F. Supp. 3d ----, No. 21 Civ. 8353, 2023 WL 1431965, at *6 (S.D.N.Y. Feb. 1, 2023); *Poindexter v. EMI Rec. Grp. Inc.*, No. 11 Civ. 559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012). Second, while Plaintiff (incorrectly) stated in his original pleading that NYU had not yet provided the letter, he eliminated that allegation from the FAC. Because Plaintiff "possessed" and "relied" on the letter in amending his complaint, the Court may consider it. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014). Finally, the Second Circuit "has cautioned district judges to be mindful of litigants who cherry-pick among relevant documents, and has clarified that district courts may consider relevant documents that are fairly implicated by a plaintiff's claims, irrespective of whether they are part of the pleadings." *Barker v. Bancorp, Inc.*, No. 21 Civ. 869, 2022 WL 595954, at *6 (S.D.N.Y. Feb. 25, 2022) (Failla, J.). Plaintiff should not be permitted to engage in that tactic here.

"known circumstances." *Davis*, 526 U.S. at 648. For one, the spreadsheet was no longer publicly available starting in April 2022—the very same month that Plaintiff reported it to NYU. The FAC concedes this point. *See* ¶ 36 (alleging that the list "*was initially* publicly available for anyone to view" (emphasis added)). And the newspaper article that the FAC incorporates by reference confirms it. *See* Moniz, *supra* at 4–5. In other words, the spreadsheet was publicly available for only a short time after Plaintiff reported it and at most about a month, possibly far less, overall. *See id.*; ¶ 6.

In addition, Plaintiff's Spring 2022 semester grades actually improved his overall grade point average slightly. Ex. B. Even accepting as true the allegations that the events of April and May 2022 caused him to miss certain classes and fall behind on assignments, Plaintiff's transcript makes clear that Plaintiff, with the academic accommodations NYU provided to him, was able to navigate these obstacles successfully.[9]

Finally, had NYU acceded to Plaintiff's demand that it punish the students who allegedly created and contributed to the spreadsheet, it could have exposed itself to Title IX retaliation claims from those students, who would argue that their actions constituted protected activity. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–75 (2005) (Title IX prohibits retaliation based on protests against sex discrimination, even on behalf of other individuals and outside of formal investigatory proceedings). Disciplining students for online speech on non-university accounts and devices would also have conflicted with speech-protective values at the core of academic life, as reflected in the governing Title IX regulations, *see* 34 C.F.R. § 106.44(a), and NYU's own policies, *see, e.g.*, Student Conduct Policy at 1. As the Court recognized in *Davis*, it is "entirely reasonable

---

[9] To the extent Plaintiff asks this Court to infer that his F grade in a Spring 2020 semester course was caused by peer harassment in his final weeks as an NYU student in April 2022, *see* ¶¶ 20, 50; Ex. B, the two-year gap in time renders such an inference implausible, regardless of when the F grade was recorded on his transcript.

for a school to refrain from a form of disciplinary action that would expose it to constitutional or statutory claims." 526 U.S. at 649.

Of course, the law does not require NYU to prove the reasonableness of its actions. Instead, Plaintiff must plausibly allege that the sum total of NYU's response was "clearly unreasonable in light of the known circumstances." And even in cases involving sexual assault (not alleged verbal harassment) in grade schools (not universities), courts in this Circuit have held that a school's response was not clearly unreasonable where the school did substantially less than NYU did here. *See KF ex rel. CF*, 2013 WL 177911, at *6 (school district's response was not "clearly unreasonable" where, after parents of ninth grader reported that she had been sexually assaulted twice at school, school had psychiatrist evaluate daughter, placed her on home instruction, met with parents, offered her tutoring, and recommended she attend out-of-district academic program, without disciplining accused students); *Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 198 (D. Conn. 2016) (response to sexual assault of tenth grader by one of his peers not "clearly unreasonable" where, upon his disclosure of assault, school simply "offered [plaintiff] tutoring at the Board offices—away from the students who had been bullying and assaulting him").

