**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
**JOHN DOE,**

                                                      **Case No: 1:23-CV-01307-KPF**

                   **Plaintiff,**

               **-against-**

**NEW YORK UNIVERSITY,**
**EZRA SACKS, and CRAIG JOLLEY,**

                   **Defendants.**
------------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Kara L. Gorycki
Andrew T. Miltenberg
Amy Zamir
NESENOFF & MILTENBERG, LLP
363 Seventh Ave., 5th Floor
New York, New York 10001
(212)736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com
azamir@nmllplaw.com


*Attorneys for Plaintiff John Doe*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

RELEVANT FACTS .......................................................................................................... 3

APPLICABLE LEGAL STANDARD ................................................................................ 6

ARGUMENT ...................................................................................................................... 6

   I.   Plaintiff Has Plausibly Alleged a Title IX Deliberate Indifference Claim ........................... 6

     A.  Plaintiff Alleged Peer Sexual Harassment ................................................................ 7

     B.  NYU Had Substantial Control Over the Harassers and the Context .............................. 9

     C.  Private Universities Are Not Restricted By the First Amendment ................................ 12

     D.  NYU's Response Was Clearly Unreasonable ............................................................... 13

     E.  Plaintiff Was Deprived of Educational Opportunities and Benefits .............................. 19

   II.   Plaintiff's Title IX "Hostile Environment" Claim Is Not Duplicative ............................. 20

   III.   Plaintiff's Breach of Contract Claim Should Not Be Dismissed ................................. 21

   IV.  Plaintiff's Tort Claims Should Not Be Dismissed ........................................................ 23

CONCLUSION ................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*A.S. v. City School Dist. of Albany,*
    585 F. Supp. 3d 246 (2d Cir. 2022) ........................................................................ 18
*Bd of Regents of Univ. of Wis. Sys. v Southworth,*
    529 U.S. 217 (2000) ...................................................................................................... 14
*Bilicki v. Syracuse Univ.,*
    68 Misc. 3d 1230(A) (N.Y. Sup. Ct. 2019) .............................................................. 13
*Boucher v. Trustees of Canisius College,*
    2023 WL 2544625 (W.D.N.Y. Mar. 17, 2023) .......................................................... 21
*Brandy B. v. Eden Centr. Sch. Dist.,*
    934 N.E. 2d 306 (N.Y. 2010) ...................................................................................... 28
*Campisi v. CUNY,*
    2016 WL 4203549 (S.D.N.Y. Aug. 9, 2016) .................................... 15, 16, 18, 19
*Carabello v. N.Y.C. Dep't of Educ.,*
    928 F. Supp. 2d 627 (E.D.N.Y. 2013) ...................................................................... 28
*Cianciotto v. New York City Dep't of Ed.,*
    600 F. Supp. 3d 434 (S.D.N.Y. 2022) ........................................................ 6, 15, 18
*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991) .......................................................................................... 28
*Cuoco v. Moritsugu,*
    222 F.3d 99 (2d Cir. 2000) .......................................................................................... 28
*Davis v. Monroe County Board of Education,*
    119 S. Ct. 1661 (1999) ...............................................................................7, 11, 21
*Doe v. Columbia College Chicago,*
    299 F. Supp. 3d 939 (N.D. Ill. 2017) ........................................................................ 9
*Doe v. Columbia Univ.,*
    2022 WL 3666997 (S.D.N.Y. Aug. 25, 2022) .......................................................... 17
*Doe v. Columbia Univ.,*
    2022 WL 4537851 n. 9 (S.D.N.Y. Sept. 28, 2022) ............................................ 8, 13
*Doe v. East Haven,*
    200 Fed. Appx. 46 (2d Cir. 2006) .................................................... 10, 18, 22
*Doe v. Sarah Lawrence College,*
    453 F. Supp. 3d 653 (S.D.N.Y. 2020) ........................................ 6, 18, 23, 27
*Doe v. Sch. Dist. No. 1,*
    970 F.3d 1300 (10th Cir. 2020) ................................................................................ 17
*Doe v. Syracuse Univ.,*
    2022 WL 4094555 n. 3 (N.D.N.Y. Sept. 27, 2022) ........................................ 23, 24
*Doe v. Torrington Board of Education,*
    179 F. Supp. 3d at 198 .............................................................................................. 18

*Doe v. Univ. of Chicago*,
  2017 WL 4163960 (N.D. Ill. Sept. 20, 2017)................................................ 7, 9, 18

*Doe v. Univ. of Mass-Amherst*,
  2015 WL 4306521 (D. Mass. July 14, 2015) ............................................... 9

*Doe v. Univ. of S. Ala.*,
  2020 WL 759895 (S.D. Ala. Feb. 14, 2020) ............................................... 9

*Doe v. Washington Univ.*,
  434 F. Supp. 3d 735 (E.D. Mo. 2020) ....................................................... 9

*Feibleman v. Trs. of Columbia Univ.*,
  2020 WL 3871075 (S.D.N.Y. Jul. 9, 2020) .............................................. 22, 25

*Feminist Maj'y Found. v. Hurley*,
  911 F.3d 674 (4th Cir. 2018) .................................................... 10, 12, 14

*Hain v. Jamison*,
  68 N.E. 2d 1233 (N.Y. Ct. App. 2016) ..................................................... 28

*Hayut v. State Univ. of New York*,
  352 F.3d 733 (2d Cir. 2003) ............................................................... 22

*HB v. Monroe Woodbury Cent. Sch. Dist.*,
  2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012)............................................... 22

*Healy v. James*,
  92 S. Ct. 2338 (1972) ................................................................... 14

*Jackson v. Birmingham Bd. of Ed.*,
  544 U.S. 167 (2005)..................................................................... 20

*JD1 v. Canisius College*,
  2022 WL 2308902 (W.D.N.Y. June 27, 2022) ............................................. 23

*KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*,
  2013 WL 177911 (S.D.N.Y. Jan. 16, 2013)............................................... 18

*Mahanoy Area Sch. Dist. v. B.L.*,
  141 S. Ct. 2038 (2021) ................................................................. 15

*Mitchell v. New York Univ.*,
  129 A.D.3d 542 (1st Dep't 2015).......................................................... 13

*Nungesser v. Columbia Univ.*,
  244 F. Supp. 3d 345 (S.D.N.Y. 2017)................................................. passim

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
  720 F.3d 490 (2d Cir. 2013) ............................................................. 15

*Rich v. Fox News Network, LLC*,
  939 F.3d 112 (2d Cir. 2019)........................................................... 26, 27

*Roe v. St. John's Univ.*,
  2021 WL 1224895 (E.D.N.Y. Mar. 31, 2021) ............................................... 9

*Roskin-Frazee v. Columbia Univ.*,
  2018 WL 6523721 (S.D.N.Y. Nov. 26, 2018) ............................................... 17

*Sabel v. Halsted Fin. Servs., LLC*,
  2020 WL 6274986 (S.D.N.Y. Oct. 26, 2020) ............................................... 28

*Wai Chu v. Samsung Electr. Am. Inc.*,
  2020 WL 1330662 (S.D.N.Y. Mar. 23, 2020) .......................................................... 28

*Wiley v. Plattsburgh*,
  407 F. Supp. 3d 119 (N.D.N.Y. 2019) ...................................................................... 9

*Zeno v. Pine Plains Centr. Sch. Dist.*,
  702 F. 3d 655 (2d Cir. 2012) .................................................................................. 15

**Rules**

34 C.F.R. § 106.30 ........................................................................................................ 8

34 CFR § 106.71 ......................................................................................................... 18

Plaintiff John Doe ("Plaintiff") respectfully submits this memorandum of law in support of his opposition to the motion to dismiss filed by Defendants New York University ("NYU"), Ezra Sacks ("Sacks") and Craig Jolley ("Jolley") (collectively referred to herein as "Defendants").

## INTRODUCTION

Defendants put forth no argument which necessitates the dismissal of any of Plaintiff's well-pled federal Title IX and state law claims and, accordingly, their motion to dismiss should be denied in its entirety.