In the closest analog to Plaintiff's case of which Defendants are aware, *Doe v. University of Chicago*, the pseudonymous plaintiff, John Doe, alleged that the University of Chicago acted with deliberate indifference after one of his peers, Jane Roe, publicly accused him of sexual assault, including by naming him on a "Hyde Park List" identifying people "'known to commit varying levels of gender-based violence.'" 2017 WL 4163960, at *2, *7. Notably, Jane Roe made her public accusations *after* a university disciplinary hearing had found that the evidence did not support her claim against John Doe. *Id.* at *1. The university's response was to "refus[e] to discipline Jane Roe, remov[e] John Doe from his and Jane Roe's shared physics lab, and warn[]

John Doe not to respond to Jane Roe" or to "refut[e] her accusations." *Id.* at *2–*3, *8. "The university also failed to discipline Jane Roe when she publicly lied about the outcome of her sexual assault complaint against John Doe," even while advising John Doe that Jane Roe's "actions might be legally actionable." *Id.* at *8. And, unlike NYU, the university in that case was not alleged to have issued a statement against the "Hyde Park List" or to have offered the plaintiff academic or other support.

> The court nevertheless held that the university's response was not "clearly unreasonable":
>
> Although the University's response might not have been fair, that is not the standard for deliberate indifference: it must be clearly unreasonable in order to violate Title IX. The University does have a policy on defamation, but it could not have known with certainty that Jane Roe's accusations were false. And apart from anything else, the University is entitled to exercise discretion in the discipline of its students without being second-guessed by federal courts, so long as its exercise of discretion is not "clearly" unreasonable.

*Id.* at *8 (footnote and citation omitted). Given this and other precedents discussed above, there can be no doubt that Plaintiff here fails to satisfy Title IX's "clearly unreasonable" standard.[10]

Plaintiff's Title IX claims otherwise turn on his disagreement with NYU's alleged decision not to investigate or discipline the spreadsheet's anonymous creators or Plaintiff's anonymous accusers. But as the *Davis* Court repeatedly explained, "courts should refrain from second-guessing the disciplinary decisions made by school administrators," and plaintiffs have no "Title IX right to make particular remedial demands." 526 U.S. at 648. This case illustrates exactly why.

The Google spreadsheet at issue thrust NYU into the middle of a charged debate and confrontation between its students. On one side were students who claimed that NYU had failed to protect them from sexual misconduct. On the other were students, like Plaintiff, who claimed to

---

[10] In addition, where, as here, a school responds to a complaint "in accordance with all applicable procedures," it does not act clearly unreasonably. *See, e.g.*, *Doe v. Trs. of Columbia Univ. in City of N.Y.*, No. 21 Civ. 5839, 2022 WL 3666997, at *14 (S.D.N.Y. Aug. 25, 2022); *Roskin-Frazee*, 2018 WL 6523721, at *8; *see also infra* at II.B (discussing NYU's compliance with its own policies in context of Plaintiff's claim for breach of contract).

have suffered serious repercussions from being accused of misconduct by their peers. Plaintiff does not allege that NYU knew who posted the allegations on the spreadsheet or whether they were true or false. Nor does Plaintiff allege that NYU had the ability to take down the spreadsheet or stop its students from viewing it online (it did not). In light of those circumstances, NYU followed an eminently reasonable course: It urged students not to use the spreadsheet, declined to credit the anonymous allegations or investigate the students who were accused, provided Plaintiff with academic and other support, and armed Plaintiff with a letter from the University confirming the lack of any misconduct, but did not punish anonymous students for their alleged non-university, online speech, which disappeared from public view shortly after NYU learned about it.

Title IX clearly does not require more. To be sure, accusations like the ones at issue here can cause significant harm. And it is unfortunate that Plaintiff did not have the experience that he, or Defendants, would have wanted during his final weeks at NYU. But federal law "does not require educational institutions to prevent defamation." *Nungesser II*, 244 F. Supp. 3d at 371. And the *Davis* Court made clear that schools must be afforded substantial discretion to respond to peer harassment when it occurs. That standard does not leave Plaintiff without a remedy; "[s]tate laws have long provided claims for defamation," *id.* at 367, and Plaintiff is already litigating such claims in state court. But because NYU's alleged response here was not clearly unreasonable in light of the known circumstances, Plaintiff's Title IX claims should be dismissed.