***First***, Plaintiff has plausibly alleged that NYU violated Title IX, and discriminated against him on the basis of sex, when it acted with deliberate indifference and took no action in response to his multiple complaints of sexual and gender-based harassment arising from the publication of false sexual assault allegations on the "Blacklist" and the aftermath. To be clear, the Blacklist and resulting harassment Plaintiff suffered fell within the definition of peer sexual harassment contemplated by Title IX and was the type of prohibited conduct over which NYU had substantial control—as evidenced by the University's issuance of the NYU Statement and the scope of its various disciplinary policies. While NYU seeks to shield itself from liability by pointing to concerns over free speech, it is well settled under New York law that private university students are not protected by the First Amendment. NYU's own policies also allow the University to impose discipline for harassing online speech and mandate that the exercise of free speech occur within the standards set forth in those policies. NYU's utter lack of response to Plaintiff's multiple reports was clearly unreasonable in light of the known circumstances and NYU fails in its efforts to deflect from this fact and minimize the severe impact that its failure to act had on Plaintiff's mental well-being and access to educational programs and opportunities. Defendants' submission of documents which they contend are "integral" to Plaintiff's pleading do not contradict Plaintiff's allegations.

1

*Second*, Plaintiff has separately stated a Title IX hostile environment claim against NYU, which multiple courts in this Circuit have recognized in cases involving alleged peer sexual harassment. Because Plaintiff has adequately pled Title IX claims, the sex discrimination claims he has pled under New York state law should also survive Defendants' motion to dismiss.

*Third*, Plaintiff states a claim for breach of contract against NYU under New York law where, as alleged, the Blacklist and resulting harassment constituted prohibited conduct under every policy NYU had in place in April 2022. The Anti-Harassment Policy, Student Conduct Policy and Procedures and the Sexual Misconduct Policy each required NYU to take action in response to Plaintiff's multiple reports, which it did not do. The language of these policies is not discretionary. While NYU also moves for dismissal of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, the facts alleged in support of this claim differ from those alleged in support of Plaintiff's claim for breach of contract.

*Fourth*, Plaintiff has adequately pled state law tort claims for intentional infliction of emotional distress ("IIED"), negligence and negligent infliction of emotional distress. Plaintiff's IIED claim is grounded in Defendants' knowledge that the Blacklist and resulting harassment severely impacted Plaintiff's mental health and their decision to continue a course of inaction that favored female NYU students over Plaintiff and potentially other students who have been falsely accused. Plaintiff's well-pled negligence-based claims are grounded in Defendants' control over the campus response to the Blacklist and the various policies which controlled the way misconduct complaints were handled. Upon receipt of Plaintiff's multiple reports, a duty arose to take steps to protect him from further harassment. Defendants' argument that Plaintiff failed to allege proximate cause is baseless since causation is typically decided by a jury.

## RELEVANT FACTS

Plaintiff matriculated to NYU's Tisch School of the Arts ("NYU Tisch") in Fall 2018 and graduated in May 2022. FAC ¶ 29;[1] Tenzer Decl., Ex. B. It was an honor to be accepted to NYU Tisch and Plaintiff's goal was to learn as much as possible from the school's esteemed faculty, fellow classmates, guest lecturers and professional filmmakers FAC ¶¶ 3-4. Students at NYU Tisch rely not only on their formal education, but the connections they make and the portfolios they compile while attending the school. ¶¶ 4, 18-19, 32-33. Until Spring 2022, Plaintiff was thriving. He did well in his classes, was respected by his professors and had numerous opportunities to work on films and commercials. FAC ¶¶ 32-33.

In March 2022, an anonymous group of NYU Tisch students published a Google spreadsheet to the NYU community which accused male NYU Tisch students of sexual misconduct. FAC ¶ 6. The spreadsheet, known as the "Blacklist," was created and disseminated for the purpose of encouraging female and non-binary students to lodge misconduct accusations against male students. FAC ¶¶ 7, 35. Students employed as NYU teaching assistants posted flyers around NYU's campus containing a QR code through which the Blacklist could be immediately accessed. FAC ¶¶ 9, 36. The Blacklist was accessible via NYU's internet. FAC ¶ 76.

On April 5, 2022, Plaintiff learned that rumors were going around campus that he is a rapist. FAC ¶ 34. He viewed the Blacklist, which contained three entries about him, two of which falsely accused Plaintiff of criminal sexual misconduct, including that he is a "rapist." FAC ¶¶ 6, 34. The Blacklist was authored by NYU Tisch students "V.A." and "E.C.," who did not vet the allegations before publishing them. FAC ¶ 40. Plaintiff repeatedly pleaded with the creators of the Blacklist to remove the false allegations against him, to no avail. FAC ¶¶ 41-42. Plaintiff believes that NYU

---

[1] The First Amended Complaint will be referred to herein as the Complaint and cited as "FAC."

Tisch student "L.V." spread false rape allegations about Plaintiff as a result of the Blacklist or submitted false accusations about Plaintiff to the Blacklist. FAC ¶¶ 45-48.[2]

Between April 7, 2022 and April 28, 2022, Plaintiff reported the Blacklist, the resulting gender-based harassment he was suffering and the resulting impact on his mental health to: i) Campus Safety; ii) Defendant Jolley in the Office of Student Conduct; iii) NYU's Bias Response Line and Office of Equal Opportunity; iv) an NYU professor; and v) Defendant Sacks, the Chair of his Department. FAC ¶¶ 56-57, 67-69, 71-75, 91. On or about April 14, 2022, Public Safety told Plaintiff it could not take down the list. FAC ¶ 66. Defendant Jolley rejected Plaintiff's offer to assist NYU in identifying the origin of the Blacklist and informed Plaintiff that NYU had **no intention** of pursuing disciplinary action against the organizers of the Blacklist. FAC ¶¶ 67-70. The Office of Equal Opportunity referred the matter back to the Office of Student Conduct. FAC ¶¶ 71-72. Defendant Sacks, a mandatory reporter under NYU's Sexual Misconduct Policy, refused to meet with Plaintiff in an official capacity. FAC ¶¶ 73-75.[3]

The Blacklist and resulting harassment violated NYU's: i) Anti-Harassment Policy (FAC ¶¶ 80-94); ii) Student Conduct Policy (FAC ¶¶ 95-104); and iii) Sexual Misconduct Policy (FAC ¶¶ 105-110). The female students behind the Blacklist engaged in prohibited conduct under **every** student conduct policy at NYU. FAC ¶ 112. Yet NYU took **no action** to assess or investigate Plaintiff's reports of sex discrimination and harassment. FAC ¶¶ 76, 111. Plaintiff was merely

---

[2] Plaintiff filed a defamation action against L.V., V.A. and E.C. in New York state court under the pseudonym "John Doe" and under seal, though the defendants' names can be searched. It appears that Defendants located the case by searching for one of the defendants' names in the court's e-filing system, suggesting that Defendants knew the identity of the creator(s) of the Blacklist or have otherwise been in contact with them about the lawsuit. In their moving brief, Defendants reference Plaintiff's defamation lawsuit several times. However, the pendency of the lawsuit has no bearing on whether Plaintiff has adequately pled the claims alleged in the Complaint.

[3] An article published in NYU's student newspaper and referenced in Defendants' motion, notes that—in contrast to his unwillingness to assist Plaintiff—Sacks directly intervened on behalf of a non-binary student who alleged that they were discriminated against based on their gender identity. Moniz, C., *Tisch blacklist prompts administration to address student misconduct*, Washington Square News, May 3, 2022, *available at* https://nyunews.com/news/2022/05/03/tisch-blacklist-prompts-administrative-action/ (hereinafter "Moniz").

given a list of various mental health resources and a few academic accommodations as the bullying and harassment continued unabated through graduation. FAC ¶¶ 37-39, 43-44, 53, 57-58, 66, 69, 71-72, 75, 78-79, 90, 96, 99, 114-117.