### B.      Plaintiff Fails to Allege that Students Harassed Him Based on His Gender

Plaintiff's Title IX claims also fail because he has not adequately pleaded that the peer mistreatment he experienced constituted "sexual" or "gender-based" harassment. Court after court has held that an accusation of rape or sexual misconduct does not constitute actionable gender discrimination under Title IX. *See, e.g.*, *Nungesser II*, 244 F. Supp. 3d at 364–65; *Roe v. St. John's Univ.*, No. 19 Civ. 4694, 2021 WL 1224895, at *19–*21 (E.D.N.Y. Mar. 31, 2021); *Doe v. Wash.*

*Univ.*, 434 F. Supp. 3d 735, 754–55 (E.D. Mo. 2020); *Doe v. Univ. of S. Ala.*, No. 17 Civ. 0394, 2020 WL 759895, at *14 (S.D. Ala. Feb. 14, 2020); *Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 128 (N.D.N.Y. 2019); *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 950–52 (N.D. Ill. 2017); *Doe v. Univ. of Chicago*, 2017 WL 4163960, at *7; *Doe v. Univ. of Mass.-Amherst*, No. 14 Civ. 30143, 2015 WL 4306521, at *8–*9 (D. Mass. July 14, 2015).

As an initial matter, Plaintiff does not allege the kind of sexual harassment at the core of most Title IX peer harassment claims. The FAC cites rescinded guidance from the Department of Education to suggest, in passing, that the mistreatment he alleges constituted "sexual harassment." ¶ 128. But even that rescinded guidance defined sexual harassment as "unwelcome conduct of a sexual nature," "includ[ing] unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature," and expressly carved out "gender-based harassment . . . not involving conduct of a sexual nature" from the definition. U.S. Dep't of Education, Office for Civil Rights, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties—Title IX at 2–3 (Jan. 2001). Accusations of prior sexual misconduct are simply not "sexual harassment" in this sense. *See, e.g.*, *Nungesser*, 169 F. Supp. 3d at 366–67.

Plaintiff has not plausibly alleged any other form of gender-based harassment either. Courts around the country have recognized that the word "rapist" is not inherently a gendered slur. In *Nungesser*, for example, the court reasoned that even assuming that "rapist" or "serial rapist" could constitute a gendered slur in some circumstances, those terms were not gender-based where they were used in relation to "particular events involving a particular male" rather than "as generic terms to disparage men." *Nungesser II*, 244 F. Supp. 3d at 364–65. The court in *University of Chicago* likewise held that "a false accusation of sexual assault is not, without more, harassment

15

based on sex, notwithstanding the sexual content of the accusation." 2017 WL 4163960, at *7.

The FAC suffers from this same defect. Plaintiff asserts that the Google spreadsheet was created "for female and nonbinary NYU students to post unfounded sexual misconduct allegations against male students in the Tisch School." ¶ 35. But Plaintiff does not allege that the spreadsheet included only allegations against men or that he was named on the spreadsheet specifically due to anti-male animus. Instead, Plaintiff alleges that the suspected source of the information about him on the spreadsheet "fabricated" a claim that he had raped her and her friends, and he then links that source to a woman with whom he claims to have had a consensual, sexual encounter. ¶¶ 45–46. Although, for example, calling someone a "'male rapist pig,' purely out of a desire to harass him for being male," might constitute gender-based harassment, *Univ. of Chicago*, 2017 WL 4163960, at *7, there is no allegation remotely like that here.

### C.     Plaintiff Fails to Allege a Systemic Deprivation of Educational Opportunities

Plaintiff's Title IX claims should also be dismissed because the alleged harassment was not so severe and pervasive as to have systemically "bar[red]" Plaintiff from "access to . . . educational opportunities or benefits." *Davis*, 526 U.S. at 633, 650. This element, too, sets "a high bar before a private plaintiff may recover," and the "effects of the harassment must touch the whole or entirety of an educational program or activity" in order for the school to be liable. *Nungesser II*, 244 F. Supp. 3d at 368 (citation omitted).

Plaintiff has not met this demanding pleading standard either. Although Plaintiff alleges a slide in his academic performance, *see* ¶ 20, "a mere decline in grades" is clearly not enough, *Davis*, 526 U.S. at 652 (internal quotation marks omitted). In any event, his transcript shows that his academic record actually improved in his final semester. *See supra* at 5. Plaintiff also alleges that the spreadsheet affected his ability to build a portfolio and make contacts. ¶¶ 18, 121, 122. But the only specific allegation in this vein that even arguably relates to an *NYU* portfolio-building

opportunity is that fellow students removed Plaintiff from one film shoot. ¶ 43(a). More broadly, by Plaintiff's own account, the spreadsheet affected only the final six weeks of the four years in which he built his portfolio as an NYU student. *See* ¶ 34.