On April 11, 2022, NYU issued a statement to the campus, signed by Defendant Sacks (the "NYU Statement"), which supported the female accusers who posted to the Blacklist, encouraging them to "avail themselves of the reporting options available at NYU." FAC ¶ 61. In contrast, the statement only "reiterate[d] the support options available" to the male students "impacted by the circulation of" the Blacklist. FAC ¶¶ 61-63. NYU further minimized the impact of the Blacklist, stating "We understand the desire for students to share concerns with each other." FAC ¶ 61. The message of the NYU Statement was clear—NYU was interested in helping female and nonbinary students seek resolution of their reports against male students and did not view the Blacklist as being potentially violative of NYU's policies. FAC ¶¶ 63-64. The NYU Statement emboldened students to bully and harass Plaintiff and lent credibility to the Blacklist. FAC ¶¶ 65, 78.

As a result of Defendants' inaction, Plaintiff suffered tremendously in the time period leading up to graduation. He developed PTSD, suicidal ideation and self harm. FAC ¶ 38. The bullying, harassment and ostracization of Plaintiff continued through his graduation as he was removed from prestigious film shoots, stopped receiving employment offers from NYU alumni, was stalked and harassed by a female who had seen the Blacklist, and was no longer booked to work on professional gigs. Plaintiff's fellow students, including friends, pretended not to hear him when he spoke, ignored his messages, changed seats if he sat near them and walked the other way to avoid him. FAC ¶ 43. Plaintiff could not attend classes, fell behind in his assignments and failed to complete a short live action film (which resulted in an "F" on his transcript). FAC ¶ 50. He was excluded from film projects to which other students had access and unable to build a portfolio truly

representative of his capabilities. FAC ¶¶ 119-21. The rumors and false allegations against Plaintiff that originated at NYU Tisch, continue to severely impact Plaintiff's career prospects and mental health. FAC ¶¶ 122, 143.

## APPLICABLE LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Doe v. Sarah Lawrence College*, 453 F. Supp. 3d 653, 663 (S.D.N.Y. 2020) (cleaned up). "A claim is plausible on its face when the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a motion to dismiss, the court must take all well-pled factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Id.*

On a motion to dismiss, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, as well as documents "integral" to the complaint. *Id.* at 664. However, a mere passing reference or even references, to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself. *Id.* Moreover, a document is not "integral" simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing the complaint. *Id.*

## ARGUMENT

**I.** <u>**Plaintiff Has Plausibly Alleged a Title IX Deliberate Indifference Claim**</u>[4]

NYU mischaracterizes Plaintiff's well-pled allegations and overstates the stringency of the requirements set forth by the Supreme Court in *Davis v. Monroe County Board of Education*, 119 S. Ct. 1661 (1999), in a failed effort to deflect from the strength of Plaintiff's Title IX deliberate

---

[4] Whether a university acted with deliberate indifference is a fact-laden question that is ill suited for disposition on a motion to dismiss. *Cianciotto v. New York City Dep't of Educ.*, 600 F. Supp. 3d 434, 452 (S.D.N.Y. Apr. 22, 2022).

indifference claim. As set forth below, Plaintiff has plausibly alleged that a) he was sexually harassed; b) NYU had substantial control over the harassers and the context in which the harassment occurred; c) NYU's First Amendment concerns are unfounded; d) NYU's response to Plaintiff's complaints was clearly unreasonable; and e) Plaintiff was deprived of access to educational opportunities and benefits provided by NYU.

### A. Plaintiff Alleged Peer Sexual Harassment

Plaintiff has plausibly alleged that the posts about him were published to the Blacklist "out of a desire to harass him for being male." *See* Moving Br. at 16 (citing *Doe v. Univ. of Chicago*, 2017 WL 4163960, at *7 (N.D. Ill. Sept. 20, 2017)). Plaintiff's name is on the Blacklist because he is male. FAC ¶¶ 6-7. The Blacklist was intended for the exclusive use of female and nonbinary NYU Tisch students to post unfounded sexual allegations against male students. FAC ¶¶ 7, 35. The QR Code for the list was posted in women's bathrooms on NYU's campus. FAC ¶ 36. After the Blacklist was published, Plaintiff suffered bullying and harassment, including being referred to as "Harvey Weinstein." FAC ¶¶ 39-40, 43. The allegations against Plaintiff that appear on the Blacklist, including that Plaintiff is a "rapist," are false. FAC ¶¶ 6, 35. There is no allegation that Plaintiff was ever the subject of any Title IX complaints or criminal charges. Plaintiff does not know for certain who submitted the false information about him to the Blacklist. FAC ¶¶ 44-48. He believes that it was a female student, "L.V.," who spread false rumors about him on a film set. *Id.* Plaintiff and the student, "L.V.," never had any form of sexual contact. FAC ¶ 46.

While NYU argues for dismissal on the ground that the misconduct described above is not "the kind of harassment at the core of most Title IX peer harassment claims," (Moving Br. at 15), the Second Circuit has not excluded the type of allegations at issue here—anonymous, unvetted, secondhand, false accusations published by persons unknown to Plaintiff—from actionable

"sexual harassment" under Title IX. The current Title IX Regulations, which were in effect in Spring 2022, define "sexual harassment," as "[u]nwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's educational program or activity." 34 C.F.R. § 106.30; FAC ¶ 105. "This definition … includes conduct of a sexual nature, *or other unwelcome conduct on the basis of sex*." *Nondiscrimination on the Basis of Sex in Educational Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,036 (May 19, 2020) (emphasis added). Plaintiff's allegations, set forth above, fall within this definition.[5]

Defendants cite no binding authority for the proposition that "an accusation of rape or sexual misconduct does not constitute actionable gender discrimination under Title IX." Moving Br. at 14. Multiple cases have found that being called a "rapist," or accused of sexual harassment, *can* support a discrimination claim. *Doe v. Columbia Univ.*, 2022 WL 4537851, at *30 n. 9 (S.D.N.Y. Sept. 28, 2022) (Woods, J.) (accepting "rapist" as gender-based slur for purposes of motion to dismiss); *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 366-367 (S.D.N.Y. 2017) (Woods, J.) (hereinafter "*Nungesser II*") (acknowledging that the term "rapist" can be used as "an abusive gender stereotype in certain circumstances"); *Univ. of Chicago*, 2017 WL 4163960, at *7 ("To be sure accusations of sexual assault might be part of gender-based harassment.") Unlike the present case, *Nungesser II* and *University of Chicago* each involved Title IX disciplinary proceedings and statements made by a known, identifiable accuser who had sexual contact with the plaintiff and was found to be motivated by personal animus as opposed to gender bias.[6] Here,

---

[5] While NYU correctly asserts that the Office for Civil Rights rescinded its 2001 Guidance, (Moving Br. at 15), it ignores that "[t]he guidance clarifie[d] that gender-based harassment, including that predicated on sex-stereotyping, is covered by Title IX if it is sufficiently serious to deny or limit a student's ability to participate in or benefit from the program." Gorycki Decl., Ex. 1, 2001 Guidance at v.

[6] *See also Roe v. St. John's Univ.*, 2021 WL 1224895, at **19-21 (E.D.N.Y. Mar. 31, 2021); *Doe v. Washington Univ.*, 434 F. Supp. 3d 735, 745-55 (E.D. Mo. 2020); *Doe v. Columbia College Chicago*, 299 F. Supp. 3d 939, 950-952 (N.D. Ill. 2017). The remaining cases cited by Defendants are also inapposite. *See Doe v. Univ. of S. Ala.*, 2020 WL 759895,

there is no allegation that Plaintiff was the subject of any Title IX proceedings, acknowledged any sexual contact with an identified accuser, or that Plaintiff was personally known to the creators of the Blacklist. *See* FAC ¶¶ 40, 46.