Plaintiff further alleges that the spreadsheet harmed his mental health. *See* ¶¶ 18, 20, 38–39, 52, 142–43. While these allegations are upsetting and of grave concern, they do not demonstrate that Plaintiff was deprived of his access to educational opportunities. Particularly where, as here, a student is able to boost his overall academic performance, even significant emotional distress does not establish that the effects of the harassment have touched the entirety of the educational program.

By way of comparison, in *Nungesser*, the plaintiff allegedly missed important classes, failed to complete at least one assignment, got a lower grade on a final exam, lost out on professional opportunities, was identified by name and photograph in the media, was "ostracized from the alumni network and professional opportunities," and experienced "sleep deprivation, depression[,] and feelings of isolation." *Nungesser II*, 244 F. Supp. 3d at 354–55, 358, 359–60. Yet, absent a more concrete and severe impact *on his education*, the plaintiff still failed to adequately allege the "kind of pervasive interference" with educational opportunities that Title IX requires. *Id.* at 367–71; *see also Feibleman v. Trs. of Columbia Univ. in City of N.Y.*, No. 19 Civ. 4327, 2020 WL 3871075, at *7 (S.D.N.Y. July 9, 2020); *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11 Civ. 5881, 2012 WL 4477552, at *17 (S.D.N.Y. Sept. 27, 2012). The same is true here.

### D.   Plaintiff Fails to Allege that NYU Exercised Control Over the Alleged Harassment

Finally, and perhaps most fundamentally, Plaintiff has not alleged that NYU exercised "substantial control over *both* the harasser *and* the context in which the known harassment occur[ed]," *Davis*, 526 U.S. at 645 (emphases added), such that it can be said that Plaintiff was

"subjected to discrimination under an[] education program or activity," 28 U.S.C. § 1681(a); *see also* 34 C.F.R. § 106.44(a).

As a preliminary matter, Plaintiff fails to adequately allege that NYU had substantial control over his alleged harassers. As the Court explained in *Davis*, "[a] university might not . . . be expected to exercise the same degree of control over its students that a grade school would enjoy." 526 U.S. at 649. Here, the students allegedly involved were adult university students engaging in off-campus speech through a Google spreadsheet. Plaintiff's allegations on this element fall particularly short as to the "student from another university" who allegedly stalked him, ¶¶ 43(d), 156, and the non-students who allegedly withheld professional opportunities, *see* ¶¶ 43(e), (f), (g), (i). Nothing in the FAC suggests that NYU had any control, let alone substantial control, over any of these individuals.

More importantly, Plaintiff does not allege that NYU exercised substantial control over the context of the alleged harassment—that is, the Google spreadsheet at the core of his allegations. The FAC is devoid of any allegation that the Google spreadsheet was created using NYU resources, shared or administered by any NYU account or device, hosted on NYU servers, or within NYU's ability to edit or delete. To the contrary, Plaintiff concedes that Campus Safety advised him that "there is nothing that Campus Safety can do to shut down the page." ¶ 66. The mere fact that the Google spreadsheet could theoretically be accessed on campus (including through QR codes, *see* ¶¶ 8, 36, 89) cannot cure this defect, as universities do not have substantial control over every website linked in every on-campus flyer or poster.

The implications of a contrary holding on this score would be truly staggering. "Internet comments—hurtful as they often are—represent a modern form of the 'teasing and name-calling among school children' that is, for better or worse, a ubiquitous aspect of attending college today."

*Doe v. Columbia Univ.*, 2022 WL 4537851, at *30 (quoting *Davis*, 526 U.S. at 652). If schools were liable for accusations their students made on the internet, including on apps like Snapchat and TikTok, even when students were not using school networks or accounts, Title IX liability would explode. Colleges and universities, in particular, would be thrust into the impossible business of policing adult students' private, off-campus, online speech—speech that, for these student populations, will inevitably include discussions of sex and sexuality. Such speech-policing would not just be utterly infeasible; it would collide with foundational free-speech principles to which universities are committed. *See, e.g.*, *Healy v. James*, 408 U.S. 169, 180, 187 (1972) (recognizing the university as "peculiarly 'the marketplace of ideas,'" including ideas that one might find "abhorrent"); *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 232 (2000) (universities "undertake[] to stimulate the whole universe of speech and ideas"). This is especially true for colleges and universities in New York, where the state constitution enshrines even broader protections for individual speech and expression than its federal counterpart. *See ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013) (citing *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1277–78 (N.Y. 1991)). Given these bedrock principles, the Supreme Court has warned that, even in cases involving grade schools, "courts must be more skeptical of a school's efforts to regulate off-campus speech"—including vulgar and hurtful speech—"for doing so may mean the student cannot engage in that kind of speech at all." *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2046 (2021); *see also Nungesser II*, 244 F. Supp. 3d at 371.