In *Doe v. East Haven,* 200 Fed. Appx. 46, 48 (2d Cir. 2006), the Second Circuit held that a female student who was harassed by primarily female peers for falsely reporting that she was raped fell within the protection of Title IX. The students who harassed the plaintiff in *East Haven* could equally have been motivated by personal animus as well as gender, yet the case proceeded to trial. In *Nungesser II*, the court rejected the applicability of *East Haven*, expressing concern that "every accused campus rapist" would be able to sue under Title IX if the court allowed the male plaintiff's claim to proceed. The court focused on rape as a criminal act and overlooked that the plaintiff—whom the university found "not responsible" for sexual assault and was not criminally charged—was falsely accused. 244 F.3d at 365-366. Male students who are harassed by their peers as a result of being falsely accused should be accorded the same protection under Title IX as female students who are harassed by their peers for reporting false accusations, particularly under the circumstances alleged here.

### B.  NYU Had Substantial Control Over the Harassers and the Context

NYU exercised "substantial control over both the harasser[s] and the context in which the known harassment occurr[ed]." *Feminist Maj'y Found. v. Hurley*, 911 F.3d 674 (4th Cir. 2018) (citing *Davis*, 526 U.S. at 645). In *Feminist Majority*, the Fourth Circuit reversed the dismissal of the plaintiffs' Title IX deliberate indifference claim because *inter alia* the plaintiffs sufficiently

---

at *14 (S.D. Ala. Feb. 14, 2020) (plaintiff did not allege that threats made by friends of two Title IX complainants during Title IX proceedings were "gender based"); *Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 128 (N.D.N.Y. 2019) (university administrator failed to allege facts that supported claims of sex discrimination against employer where public statements about the plaintiff concerning prior sexual misconduct complaints were not made by university employees); *Doe v. Univ. of Mass-Amherst*, 2015 WL 4306521, at **8-9 (D. Mass. July 14, 2015) (addressing whether plaintiff adequately pled gender bias in support of erroneous outcome and selective enforcement claims).

pled that the university-defendants had "substantial control." 911 F.3d at 687. The harassment at issue occurred on a social media platform known as Yik Yak and the messages "originated on or within the immediate vicinity of the [university's] campus." *Id.* The university's wireless network was used to post messages to Yik Yak and the "harassment concerned events occurring on campus and specifically targeted [the university's] students." *Id.* The Fourth Circuit noted that "if the [u]niversity had pinpointed the harassers it could then have circumscribed their use of [its] network" because "[i]t is widely known that a university can control activities that occur on its own network." *Id.* at 688. The Court added that the university's administrators could have clearly communicated to the student body that the harassment in question would not be tolerated. *Id.* The Court also found that the university had control, or "disciplinary authority," over the harassers because its policies gave the university the ability to punish online harassment that occurred on and off campus. *Id.* At bottom, the university could not "turn a blind eye to the sexual harassment that pervaded and disrupted its campus solely because the offending conduct took place through cyberspace." *Id.* at 688-689. The same principles apply here.

In this case, the Blacklist was created by female NYU Tisch film students and targeted male NYU Tisch film students. FAC ¶¶ 35-36, 40. The QR Code to access the Blacklist was posted on campus by NYU student-employees. FAC ¶ 9. The Blacklist was accessed using NYU's internet. FAC ¶ 76. NYU acknowledged that it had control over the harassers and the context in which it occurred by issuing the NYU Statement. FAC ¶¶ 60-65. The NYU Statement noted that the Blacklist was "circulated among film students"[7] and contained "serious allegations by students

---

[7] While NYU contends that there is no allegation that the Blacklist was "shared or administered by any NYU account or device" this statement suggests otherwise. *See* Moving Br. at 18. In accordance with *Feminist Majority*, discussed *supra*, Plaintiff need not allege that NYU had the ability to "edit or delete" the Blacklist or that it was "hosted on NYU servers." *See* Moving Br. at 18. While Campus Safety said that it could not shut down the page, its referral of the matter to the Office of General Counsel and Student Conduct suggested that they had the power to act. FAC ¶ 66.

against other students." FAC ¶ 61. NYU's Anti-Harassment Policy gave the University control over harassment that had "continuing adverse effects on NYU premises or in any program or activity," "regardless of whether the wrongdoer was a student." FAC ¶¶ 83-85; Tenzer Decl., Ex. C, at 1.[8] NYU's Student Conduct Policy also gave the University control over online harassment "regardless of where the computer [wa]s located." FAC ¶ 100; Gorycki Decl., Ex. 2, "Policy Requirements," at A.3, B.1.

NYU argues, without citation to any authority, that "universities do not have substantial control over every website linked in every on-campus flyer or poster" and that "a contrary holding on this score would be truly staggering." Moving Br. at 18. Plaintiff does not seek such a broad ruling. On the contrary, this case involves specific online content that targeted male NYU students, was subject to NYU's disciplinary policies and that was created and circulated by NYU students to NYU students. Moreover, in the nearly five years since the Fourth Circuit addressed similar allegations in *Feminist Majority* Title IX liability has not "exploded." *See* Moving Br. at 19. Nor would a ruling that aligns with *Feminist Majority* on the issue of substantial control constitute a "reshaping" of the law. *See* Moving Br. at 19-20.

In *Columbia University*, which NYU relies upon to minimize the life-destroying Blacklist as mere "teasing and name calling," the court accepted as true for purposes of a motion to dismiss that the term "rapist" constituted a gender-based slur in some circumstances. 2022 WL 4537851, at n. 9; Moving Br. at 18-19. The court then ***declined to decide*** whether the term was "used in a gendered way" because the plaintiff did not allege that the university knew about the comment. *Id.*

---

[8] For this reason, NYU is simply incorrect that it had no control over the student from another university who stalked Plaintiff. *See* Moving Br. at 18. Regardless, the crux of Plaintiff's complaint is that he was harassed by NYU students via the Blacklist and as a result of the Blacklist. Demonstrating the weakness of their arguments, NYU also asserts that it had no control over "the non-students who withheld professional opportunities" from Plaintiff. However, Plaintiff alleged that he lost professional opportunities because of NYU's failure to remedy the ***ongoing peer harassment*** he suffered as a result of the Blacklist. *See id.*; FAC ¶ 43.

While the court noted that it would be "untenable to hold educational institutions liable for every comment about a student on a blog post," it did not reach the issue of whether the blog comment in question would give rise to Title IX liability if the university had known about it. *Id.* at *30.

### C. Private Universities Are Not Restricted By the First Amendment

NYU's purported concerns about policing its students' speech, (Moving Br. at 11, 19-20), are meritless given that it is a private university and, consequently, its students are ***not protected*** by the First Amendment. *Bilicki v. Syracuse Univ.*, 68 Misc. 3d 1230(A), at *6 (N.Y. Sup. Ct. 2019). *See also Mitchell v. New York Univ.*, 129 A.D.3d 542, 544 (1st Dep't 2015) ("Neither private universities nor their employees are 'state actors' for the purpose of constitutional claims … alleging the violation of the right to free speech.") Indeed, NYU's own policies allow the University to impose discipline for harassing, online speech, including outside the context of any program or activity and regardless of where a computer is located. FAC ¶¶ 83-85, 97, 100; Tenzer Decl., Ex. C, at pp. 2-3; Gorycki Decl., Ex. 2, "Policy Requirements," Pts. A.3, B.1.[9] NYU does not contend that its own policies are unconstitutional.[10]

Assuming *arguendo* that the Blacklist implicated the First Amendment, Plaintiff alleged that NYU could have taken steps to address the Blacklist that would not expose it to liability, such as taking a stronger stance against the Blacklist in the NYU Statement (FAC ¶¶ 63, 78), investigating the origination of the Blacklist (FAC ¶¶ 67-70) and pursuing a conduct process and/or taking disciplinary action against the creators of the Blacklist (FAC ¶¶ 69-70). *See Feminist Maj'y.*, 911 F.3d at 688-689, 693 & n. 9. In *Feminist Majority*, which concerned claims against a public

---

[9] NYU's Student Conduct Policy expressly states that the exercise of free speech ***must*** occur within the standards set forth in NYU's policies. Tenzer Decl., Ex. E, at p. 1.