Whatever the merits of turning universities into content moderators for students' online speech as a matter of policy, such a demanding and intrusive role would be completely unmoored from the text of Title IX enacted by Congress and the careful legal framework set forth by the

Supreme Court. This case should not be a vehicle for reshaping the law in such a drastic way.

**E.    Plaintiff's "Hostile Education Environment" Claim Is Unavailing and Duplicative**

Plaintiff's FAC added a second Title IX claim alleging a "hostile education environment." ¶¶ 146–61. But the Second Circuit has never recognized a hostile education environment claim under Title IX for alleged peer harassment, and *Davis* made clear that schools themselves are responsible for student-on-student harassment "*only* where [the school] acts with deliberate indifference." *Davis*, 526 U.S. at 633 (emphasis added). Plaintiff cannot get around the strictures of *Davis* by simply relabeling his claim. Nonetheless, because Plaintiff's second Title IX claim is premised on precisely the same facts as his first, ¶¶ 144–45, 160–61, the Court should dismiss it as duplicative. *See Doe v. Syracuse Univ.*, No. 21 Civ. 977, 2022 WL 4094555, at *6 n.3 (N.D.N.Y. Sept. 7, 2022) (dismissing purported student-on-student hostile environment claim "based on the same facts" as deliberate indifference claim).

**II.    Plaintiff's State-Law Claims Should Also Be Dismissed**

Upon dismissing Plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over his state-law claims, as it has in analogous cases. *See, e.g.*, *Davis v. Willheim*, No. 17 Civ. 5793, 2020 WL 1903982, at *7–*8 (S.D.N.Y. Apr. 17, 2020) (Failla, J.); *Cromwell-Gibbs v. Staybridge Suite Times Square*, No. 16 Civ. 5169, 2017 WL 2684063, at *7–*8 (S.D.N.Y. June 20, 2017) (Failla, J.). In any event, Plaintiff's state-law claims fail on the merits.

**A.    Plaintiff Fails to State Claims Under the New York State Human Rights Law**

Discrimination claims against universities under the New York State Human Rights Law ("NYSHRL") are "evaluated under the same standard as [an] analogous claim under Title IX." *Nungesser II*, 244 F. Supp. 3d at 372; *accord T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*, No. 11 Civ. 5133, 2012 WL 860367, at *9 (S.D.N.Y. Feb. 27, 2012). Indeed, Plaintiff

concedes that his Title IX and NYSHRL claims rise and fall together. *See* ECF 26 at 2 n.2. Plaintiff's NYSHRL claims therefore should be dismissed for all the same reasons as set forth above with respect to his Title IX claims. Defendants Sacks and Jolley, of course, cannot be liable for aiding and abetting without any underlying NYSHRL violation. *See, e.g.*, *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 378 (S.D.N.Y. 2018).

### B.   Plaintiff Fails to State a Claim for Breach of Contract or the Implied Covenant of Good Faith and Fair Dealing

In New York, "to sustain a contract claim against a university, a student must point to a provision that guarantees certain specified services, not merely to a general statement of policy, or to statements of 'opinion or puffery.'" *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 421–22 (S.D.N.Y. 2021) (cleaned up); *see also Rynasko v. New York Univ.*, 63 F.4th 186, 197 (2d Cir. 2023). Plaintiff's allegations of breach fall short for at least the following four reasons.

*First*, Plaintiff alleges that by failing to have the Google spreadsheet taken down, NYU violated a promise in the Anti-Harassment Policy to "maintain an environment that was free from bias, prejudice, discrimination and harassment." ¶ 192(a). But as this Court has recognized, such "[g]eneral policy statements" cannot give rise to a breach of contract claim. *Flatscher v. Manhattan Sch. of Music*, 551 F. Supp. 3d 273, 281–82 (S.D.N.Y. 2021); *see also, e.g.*, *Nungesser*, 169 F. Supp. 3d at 373 (policy commitment "to providing an environment free from gender-based discrimination and harassment" cannot be basis for breach of contract claim); *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 419–20 (N.D.N.Y. 2019) (similar).