[10] NYU's assertion that the Blacklist was "private" "off campus" speech is a mischaracterization of the facts at issue here. FAC ¶¶ 6-9, 12, 17, 34-36, 43. Moreover, posting unvetted, anonymous false allegations of rape can hardly be described as a "discussion[s] of sex and sexuality." Moving Br. at 19.

university, the plaintiffs alleged, among other things, that the university should have deactivated a social media platform altogether. Plaintiff's allegations do not concern blocking access to a social media platform, but rather NYU's failure to act in accordance with its own policies to take action against those responsible for publishing false sexual assault allegations about him to the Blacklist. Regardless, the Supreme Court has made clear that even public universities can regulate campus activities that "infringe reasonable campus rules, interrupt classes, or **substantially interfere with the opportunity of other students to obtain an education**." *Healy v. James*, 92 S. Ct. 2338, 2350 (1972) (emphasis added).[11]

### D. NYU's Response Was Clearly Unreasonable

While courts should generally refrain from second-guessing the day-to-day disciplinary decisions of educational institutions, "this does not categorically insulate school officials from liability in well-pled cases of unreasonable official responses to a student's harassment." *Cianciotto v. New York City Dep't of Ed.*, 600 F. Supp. 3d 434, 458 (S.D.N.Y. 2022). Where, as here, NYU failed "to protect a known vulnerable student in the face of known severe [harassment and] bullying" it is not entitled "to any such solicitude." *Id.*

An educational institution is deliberately indifferent when its "response to known discrimination is clearly unreasonable in light of the known circumstances." *Campisi v. CUNY*, 2016 WL 4203549, at * 7 (S.D.N.Y. Aug. 9, 2016) (cleaned up). As the "'known circumstances' change, the sufficiency of a response may also have to evolve." *Zeno v. Pine Plains Centr. Sch.*

---

[11] *Bd of Regents of Univ. of Wis. Sys. v Southworth*, 529 U.S. 217, 232 (2000), addressing the constitutionality of campus activity fees, involved a public university. *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2046 (2021) involved a public high school and the statements at issue, made on the student's Snapchat account, did not target any member of the school community. *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013), concerned claims "sounding in defamation" between business competitors. In *Nungesser II*, the court declined to consider whether free speech concerns were a valid defense to a deliberate indifference claim. 244 F. Supp. 3d at 371. Nungesser's accuser had no First Amendment rights as a private university student and, accordingly, any argument that the university's failure to protect the plaintiff from the unimaginable peer harassment he had to bear was grounded in the university's "responsibility to account for students' rights to free speech" was meritless.

*Dist.*, 702 F. 3d 655, 668 (2d Cir. 2012). A plaintiff may show that a school was deliberately indifferent if i) its response was not reasonably calculated to end harassment; ii) its inaction caused students to undergo harassment or made them vulnerable to it or iii) if remedial action only followed after a lengthy and unjustified delay. *Campisi*, 2016 WL 4203549, at * 7. Here, Plaintiff plausibly alleged that NYU's response was clearly unreasonable.

Over the course of a month, Plaintiff repeatedly reported the sexual and gender-based harassment he suffered to numerous mandatory reporters.[12] FAC ¶¶ 56-57, 66-69, 71-73, 91. In response, NYU took *no action* to investigate the origins of the Blacklist or pursue disciplinary action against its creators. FAC ¶¶ 12, 66-70, 73-76, 78-113, 135. Instead, NYU *encouraged* the female students whose accusations were published on the Blacklist to report the "potential misconduct," while only offering "support options" to the falsely accused. FAC ¶ 61. This emboldened the students involved, and others, to continue their harassment and bullying of Plaintiff. FAC ¶¶ 61-65, 78-79, 114-117. Consequently, Plaintiff was forced to complete his senior year in an extremely hostile environment and was subjected to bullying, false accusations and harassment on the basis of his sex and gender identity. FAC ¶¶ 12, 20, 39, 53, 79, 88, 115, 140.

Based on these allegations, it is simply nonsensical for NYU to assert that "Plaintiff himself concedes that NYU took substantial steps in response to his reports about" the Blacklist. *See* Moving Br. at 9-10. The NYU Statement can hardly be described as speaking "against the spreadsheet." Moving Br. at 10; FAC ¶¶ 61-65. While NYU implies that the NYU Statement was issued in response to plaintiff making a report to Campus Safety, there is no allegation that Plaintiff's report—as opposed to other motivations—prompted school officials to issue the

---

[12] NYU points to Plaintiff's meeting with Defendant Sacks as part of its efforts to assist Plaintiff. However, Sacks made clear that he had no intention of assisting Plaintiff and would only speak "off the record" at a coffee shop. FAC ¶ 75.

Statement.[13] *See* Moving Br. at 10; FAC ¶¶ 60-65. After the NYU Statement was issued, Plaintiff made ***four (4)*** additional reports of continuing harassment to various mandatory reporters on campus. FAC ¶¶ 67-76. Campus Safety also referred the matter to the Office of the General Counsel. FAC ¶ 66.[14] NYU took no action even though the Blacklist violated every NYU student conduct policy in effect at the time. FAC ¶¶ 69, 86-94, 104, 108, 112, 114, 133, 138, 140.[15] While NYU asserts that its mere referral of Plaintiff to support services was an adequate response, there is no allegation that Campus Safety provided Plaintiff with any meaningful, or even useful, resources. *See* Moving Br. at 10; FAC ¶ 58. It also "not enough to try to help a student cope with the misbehavior of other students" by offering counseling services or a listening ear. *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1313-1314 (10th Cir. 2020). *See Feminist Maj'y*, 911 F.3d at 689 ("mere act of listening" was not enough and deliberate indifference found where university made no real effort to investigate online harassment and threats). NYU is also incorrect that its provision of "certain" (as opposed to "multiple") academic accommodations was a reasonable response to the campus-wide harassment of Plaintiff because they had no impact on the continuing gender-based harassment and bullying that he suffered. *See* Moving Br. at 10; FAC ¶ 78. As alleged in the

---

[13] Plaintiff's allegations that NYU lent credibility to, and effectively sponsored, the Blacklist by issuing the NYU Statement are supported—not contradicted—by the Statement itself, which expressly encouraged the female students who made accusations on the Blacklist to report the "potential misconduct" while only offering supportive resources to the male students who were falsely accused. The Statement further communicated NYU's understanding of "the desire for students to share their concerns with each other." FAC ¶ 61. *See* Moving Br. at 10 n. 7. The Moniz article cited by NYU does not contradict Plaintiff's allegations. *See* Moving Br. at 10 n. 7. Per the article, the "creator" of the Blacklist criticized the NYU Statement for not addressing the "toxic environment" at NYU Tisch or discussing the actions that would be taken to "protect students on set." Moniz, *available at* https://nyunews.com/news/2022/05/03/tisch-blacklist-prompts-administrative-action/.

[14] NYU mischaracterizes Lieutenant Sanchez's statement as a determination that ***NYU*** could not shut down the Blacklist when in fact she told Plaintiff that Campus Safety was unable to do so and escalated the matter to NYU's General Counsel. FAC ¶ 66.

[15] For this reason, NYU's assertion that its response was reasonable because it complied with its policies falls flat. *See* Moving Br. n. 10. *Doe v. Columbia Univ.*, 2022 WL 3666997, at *14 (S.D.N.Y. Aug. 25, 2022), is readily distinguishable because it concerned the purported exclusion of expert testimony during a Title IX investigation as opposed to a school's failure to investigate ongoing harassment. Unlike Plaintiff, in *Roskin-Frazee v. Columbia Univ.*, 2018 WL 6523721, at *8 (S.D.N.Y. Nov. 26, 2018), the student-plaintiff asked the university not to investigate her rape allegations. As further discussed *infra* at Point III, NYU violated its policies by declining to act in response to Plaintiff's reports.