*Second*, Plaintiff alleges that the spreadsheet constituted a student violation of the Anti-Harassment Policy that NYU was obligated to "promptly investigate[]," but never did. ¶ 192(b). The premise of this argument is wrong. As relevant here, the Anti-Harassment Policy specifically applies to discrimination based on gender or sex, just as Title IX does. *See* Anti-Harassment Policy

at 2. As explained above, Plaintiff's alleged harassment arises from an accusation of misconduct, not his sex or gender (or any other protected grounds). *See supra* at I.B. There was therefore no Anti-Harassment Policy violation to investigate.

In addition, NYU reserves the discretion to determine whether a particular policy applies, *see* Anti-Harassment Policy at 1; commits only to taking steps that it deems "appropriate," *see* Student Misconduct Procedures at 2; and, most notably, makes clear that "[c]onduct that occurs off-campus, online, over social media, or outside the context of a University program or activity, should generally be subject only to the consequences of the applicable authority and/or public opinion," Student Conduct Policy at 5. Such reservations of discretion, coupled with the specific provision addressing alleged online misconduct, clearly defeat any possible breach of contract claim. *See Feibleman*, 2020 WL 3871075, at *2 (holding that similarly worded "provisions reserve significant discretion in making the threshold determination" of whether a Title IX policy applies); *Doe v. Syracuse Univ.*, No. 18 Civ. 1100, 2022 WL 798058, at *7 (N.D.N.Y. Mar. 16, 2022) (concluding that "plain language" of Title IX handbook "does not entitle Plaintiff to an investigation").

*Third*, Plaintiff alleges that NYU violated its Student Conduct Policy—namely, provisions on bullying, disorderly behavior, and computer use—which, according to Plaintiff, also required an inquiry into the spreadsheet under the Student Conduct Procedures. ¶¶ 95, 98, 100, 192(c). But once again, Plaintiff cannot evade the language quoted above that expressly reserves to NYU the decision of whether and how to respond to allegations of off-campus and online misconduct. *See* Student Conduct Policy at 5. Plaintiff acknowledges that NYU considered the spreadsheet and chose not to take disciplinary action. ¶¶ 61, 69. He has no contractual right to demand otherwise.

*Finally*, Plaintiff alleges that NYU violated its Sexual Misconduct Policy by failing to

"conduct a review of Plaintiff's complaints." ¶ 192(d). But the policy applies only to, *inter alia*, sexual harassment "as defined by Title IX regulations." Sexual Misconduct Policy at 1. Again, Plaintiff does not allege such harassment, *see supra* at I.B, and the Sexual Misconduct Policy therefore has no application. To the extent Plaintiff premises his claim of breach on the assertion that he has "no evidence" that Defendants Sacks and Jolley fulfilled their alleged roles as Title IX reporters, ¶¶ 106–08, courts have concluded that similar reporting requirements under school Title IX policies are nonactionable as breach of contract, *e.g.*, *Nungesser II*, 244 F. Supp. 3d at 375.

Because Plaintiff's claim for breach of the covenant of good faith and fair dealing relies on the same allegations of breach of contract, it should be rejected for the same reasons, as well as for being duplicative. *See, e.g.*, *Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015); *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 482 (S.D.N.Y. 2015).

### C.      Plaintiff Fails to State a Claim in Tort

Plaintiff's tort claims fare no better. To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege "extreme and outrageous conduct" and "intent to cause, or disregard of a substantial probability of causing, severe emotional distress." *Nungesser*, 244 F. Supp. 3d at 378. The standard is "exceedingly high." *Alterescu v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 925, 2022 WL 3646050, at *12 (S.D.N.Y. Aug. 23, 2022) (Failla, J.) (quoting *DiRuzza v. Lanza*, 685 F. App'x 34, 36 (2d Cir. 2017)). Plaintiff comes nowhere close to satisfying it here.

Plaintiff concedes that NYU met with him on numerous occasions and provided him with academic accommodations. ¶¶ 57–58. He simply takes issue with Defendants' alleged "hands off approach" toward the list itself. ¶¶ 57–58, 75, 78, 200. Such conduct is certainly not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, [so as] to be regarded as atrocious, and utterly intolerable in a civilized community." *DiRuzza*, 685 F. App'x at 37 (quoting *Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1178 (N.Y. 2016)). Indeed, courts

regularly dismiss IIED claims even where the defendants *themselves* make repeated defamatory or sexually harassing statements. *Ramirez v. Temin & Co., Inc.*, No. 20 Civ. 6258, 2021 WL 4392303, at *19 (S.D.N.Y. Sept. 24, 2021) (collecting cases). If such defendants cannot be held liable for IIED, Defendants here—many steps removed from the allegedly defamatory content of the Google spreadsheet—cannot be either.