Complaint, NYU's purported "response" to Plaintiff's reports of sexual and gender-based harassment was not reasonably calculated to end the harassment and made Plaintiff vulnerable to further harassment.[16]

NYU improperly submitted a letter in support of its motion which ***post-dates*** Plaintiff's graduation by over two months, arguing that it should be considered by the Court. Tenzer Decl., Exs. A-B. The letter was neither "incorporated by reference" nor relied on in Plaintiff's initial complaint which expressly states that said letter ***was not*** provided. *See* Moving Br. at n. 10; ECF No. 1, ¶ 75. Upon receipt of the initial complaint, NYU objected to the allegation and demanded "timely…corrective action" noting it "would consent to the filing of an amended complaint" and the inaccuracy "should be fixed." Gorycki Decl. Ex. 3. Included with the demand was a copy of the July 27, 2022 letter which was provided to Plaintiff as part of NYU's discussions with his prior counsel. *Id.*; Tenzer Decl., Ex. A. While Plaintiff obliged NYU's request in an effort to stave off unnecessary motion practice, the letter is not a document that is "fairly implicated" by Plaintiff's deliberate indifference claim because it concerns actions taken by NYU ***after*** Plaintiff's graduation from NYU. *See* Moving Br. at n. 8; FAC ¶¶ 2, 19-20; Tenzer Decl., Ex. B; Gorycki Decl., Ex. 3. It accordingly has no bearing on the reasonableness of NYU's response to Plaintiff's reports of sexual

---

[16] NYU asserts that "courts in this Circuit have held that a school's response was not clearly unreasonable where the school did substantially less than NYU did here." Moving Br. at 12. Putting aside that NYU took ***no steps*** to stop the harassment, it ignores that the Second Circuit, and courts located therein, have held that a school's response was clearly unreasonable where the school took ***multiple steps*** to try to remedy or end the harassment. *See A.S. v. City School Dist. of Albany*, 585 F. Supp. 3d 246, 275-276 (2d Cir. 2022) (limited investigation and other "half hearted" measures); *East Haven*, 200 Fed. App'x at 49 (delay of five weeks before taking action to stop harassment); *Cianciotto*, 600 F. Supp. 3d at 457-458 (finding "long-running inattention, deflection and inaction" despite opening of investigations, mediation and emergency transfer); *Sarah Lawrence College*, 453 F. Supp. 3d at 666 (failure to inform plaintiff of rights and options and delay in investigating complaint); *Campisi*, 2016 WL 420359, at *7 (significantly delayed investigation and office relocation). The non-binding decision in *Univ. of Chicago*, 2017 WL 4163960, at *9, does not align with these cases. *University of Chicago* is also distinguishable from the present case because it involved students who initiated Title IX proceedings against the plaintiff. The case is further discussed *supra* at Point I.A. In *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, the school took immediate steps to remedy the harassment. 2013 WL 177911, at **6-7 (S.D.N.Y. Jan. 16, 2013). In *Doe v. Torrington Board of Education*, the school did not have substantial control over the harassers or the context in which the assault occurred and could not investigate or discipline the plaintiff's harassers. 179 F. Supp. 3d at 198 (D.Conn. 2016).

harassment in April 2022, while he was a student. Even if it could be considered, the letter does not support dismissal of Plaintiff's deliberate indifference claim. Assuming that the letter were viewed as a form of remedial action taken by NYU (as opposed to a means of mitigating the damage caused by other students' unchecked misconduct) it **supports** Plaintiff's claim that NYU acted with deliberate indifference because the letter was provided only after a lengthy and unjustifiable delay. *See Campisi*, 2016 WL 4203549, at * 7.

The "other aspects" of the "known circumstances" proffered by NYU have no bearing on the reasonableness of the University's response to Plaintiff's reports of bullying and harassment. Moving Br. at 10-11. While NYU asserts that the Blacklist "was no longer publicly available starting in April 2022," this is unrelated to any action taken by NYU to prevent the further harassment of Plaintiff. Moving Br. at 11. Moreover, Plaintiff reported that he was the subject of gender-based harassment and bullying throughout the month of April 2022 and thereafter. FAC ¶¶ 43, 49-50, 55-79.[17] NYU also contends that there was a slight improvement in Plaintiff's grade point average in the Spring 2022 semester, and credits the unspecified academic accommodations it provided to Plaintiff. Moving Br. at 11; Tenzer Aff., Ex. B.[18] Plaintiff's Spring 2022 grades would not have been a "known circumstance" to NYU at the time of Plaintiff's reports. In addition,

---

[17] There is no allegation, or evidence, concerning when the creator of the Blacklist made it "private," what "private" means or whether NYU had knowledge about the privacy setting or its meaning at the time of Plaintiff's reports. The Moniz article relied upon by NYU also notes that the Blacklist's creator planned to republish it. *See* Moniz, at https://nyunews.com/news/2022/05/03/tisch-blacklist-prompts-administrative-action/. Plaintiff was able to view the Blacklist online at the time the Complaint was filed. FAC ¶ 17.

[18] Plaintiff's transcript is yet another issue that was brought up by NYU prior to the amendment of the initial complaint. Gorycki Decl. Ex. 3. The transcript does not contradict Plaintiff's allegation that, as a result of the harassment he suffered, he was "unable to complete a short, live action film for one of his courses prior to graduation. This resulted in him receiving a grade of 'F' on his academic transcript." FAC ¶ 50. NYU improperly asks the Court to weigh evidence and draw improper conclusions about the "gap in time" when, on its face, the transcript does not speak to this issue. NYU also overlooks that Plaintiff's transcript expressly states that "[i]n Spring 2020, the COVID-19 pandemic required significant changes to University operations, as all classes were transitioned to remote instruction." Tenzer Decl., Ex. B. Given this notation, it is certainly plausible that Plaintiff was unable to film during the semester in which he took the course. Regardless, the timing of the "F" grade bears no relationship to how NYU responded to Plaintiff's reports of harassment.

there is nothing in the Complaint—or on Plaintiff's transcript—from which the Court can conclude that Plaintiff's grades resulted from any accommodations provided by NYU as opposed to Plaintiff's resilience in completing film school despite suffering severe psychological distress. *See* FAC ¶¶ 20, 37-38, 43, 49-54. Assuming *arguendo* that the academic accommodations were of some help to Plaintiff, this does not contradict the allegation that NYU's response was clearly unreasonable because, as noted above, merely helping a student cope with the misconduct of other students is not enough.

NYU posits that it "could have exposed itself to Title IX retaliation claims" from the female students involved in creating the Blacklist had it chosen to discipline them. Moving Br. at 11. There was no such threat. Unlike the numerous reports of harassment that NYU received from Plaintiff, there is no allegation that the female students who submitted information to the Blacklist, or published the false accusations against Plaintiff, engaged in protected activity under Title IX by reporting Plaintiff to NYU. *See* 34 CFR § 106.71 (prohibiting retaliation against an individual that has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing); *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 171, 173-175 (2005) (plaintiff made complaints to direct supervisors); *Boucher v. Trustees of Canisius College*, 2023 WL 2544625, at *11 (W.D.N.Y. Mar. 17, 2023) (protected activity includes reporting discrimination, testifying in a proceeding or participating in an investigation about discrimination). The students who published the Blacklist did not personally accuse Plaintiff of sexual misconduct, nor could they be witnesses in any proceeding because there is no allegation that they had personal knowledge regarding the false accusations they posted to the Blacklist. FAC ¶ 40. As discussed *supra* at Point I.C, there were no "speech-protective values" at issue here. *See* Moving Br. at 11. Facing no "constitutional or statutory claims" whatsoever from those involved

with the Blacklist, NYU simply elected to side with the female students lodging false accusations over the male students who were falsely accused.