Moreover, Plaintiff does not allege that any Defendant "acted with the intent to cause [him] emotional distress." *Black v. Ranley*, No. 17 Civ. 9026, 2018 WL 2766138, at *11 (S.D.N.Y. June 8, 2018) (Failla, J.). In fact, to the contrary, the FAC repeatedly characterizes Defendants' disposition as one of mere indifference. *E.g.*, ¶¶ 18, 117.

Finally, an IIED claim may be invoked "only as a last resort" and must be dismissed if the challenged conduct "falls well within the ambit of other traditional tort liability." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citations omitted). As his ongoing state-court action demonstrates, Plaintiff's allegations here sound in defamation, and thus no IIED claim may lie. *Nungesser II*, 244 F. Supp. 3d at 378 (dismissing IIED claim against university even where plaintiff had elected not to pursue defamation claim relating to messages on social media).

Plaintiff's negligence claims are equally meritless. As an initial matter, it is black letter law that to plead a negligence claim, Plaintiff must show that Defendants owed him a duty. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021) (en banc); *Corley v. Vance*, 365 F. Supp. 3d 407, 454 (S.D.N.Y. 2019) (Failla, J.). But Plaintiff's assertion that Defendants had a duty "to protect a student from the tortious acts of third parties," ¶ 121, has been directly and repeatedly rejected by New York courts, *see, e.g.*, *Guest v. Hansen*, 603 F.3d 15, 21 (2d Cir. 2010) (citing *Eiseman v. State*, 511 N.E.2d 1128, 1136 (N.Y. 1987)); *Nungesser*, 169 F. Supp. 3d at 374. Even if Plaintiff had been able to plead such a duty, the alleged failure to investigate or discipline the

spreadsheet's creators or contributors, ¶¶ 210, 222, is not a cognizable breach under "controlling New York authority." *Yu*, 97 F. Supp. 3d at 484; *see also, e.g.*, *Doe v. Hobart & William Smith Colls.*, 546 F. Supp. 3d 250, 269 (W.D.N.Y. 2021) (collecting cases); *Doe v. Syracuse Univ.*, 2022 WL 798058, at *11. Finally, the "harassment and stalking" that Plaintiff allegedly suffered, ¶ 203, were the unforeseeable and even unlawful actions of third parties (apparently including students at other schools), not the proximate or "direct" result of Defendants' conduct, *Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 646 (E.D.N.Y. 2013); *Brandy B. v. Eden Cent. Sch. Dist.*, 934 N.E.2d 304, 306–07 (N.Y. 2010); *see also Palsgraf v. Long Island R. Co.*, 162 N.E. 99 (1928).

\*　　\*　　\*

Plaintiff cannot escape the facts that doom his case, as they come from the very allegations that he asserts in the FAC and the text of the policies and other documents that his pleading incorporates. These are not technical deficiencies around which Plaintiff might be able to replead. They are flaws at the heart of his claims that a "better pleading will not cure." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Indeed, Plaintiff has already amended once and declined to do so again during a recent conference, admitting that he has "as much information as [he] possibly could at this point." ECF 30 at 4–5. Where, as here, a plaintiff is "'unable to allege any fact sufficient to support its claim,'" dismissal with prejudice is warranted. *Wai Chu v. Samsung Electrs. Am., Inc.*, No. 18 Civ. 11742, 2020 WL 1330662, at *9 (S.D.N.Y. Mar. 23, 2020) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)); *accord Cuoco*, 222 F.3d at 112; *Sabel v. Halsted Fin. Servs., LLC*, No. 20 Civ. 1216, 2020 WL 6274986, at *7 (S.D.N.Y. Oct. 26, 2020).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion and dismiss the FAC with prejudice.

Dated:  New York, New York
        June 20, 2023

Respectfully submitted,

Roberta A. Kaplan
Gabrielle E. Tenzer
Matthew J. Craig
Amit Jain
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
mcraig@kaplanhecker.com
ajain@kaplanhecker.com

*Attorneys for Defendants New York University, Ezra Sacks, and Craig Jolley*