**E.  Plaintiff Was Deprived of Educational Opportunities and Benefits**

In *Davis*, 526 U.S. at 652, the Supreme Court held that a "dropoff in [the petitioner's] grades provide[d] necessary evidence of a potential link between [the petitioner's] education" and the sexual harassment she suffered. *Id.* at 653. The petitioner also alleged that she became unable to concentrate on her studies and had written a suicide note. *Id.* at 634. These allegations supported the claim that there was a concrete, negative effect on the petitioner's ability to receive an education. *Id.* at 643. *See Nungesser II*, 244 F. Supp. 3d at 367-368 ("Examples of such negative effects include a drop in grades, missing school, being forced to transfer schools, or mental health issues requiring therapy or medication.")  The Second Circuit has held that "even where a Title IX plaintiff's 'academic performance does not appear to have suffered' during the alleged sexual harassment but the harassment 'simply created a disparately hostile educational environment relative to [his] peers,' the issue of whether the harassment deprived the plaintiff of educational opportunities and benefits is one for the trier of fact." *East Haven*, 200 Fed. App'x at 48 (quoting *Hayut*, 352 F. 3d at 748, 750). In *East Haven*, the Second Circuit held that the fact a student was crying and upset almost every day for five weeks, in conjunction with repeated absences from class, was sufficient to establish that the plaintiff was deprived of educational benefits and opportunities. *Id.* at 49.[19]

---

[19] Plaintiff located no Second Circuit case which held that the "effects of the harassment must touch the whole or entirety of an educational program or activity." *See* Moving Br. at 16. In *Nungesser II*, the court cited an Eleventh Circuit decision. In *Nungesser II* the court declined to follow *East Haven* and apparently overlooked that the Second Circuit does not require a decline in academic performance to show a negative effect on a student's ability to receive an education. 244 F. Supp. 3d at 367-368. The plaintiff in *Nungesser II* did not allege that he had any significant mental health issues. NYU's reliance on *Feibleman v. Trs. of Columbia Univ.*, 2020 WL 3871075, at \*7 (S.D.N.Y. Jul. 9, 2020), is misplaced because the alleged loss of opportunities in that case resulted a finding of "responsible" in a Title IX proceeding. In *HB v. Monroe Woodbury Cent. Sch. Dist.*, 2012 WL 4477552, at \*17 (S.D.N.Y. Sept. 27, 2012),

Here, Plaintiff's allegations readily demonstrate the concrete, negative effects the sexual and gender-based harassment had on his ability to receive an education. Plaintiff: i) experienced depression, self-harm, suicidal ideation and PTSD such that he could not attend classes (*Id.* ¶ 39); ii) was removed from a film shoot by the head of the Tisch School Student Council (*Id.* ¶ 43a); iii) stopped receiving offers from NYU alumni to work on their film projects (*Id.* ¶ 43e); iv) was verbally attacked during group projects with fellow students (*Id.* ¶ 43d); v) was unable to complete a short, live action film for one of his classes and received an "F" as a result (*Id.* ¶ 50);[20] vi) was unable to complete a short film for an animation class (*Id.* ¶ 51); and vii) was kicked off films that later won prestigious awards at top film festivals (*Id.* ¶ 43g).

## II.   **Plaintiff's Title IX "Hostile Environment" Claim Is Not Duplicative**

Multiple courts in this Circuit have recognized separate, Title IX claims for "deliberate indifference" and "hostile environment" for alleged peer sexual harassment. *Doe v. Syracuse Univ.*, 2022 WL 4094555, at *6 n. 3 (N.D.N.Y. Sept. 27, 2022); *JD1 v. Canisius College*, 2022 WL 2308902, at **7-8, 12 (W.D.N.Y. June 27, 2022); *Sarah Lawrence College*, 453 F. Supp. 3d at 665-667. A hostile environment claim can be supported by conduct that amounts to deliberate indifference **or** a university's failure to act in response to a report of harassment. *Syracuse Univ.*, 2022 WL 4094555, at *6 n. 3. Plaintiff's hostile environment claim is not duplicative of his deliberate indifference claim and—even if it were—that would not be grounds for dismissal. *Compare* FAC ¶¶ 123-145 *with* FAC ¶¶ 146-161. *See, e.g.*, *Sarah Lawrence College*, 453 F. Supp. 3d at 665-667. In *Syracuse*, the court dismissed the hostile environment claim because the plaintiff

---

there were no allegations of psychological distress requiring treatment nor that the plaintiff was barred from participating in any school programs or activities.

[20] Whether or not Plaintiff was "able to boost his academic performance," which is inaccurate and further discussed *supra* footnote 18, is not dispositive because it is not necessary that Plaintiff to show a decline in academic performance.

failed to allege deliberate indifference or that the university failed to act, not because the claims were based on the "same facts." *See* Moving Br. at 20.[21]

### III.  <u>Plaintiff's Breach of Contract Claim Should Not Be Dismissed</u>[22]

Plaintiff alleged that the Blacklist fell within the definitions of prohibited conduct under each of NYU's applicable policies. FAC ¶¶ 80-112.[23] The Anti-Harassment explicitly covers prohibited conduct that occurs online (*e.g.*, by "electronic transmission"). FAC ¶ 83; Tenzer Decl., Ex. C, at p. 3. As does the Student Conduct Policy. FAC ¶¶ 100-101; Tenzer Decl., Ex. E, at Pts. III.D, III.E.2, and III.K. Even online conduct which occurs "outside the University context which … threatens the health, safety, or security of the University community" falls within the scope of the Student Conduct Policy. Tenzer Decl., Ex. E, at Pt. IV.[24]

NYU's Anti-Harassment Policy[25] states that allegations falling within the policy ***will be*** investigated and resolved under the Student Conduct Policy and Procedures. FAC ¶¶ 93-94; Tenzer Decl., Ex. C, at p. 4. Here, NYU undertook no investigation. FAC ¶¶ 67-69, 76, 94, 192(b). NYU's Student Conduct Procedures are defined as those procedures "by which alleged violations of the … Student Conduct Policy ***will be*** reviewed and resolved." Tenzer Decl., Ex. F, Statement of

---

[21] Because, as detailed *supra* at Points I and II,  Plaintiff has plausibly alleged Title IX claims for deliberate indifference and hostile environment (Counts I and II) his state law discrimination claims (Counts III-V) also survive Defendants' motion to dismiss. *See* Moving Br. at 20-21.

[22] Plaintiff agrees that NYU's promise to "maintain an environment that was free from bias, prejudice, discrimination and harassment" is an inactionable policy statement. *See* Moving Br. at 21. Accordingly, Plaintiff will not pursue a claim for any breach of that policy statement. FAC ¶ 193(a).

[23] For this reason, NYU's argument that it reserved the discretion to determine whether a particular policy applies holds no weight. *See* Moving Br. at 22.

[24] As discussed *supra* at Point I.B, the harassment at issue here did not occur "outside the university context."

[25] NYU's argument that the Anti-Harassment Policy does not apply because the "alleged harassment arises from an accusation of misconduct, not [Plaintiff's] sex or gender" is meritless for the reasons set forth *supra* at Point I.A. In any event, Plaintiff has also alleged that the Blacklist constituted "bullying, threatening and abusive behavior," "Disorderly Conduct" and a violation of the NYU Policy on Responsible Use of NYU Computers and Data. None of these violations concern sex or gender discrimination. FAC ¶¶ 95-102.

Policy.[26] The Procedures do not give NYU discretion to take steps it deems "appropriate," (Moving Br. at 22), but require NYU to elect an "appropriate forum" based on the potential sanctions that could result and the seriousness of the allegations. Tenzer Decl., Ex. F, at Pt. III (NYU "shall review the matter and determine an appropriate forum for resolution.") *See* FAC ¶¶ 93-94, 103. NYU can choose from a list of specific "forums" under the Procedures, ranging from informal resolution to more formal resolution procedures. *Id.* Here, NYU breached the Student Conduct Procedures because Plaintiff's complaints were not reviewed and no forum was selected for their resolution. FAC ¶¶ 69, 77, 103-104, 193(c).

The alleged sexual and gender-based harassment also fell within the scope of NYU's Sexual Misconduct Policy. FAC ¶ 105; Gorycki Decl., Ex. 4, Pt. II & n.1, Pt. VI.A.2.[27] *See also* discussion *supra* at Points I.A and I.B. NYU was required to conduct an initial assessment of Plaintiff's reports and notify Plaintiff of the results of that assessment. FAC ¶¶ 109-110. Gorycki Decl., Ex. 5, at Pt. I.A-D. As part of the initial assessment, NYU was required to contact Plaintiff to offer supportive measures and guidance on filing a formal complaint. *Id.* These procedures were not discretionary. *Id.* NYU breached its Sexual Misconduct Policy and Procedures because its mandatory reporters failed to report Plaintiff's complaints to the Title IX Coordinator,[28] no initial

---

[26] In *Syracuse Univ.,* 2022 WL 798058, at *7, the stated that the "Title IX investigator may conduct an investigation" as opposed to "will" or "shall" take certain steps. Though NYU cites *Feibleman*, 2020 WL 3871075, at *2, for its "similarly worded" policy language, (Moving Br. at 22), there are no similarities to the policies at issue here.

[27] The Tenzer Declaration attaches an inapplicable version of NYU's Sexual Misconduct Policy that is not cited in the Complaint. *See* Tenzer Decl., Ex. D (Aug. 14, 2020 policy). The Complaint cites the October 27, 2021 version of the Policy which is appended to the Gorycki Declaration as Exhibit 4. FAC ¶

[28] *Nungesser II*, cited at page 23 of the Moving Brief, is distinguishable from the present facts. Here, NYU's policy states that "Employees in a leadership or supervisory position, or who have significant responsibility for the welfare of Students ***are required*** to report Prohibited Conduct to the Title IX Coordinator." FAC ¶ 107 (emphasis added); Gorycki Decl., Ex. 4, at Pt. X.B. The policy at issue in *Nungesser II* stated that employees were "expected to" file a report. 244 F. Supp. 3d at 375-376.

assessment was conducted, and Plaintiff was neither notified of the outcome of any initial assessment nor given information about filing a formal complaint. FAC ¶¶ 105-111, 193(d).[29]

NYU asserts that Plaintiff's claim for breach of the covenant of good faith and fair dealing should be dismissed as duplicative of his breach of contract claim. However, Plaintiff's allegations that NYU breached the implied covenant of good faith and fair dealing are distinct from the allegations which support his breach of contract claim. FAC ¶¶ 194-196.

## IV.   Plaintiff's Tort Claims Should Not Be Dismissed

Plaintiff has adequately pled a claim for IIED (Count VII). "Knowledge of a plaintiff's susceptibility to emotional distress can, under New York law, transform non-actionable acts into outrageous conduct." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 123 (2d Cir. 2019). Conduct may become "heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge." *Id.* Here, Plaintiff suffered from depression, self-harm, suicidal ideation and PTSD as a result of the Blacklist. FAC ¶ 38. On April 7, 2022, Plaintiff told Campus Safety about the effect that the Blacklist was having on his mental health. FAC ¶ 57. After receiving this information, Defendants issued the NYU Statement and followed a course which favored the creators of the Blacklist over Plaintiff and potentially other male students who had been falsely accused. FAC ¶¶ 61-77, 201-202. NYU stayed on this course even though the Blacklist constituted prohibited conduct under each of NYU's policies. FAC ¶¶ 112. "Plaintiff begged and pleaded with members of the NYU staff and faculty for assistance in removing the Blacklist and clearing his name, but instead the University sat by and washed their hands of the situation." FAC ¶ 206. Each

---

[29] The issue is not whether NYU "considered the spreadsheet" but whether its failure to respond to Plaintiff's reports violated NYU's policies. *See* Moving Br. at 22. Nor does the Complaint allege that NYU chose not to take disciplinary action. *See id.* Defendant Jolley told Plaintiff that NYU did not intend to *pursue* disciplinary action. FAC ¶ 69. As set forth above, NYU was required to take action under each of its policies and procedures in response to Plaintiff's reports.

defendant was aware of the problems that Plaintiff was facing. FAC ¶¶ 55-76. Defendants inaccurately argue that Plaintiff has alleged that they acted with "mere indifference." Moving Br. at 24. Plaintiff pleads a claim for **deliberate** indifference (as opposed to "indifference"), which constitutes **intentional** sex discrimination in violation of Title IX. *See Davis*, 526 U.S. 643-644. This is also not a case in which Plaintiff's IIED claim can only be brought as a last resort. Plaintiff's claims, here, do not "sound in defamation" because he cannot aver defamation claims against Defendants. *See Rich*, 939 F.3d at 125 (distinguishing between lawsuits that could have been brought be a decedent and his parents).[30]

Plaintiff's claims for negligence and negligent infliction of emotional distress should also proceed to discovery because Defendants took affirmative steps to control the campus response to the Blacklist by issuing the NYU Statement. There were also various policies in place which controlled the way misconduct complaints were handled and, upon receipt of Plaintiff's numerous reports to mandatory reporters, a duty arose to take steps to protect him from further harassment.[31] FAC ¶¶ 55-76. *See Sarah Lawrence College*, 453 F. Supp. 3d at 669 (duty may be imposed to protect students from misconduct where university encourages students to report misconduct and takes affirmative steps to control the reporting and investigation process). Plaintiff further alleges that he reported the ongoing harassment he suffered, and its impact on his mental health, to Defendants on at least five separate occasions over the course of a month. FAC ¶¶ 55-79. Accordingly, Defendants' assertion that the harassment was "unforeseeable" is untenable. *See* Moving Br. at 25. Plaintiff further alleges that Defendants' failure to act, coupled with the

---

[30] In *Nungesser II*, the court pointed out that the plaintiff could have brought a defamation action against the university but chose to pursue a Title IX claim instead. 244 F. Supp. 3d at 355, 357, 367.

[31] Defendants' reference to "students at other schools" is misleading since NYU's policies gave the University the authority to act even when the respondent was not a student. *See* Moving Br. at 25; FAC ¶¶ 83-85, 100. Moreover, the harassment that Plaintiff suffered was primarily carried out by NYU students. FAC ¶¶ 41-45.

encouraging NYU Statement, was the proximate cause, or "substantial cause of the events which produced the injury." *Hain v. Jamison*, 68 N.E. 2d 1233, 1237 (N.Y. Ct. App. 2016). Regardless, proximate cause is generally a question of fact to be decided by a jury. *Id.* at 1238.[32]

## CONCLUSION

For the above stated reasons, the Court should deny Defendants' motion to dismiss in its entirety and this case should proceed to discovery.[33]

Dated: July 21, 2023

Respectfully Submitted,

  /s/ *Kara L. Gorycki*
   Kara L. Gorycki
Andrew T. Miltenberg
Amy Zamir
NESENOFF & MILTENBERG, LLP
363 Seventh Ave., 5th Floor
New York, New York 10001
(212)736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com
azamir@nmllplaw.com

*Attorneys for Plaintiff John Doe*

---

[32] *Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 646 (E.D.N.Y. 2013), decided at the summary judgment stage, is readily distinguishable because the defendants in *Carabello* "took immediate, affirmative steps" to protect the plaintiff. In *Brandy B. v. Eden Centr. Sch. Dist.*, 934 N.E. 2d 306-307 (N.Y. 2010), also a summary judgment opinion, the school did not have notice of any prior conduct that was similar to the act that caused the plaintiff's injury.
[33] Defendants seek dismissal of the Complaint with prejudice, relying on inapposite cases to argue that there are no other facts that Plaintiff could allege in support of his claims. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to replead unwarranted where issues with pleading were substantive); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (finding an abuse of discretion where court deviated from "usual practice" of granting leave to replead); *Sabel v. Halsted Fin. Servs., LLC*, 2020 WL 6274986, at *7 (S.D.N.Y. Oct. 26, 2020) (leave to replead unwarranted where issues with pleading were substantive); *Wai Chu v. Samsung Electr. Am. Inc.*, 2020 WL 1330662, at * 9 (S.D.N.Y. Mar. 23, 2020) (claims time barred by applicable statute of limitations). Here, Defendants have submitted documentary evidence in support of their motion, namely Plaintiff's academic transcript and a letter given to Plaintiff after his graduation. *See* discussion *supra* at Point I.D. While, as discussed above, Plaintiff does not believe that these documents in any way contradict his allegations (if properly considered by the Court), additional facts could be supplied concerning the circumstances in which the "F" grade was received and the letter was issued. Notably, Defendants did not reference the July 2022 letter in their pre-motion submission to the Court. *See* ECF No. 24, at p. 2; Tenzer Decl., Ex. A.