UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

                *Plaintiff*,

v.

NEW YORK UNIVERSITY, EZRA SACKS, and CRAIG JOLLEY,

                *Defendants*.

No. 1:23 Civ. 01307 (KPF)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS NEW YORK UNIVERSITY, EZRA SACKS, AND CRAIG JOLLEY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Roberta A. Kaplan
Gabrielle E. Tenzer
Matthew J. Craig
Amit Jain
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
mcraig@kaplanhecker.com
ajain@kaplanhecker.com

Jackson Erpenbach, *admitted pro hac vice*
KAPLAN HECKER & FINK LLP
1050 K Street, NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jerpenbach@kaplanhecker.com

*Attorneys for Defendants New York University, Ezra Sacks, and Craig Jolley*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

    I.    Plaintiff's Title IX Claims Fail as a Matter of Law ........................................................ 1

        A.    The Alleged Harassment Was Not Based on Gender ............................................ 1

        B.    NYU's Response Was Not "Clearly Unreasonable" .............................................. 3

        C.    There Was No Systemic Deprivation of Educational Opportunities ...................... 6

        D.    NYU Did Not Have Substantial Control Over the Harassment .............................. 7

        E.    Plaintiff's "Hostile Education Environment" Claim Fails ..................................... 8

    II.    Plaintiff's State-Law Claims Also Fail ........................................................................... 9

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases** Page(s)

*Bailey v. N.Y. L. Sch.*,
  No. 19 Civ. 3473, 2021 WL 5500078 (2d Cir. 2021) .......................................................... 4, 9

*Barker v. Bancorp, Inc.*,
  No. 21 Civ. 869, 2022 WL 595954 (S.D.N.Y. Feb. 25, 2022) ............................................... 5

*Boucher v. Trs. of Canisius Coll.*,
  No. 22 Civ. 381, 2023 WL 2544625 (W.D.N.Y. Mar. 17, 2023) ........................................... 6

*Campisi v. City University of New York*,
  No. 15 Civ. 4859, 2016 WL 4203549 (S.D.N.Y. Aug. 9, 2016) ............................................ 4

*Davis v. Monroe County Bd. of Educ.*,
  526 U.S. 629 (1999) ..................................................................................................... passim

*Doe v. Columbia University*,
  No. 20 Civ. 6770, 2022 WL 4537851 (S.D.N.Y. Sept. 28, 2022) .......................................... 2

*Doe v. East Haven*,
  200 F. App'x 46 (2d Cir. 2006) ............................................................................................. 3

*Doe v. Sarah Lawrence Coll.*,
  453 F. Supp. 3d 653 (S.D.N.Y. 2020) ................................................................................. 10

*Doe v. Syracuse Univ.*,
  No. 21 Civ. 977, 2022 WL 4094555 (N.D.N.Y. Sept. 7, 2022) ............................................ 9

*Doe v. Union Coll.*,
  No. 19 Civ. 284, 2020 WL 1063063 (N.D.N.Y. Mar. 5, 2020) ........................................... 10

*Doe v. University of Chicago*,
  No. 16 Civ. 8298, 2017 WL 4163960 (N.D. Ill. Sept. 20, 2017) .......................................... 2

*Faiaz v. Colgate Univ.*,
  64 F. Supp. 3d 336 (N.D.N.Y. 2014) .................................................................................. 10

*Feibleman v. Trs. of Columbia Univ.*,
  No. 19 Civ. 4327, 2020 WL 3871075 (S.D.N.Y. July 9, 2020) ............................................ 6

*Feminist Majority Foundation v. Hurley*,
  911 F.3d 674 (4th Cir. 2018) ............................................................................................ 7, 8

*Foster v. Bd. of Regents of Univ. of Mich.*,
    982 F.3d 960 (6th Cir. 2020) (en banc) .................................................................. 8

*Karasek v. Regents of Univ. of Cal.*,
    956 F.3d 1093 (9th Cir. 2020) ................................................................................ 6

*KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*,
    No. 12 Civ. 2200, 2013 WL 177911 (S.D.N.Y. Jan. 16, 2013) ......................... 3, 4

*Nungesser v. Columbia Univ.*,
    244 F. Supp. 3d 345 (S.D.N.Y. 2017) ............................................................ 2, 3, 6

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
    633 F.3d 81 (2d Cir. 2011) ..................................................................................... 9

*Rich v. Fox News Network, LLC*,
    939 F.3d 112 (2d Cir. 2019) ................................................................................. 10

*Ricketts v. Wake Cty. Pub. Sch. Sys.*,
    No. 21 Civ. 49, 2022 WL 19710 (E.D.N.C. Jan. 3, 2022) ..................................... 8

*Zeno v. Pine Plains Century School District*,
    702 F.3d 655 (2d Cir. 2012) ................................................................................... 4

**Statutes**

20 U.S.C. § 1292g ............................................................................................................. 4

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss.[1]

## PRELIMINARY STATEMENT

Plaintiff's opposition brief, ECF 43, seeks to make the issues on this motion seem complicated, when they are not. Justice O'Connor in *Davis* made clear that the scope of Title IX liability in peer harassment cases is necessarily limited, requiring a plaintiff to show, among other things, a "clearly unreasonable" response to the alleged harassment and a school's "substantial control" over both the harasser and the context of the harassment. 526 U.S. 629, 645–49 (1999). Yet Plaintiff asks this Court to ignore *Davis* in favor of holding universities responsible for policing their students' online speech, without any meaningful limiting principle. Doing so would foist universities into the awkward and inappropriate role of speech censors, in direct defiance of *Davis* and the basic foundations of higher education in the United States.

Plaintiff also insists that these issues of Title IX deliberate indifference are ill-suited for resolution on a motion to dismiss. Opp. 6 n.4. But *Davis* rejects that view too. 526 U.S. at 649. At bottom, Plaintiff cannot identify a single Title IX claim concerning a university's response to sexual misconduct allegations made by one student against another, like Plaintiff's claim here, that has *ever* survived dismissal. That is because there is none. This case should not be the first.

## ARGUMENT

### I. Plaintiff's Title IX Claims Fail as a Matter of Law

#### A. The Alleged Harassment Was Not Based on Gender

Plaintiff does not get past the most basic element of a Title IX claim. Every single court to consider the issue has held that an accusation of sexual misconduct is not itself gender-based. Mot.

---

[1] All capitalized terms and abbreviations have the meaning given in Defendants' opening brief, ECF 34, and citations to "Mot. __" refer to pages of that brief. Citations to "Opp. __" refer to pages of Plaintiff's opposition brief, ECF 43.

1

14–15. To hold otherwise "would give every accused campus rapist the opportunity to sue under Title IX merely because the alleged criminal act complained of involved sex." *Nungesser v. Columbia Univ.* ("*Nungesser II*"), 244 F. Supp. 3d 345, 366 (S.D.N.Y. 2017). Nothing about Plaintiff's case—that he believes his accuser was a woman, that the accusation must be considered false on a motion to dismiss, or that other students allegedly reacted to the accusation as if it were true, Opp. 7—distinguishes it from the caselaw uniformly rejecting such Title IX claims.

Plaintiff seeks to circumvent these principles through selective quotation. *See id.* at 8. He plucks from *Nungesser II* the statement that the term rapist "can be used as an abusive gendered stereotype in certain circumstances." 244 F. Supp. 3d at 367–68. But he omits the very next sentence, which states: "However, [plaintiff] cannot invoke Title IX to censor the use of the terms 'rapist' and 'rape' by an alleged victim of the crime—those are the English words that define the criminal and the crime." *Id*. He omits similar language from *Doe v. University of Chicago*, where the court recognized that "sexual-assault accusations on their own are not inherently gendered." No. 16 Civ. 8298, 2017 WL 4163960, at *7 (N.D. Ill. Sept. 20, 2017). And he does the same with *Doe v. Columbia University*, where the court emphasized that "[i]t is far from clear that even the term 'rapist,' as used in the identified blog comment, is properly considered gender-based," before dismissing the peer-harassment claims on other grounds. No. 20 Civ. 6770, 2022 WL 4537851, at *30 n.9 (S.D.N.Y. Sept. 28, 2022).

Plaintiff also attempts to distinguish *Nungesser II*, *University of Chicago*, and other cases on the ground that they involved formal Title IX proceedings or that the plaintiffs knew their accusers. Opp. 8–9 & n.6. But Plaintiff himself characterizes the spreadsheet as having accused him of being "the perpetrator of criminal sexual misconduct," ¶ 132, just as the accuser in *Nungesser II*, for example, accused the plaintiff of a "criminal act that was sexual in nature," 244

F. Supp. 3d at 365. And the fact that the term "rapist" is used by a "known, identifiable accuser" or, as here, a specific female student who Plaintiff "believes" made the accusation, obviously does not change the motivation behind it. Opp. 7–8.

The summary order in *Doe v. East Haven* referenced by Plaintiff does not compel a different result. *See* Opp. 9. There, a 14-year-old girl reported a sexual assault and then was "persistently subjected by other students to verbal abuse that reflect[ed] sex-based stereotypes," such as being called a "slut," "bitch," and "whore." 200 F. App'x 46, 48 (2d Cir. 2006). Here, by contrast, according to Plaintiff's allegations, the word "rapist" was being used according to its "primary meaning—that is, to accuse him of being a rapist, whether falsely or not," as compared to being used as a "generic term to disparage [Plaintiff] as a man." *Nungesser II*, 244 F. Supp. 3d at 365–66; *see also* ¶¶ 7, 132.

### B. NYU's Response Was Not "Clearly Unreasonable"

The thrust of Plaintiff's argument is that because NYU purportedly "took no action to investigate the origins of the Blacklist or pursue disciplinary action against its creators," its response was "clearly unreasonable." Opp. 14; *see also id.* at 1, 9–12, 18. But the Supreme Court in *Davis* explained that Title IX does not permit plaintiffs "to make particular remedial demands," nor courts to "second-guess[] the disciplinary decisions made by school administrators." 526 U.S. at 648. Indeed, the circumstances here illustrate exactly why universities "retain broad flexibility in devising a response" to alleged harassment of one student by another. *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, No. 12 Civ. 2200, 2013 WL 177911, at *7 (S.D.N.Y. Jan. 16, 2013), *aff'd*, 531 F. App'x 132 (2d Cir. 2013); *see also* Mot. 9–14.

The investigation and disciplinary action that Plaintiff effectively demands here would have had no impact on the real-time harms he claims to have experienced. An investigation into the spreadsheet and the outcome of any such investigation would not only have been confidential,

3

but would have taken months to complete.[2] Plaintiff cannot explain how any such response would have reduced the harassment Plaintiff claims to have faced in the weeks leading up to his graduation.[3] As a result, Plaintiff fails to plausibly plead how NYU's actions, which included speaking out publicly against the spreadsheet and offering Plaintiff accommodations and resources, were "clearly unreasonable."

Plaintiff's argument that NYU was deliberately indifferent because "its response was not reasonably calculated to end harassment" misses the mark. Opp. 14. For one, according to the Supreme Court, the deliberate indifference standard is not one of "mere 'reasonableness.'" *Davis*, 526 U.S. at 649. Rather, the school "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Id.* Moreover, the Supreme Court specifically and explicitly rejected the view that schools must somehow "remedy peer harassment" or "ensure that students conform their conduct to certain rules." *Id.* at 648 (cleaned up); *see also Bailey v. N.Y. L. Sch.*, No. 19 Civ. 3473, 2021 WL 5500078, at *3 (2d Cir. Nov. 24, 2021) ("Victims do not have a right to specific remedial measures." (cleaned up)); *KF ex rel. CF*, 2013 WL 177911, at *7 (finding schools "not required to proceed in any particular manner, even if . . . there was a . . . policy in place that required the initiation of a formal investigation").[4]

---

[2] *See, e.g.*, ECF 44-5 at 11–12 (NYU's Sexual Misconduct Procedures instruct the parties "to maintain the privacy of . . . [FERPA]-protected and/or sensitive information gathered or learned in the Investigation," and explain that "[t]he Investigation typically will be completed within sixty to ninety days from the date of the initiation of the Investigation" but "[t]his timeframe may be extended"); 20 U.S.C. §§ 1292g(a)(4)(A), (b)(1) (FERPA prohibits universities from releasing students' disciplinary records without their consent); *see also* ECF 44-4 at 9 (NYU's Sexual Misconduct Policy: "The University will not release the name of the Complainant, the Respondent or witnesses to the general public except as otherwise permitted or required by law.").

[3] Indeed, Plaintiff seems to suggest that even having the spreadsheet taken down altogether would not have been sufficient to address the peer harassment at issue. *See* Opp. 17. Nonetheless, the FAC does not allege that the spreadsheet was viewable to the public after April 2022, ¶ 36 (the spreadsheet "was *initially publicly* available" (emphasis added)); Mot. 11, and Plaintiff now carefully represents only that *he* (not "the public" or "counsel") could view the spreadsheet when the Complaint was filed, Opp. 17 n.17.

[4] Plaintiff's confusion likely stems from his having paraphrased language from *Campisi v. City University of New York*, No. 15 Civ. 4859, 2016 WL 4203549, at *1–*2, *7 (S.D.N.Y. Aug. 9, 2016) (Failla, J.), which in turn quoted

The remainder of Plaintiff's arguments are based upon mischaracterizations of his own allegations. Plaintiff, for example, argues that NYU's public statement can "hardly be described as speaking 'against the spreadsheet.'" Opp. 14. But NYU's statement, which speaks for itself, makes clear that formalized procedures are preferred over an anonymous spreadsheet that "deprive[s]" students of the "impartiality and process to which they should be entitled." ¶ 61. That the statement did not condemn students who claimed to have experienced sexual misconduct does not make the statement unreasonable. NYU had no basis to reject those claims out of hand, and no principle of law would require any such condemnation. *See* Mot. 10 & n.7.[5]

Plaintiff similarly seeks to minimize the fact that his grades actually *improved* by arguing that this was not known to NYU at the time. Opp. 17–18. But Plaintiff acknowledges that NYU provided him with academic accommodations, the aim of which was to prevent the alleged harassment from negatively impacting his educational experience. ¶ 78. Those accommodations appear to have achieved the desired goal, so they could not have been clearly unreasonable.

Plaintiff also argues that the letter provided to him by NYU (stating that he had never been the subject of a Title IX investigation) has "no bearing on the reasonableness of NYU's response" because he received it *after* he graduated. Opp. 16–17.[6] This pre- versus post-graduation distinction makes little sense given that the investigation and disciplinary action that Plaintiff

---

*Zeno v. Pine Plains Century School District*, 702 F.3d 655, 669 (2d Cir. 2012). But *Campisi* involved harassment by a professor, 2016 WL 4203549, at *1, and *Zeno* makes a different point—namely, that a school's response may be "clearly unreasonable" if the school has "actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail," 702 F.3d at 669 (citation omitted).

[5] While Plaintiff makes insinuations about Defendants' awareness of his separate defamation lawsuit against the individuals he believes to be behind the spreadsheet, Opp. 4 n.2, nothing nefarious took place. We know about that lawsuit because Plaintiff's counsel told us about it.

[6] While Plaintiff insists that the letter cannot be considered on this Motion, Opp. 16, he concedes that he relied on the letter in preparing the FAC, removing certain allegations but omitting any new allegations that would have accurately reflected the facts surrounding the letter. Such cherry-picking is improper. *Barker v. Bancorp, Inc.*, No. 21 Civ. 869, 2022 WL 595954, at *6 (S.D.N.Y. Feb. 25, 2022) (Failla, J.).

claims should have occurred would not have been completed before graduation either. *See supra* 4 & n.2. Moreover, Plaintiff did not request a letter and then wait for months. Rather, it was NYU who offered the letter, and then promptly provided Plaintiff with a draft in less than two weeks. *See* ECF 44-3 at 1. To the extent Plaintiff is attempting to claim "a lengthy and unjustifiable delay," Opp. 17, courts have rejected periods far longer than two months as constituting deliberate indifference, *see, e.g.*, *Feibleman v. Trs. of Columbia Univ.*, No. 19 Civ. 4327, 2020 WL 3871075, at *4 & nn.7–8 (S.D.N.Y. July 9, 2020) (9-month delay); *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1106, 1109–10 (9th Cir. 2020) (13- and 8.5-month delays).

Plaintiff insists that NYU should not have considered any countervailing interests in developing its response. *See* Opp. 12–13, 18–19. But *Davis* specifically allows that to happen. 526 U.S. at 649. Although Plaintiff contends that there was no risk of a retaliation claim, Opp. 18, not even the case cited by Plaintiff supports his restricted definition of "protected activity," *id.* (citing *Boucher v. Trs. of Canisius Coll.*, No. 22 Civ. 381, 2023 WL 2544625, at *11 (W.D.N.Y. Mar. 17, 2023)); *see also* Mot. 11. And Plaintiff's stilted framing with respect to the First Amendment misses the point: while NYU may not be a state actor, Opp. 12–13, that does not mean free speech is irrelevant to university life or that NYU is not committed to protecting it on campus, Mot. 19.

### C. There Was No Systemic Deprivation of Educational Opportunities

Deprivation of educational opportunities is a "high bar." *Nungesser II*, 244 F. Supp. 3d at 368. Although Plaintiff claims that emotional distress caused him to miss certain classes toward the end of his final semester and to fail to complete a project, he concedes that his grades actually improved, Opp. 20 & n.20, illustrating that any mental health struggles, while unfortunate, did not

6

interfere with his education, *see* Mot. 16–17.[7] While Plaintiff claims that he was deprived of certain film opportunities, Opp. 20, he buries the fact that the FAC alleges only one film opportunity that had anything to do with NYU, which involved a "classmate's" project, not Plaintiff's own. ¶ 43(a).

### D. NYU Did Not Have Substantial Control Over the Harassment

Plaintiff's most fundamental departure from the *Davis* framework is the absence of any plausible allegation that NYU exercised "substantial control" over both the alleged harasser and the context of the alleged harassment. 526 U.S. at 645. Plaintiff does not allege that NYU had substantial control over a Google spreadsheet that the University could not delete or edit, or over the anonymous students who allegedly provided its content or posted it. Mot. 17–19. A finding that NYU exercised substantial control over the spreadsheet at issue would mean that universities would be liable for all sorts of student-generated content on a nearly infinite number of non-university websites and social media platforms.

To justify this broad expansion of Title IX, Plaintiff relies heavily on *Feminist Majority Foundation v. Hurley*, 911 F.3d 674 (4th Cir. 2018). But the *Feminist Majority* holding was fact-intensive, hinging on the unique geographic features of the social media application Yik Yak. *Id.* at 680. As the *Feminist Majority* court emphasized, "Yik Yak's location-based feature" guaranteed that "the harassing and threatening messages originated on or within the immediate vicinity of the UMW campus." *Id.* at 687. The plaintiff there also alleged that the school could block all Yik Yak access on its network, and that it was silent about the inappropriate Yik Yak posts. *Id.* at 688. Here, by contrast, Plaintiff does not allege that the Google spreadsheet had any ability to identify a user's location or that NYU could have cut off someone's access to it. And, of course, there is no dispute

---

[7] Plaintiff does not dispute that the only F grade he received was for the Spring 2020 semester. Even accepting that it was impossible to film in Spring 2020, Opp. 17 n.18, Plaintiff does not explain why he failed to fulfill his academic obligations in the two years that followed. It is not plausible to infer that peer harassment occurring just weeks before graduation—which did not cause Plaintiff's Spring 2022 grades to go down—is to blame.

that NYU did speak out against the spreadsheet. ¶ 61.

The Sixth Circuit sitting *en banc* has since rejected *Feminist Majority* by holding that a university lacked "substantial control" over harassing comments students posted on Facebook. *Foster v. Bd. of Regents of Univ. of Mich.*, 982 F.3d 960, 970 (6th Cir. 2020) (en banc). And even courts in the Fourth Circuit have subsequently interpreted *Feminist Majority* quite narrowly. *E.g.*, *Ricketts v. Wake Cty. Pub. Sch. Sys.*, No. 21 Civ. 49, 2022 WL 19710, at *5–*8 (E.D.N.C. Jan. 3, 2022) (no "substantial control" over students' inappropriate online posts).[8]

Plaintiff's other efforts to show NYU's control over the Google spreadsheet come up short. Although Plaintiff argues that NYU's statement opposing the spreadsheet demonstrates that NYU "had control" over it, Opp. 10, the opposite is true: NYU could *not* control the spreadsheet directly, and so it urged its students not to use it. Plaintiff's claim that NYU had control in light of QR codes that students allegedly posted on campus makes no sense. *Id.* Physical posters with a *link* to the spreadsheet through the use of a smartphone camera obviously would not confer substantial control over the spreadsheet itself. While Plaintiff further contends that referrals to the Offices of General Counsel and Student Conduct "suggested that they had the power to act," *id.* at 10 n.7, those offices *did* act by providing Plaintiff academic accommodations and an official letter on NYU letterhead. And the NYU policies themselves clearly do not constitute proof of control, *id.* at 10–11, since a university obviously does not "'expose' its students to harassment" by having policies disapproving of such harassment. *Davis*, 526 U.S. at 645.

### E. Plaintiff's "Hostile Education Environment" Claim Fails

Plaintiff cannot avoid the clear strictures of *Davis* by asserting a "hostile education

---

[8] Indeed, *Feminist Majority* drew a lengthy dissent that explained why holding a university responsible for "a third-party social media app that was unrelated to the university . . . ignores the principles set out" in *Davis*. *Feminist Majority*, 911 F.3d at 712–19 (Agee, J., dissenting in part and concurring in part).

environment" claim. Opp. 20–21. Alleging that a university did not respond to a report of harassment or that its response was grossly insufficient are simply two means of establishing deliberate indifference. They are not special words that make *Davis*'s "very real limitations" on liability magically disappear. 526 U.S. at 652. Plaintiff does not dispute that the Second Circuit has never recognized a hostile environment claim in the context of peer-on-peer harassment. *See* Mot. 20. Every case Plaintiff cites traces back to a Second Circuit decision concerning "sexual harassment by a teacher or professor," rather than a student. *See Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 88–89 (2d Cir. 2011). Even if a hostile environment claim for peer harassment did exist under Title IX, it would fail for all the reasons set forth above. *See Doe v. Syracuse Univ.*, No. 21 Civ. 977, 2022 WL 4094555, at *6 n.3 (N.D.N.Y. Sept. 7, 2022).

## II.   Plaintiff's State-Law Claims Also Fail

Plaintiff does not dispute that if his federal claims are dismissed, this Court should decline to exercise pendent jurisdiction. Mot. 20. Or that his NYSHRL claims should be dismissed too. *Id.* at 20–21; Opp. 21 n.21.

***Breach of contract.*** Defendants' opening brief walked through the four specific breaches of contract that Plaintiff alleges and identified multiple reasons for rejecting each one of them. Mot. 21–23. In response, Plaintiff does not even cite to the paragraph of the FAC identifying the alleged breaches (¶ 192), trying instead to throw out-of-context phrases against the wall to see what sticks, Opp. 21–23. But Plaintiff fails to identify any "specific and discrete promises" that would allow him to survive this Motion. *Bailey*, 2021 WL 5500078, at *5.

Consider the Student Conduct Policy, which is also the policy through which the Anti-Harassment and Computer-Access Policies may be enforced. *See* ECF 37-5. This policy grants NYU broad discretion in the exact circumstances that are present here: "Conduct that occurs *off-campus, online, over social media, or outside the context of a University program or activity*,

9

should generally be subject only to the consequences of the applicable authority and/or public opinion." *Id.* at 5 (emphasis added). Plaintiff not only omits that crucial language, but neglects to mention that the same policy explicitly grants NYU significant discretion since the policy says that NYU "*may* take student disciplinary action." *Compare id.* (emphasis added), *with* Opp. 21.[9]

***Intentional infliction of emotional distress.*** No case like this one has ever met the "exceedingly high" bar for IIED claims. *See* Mot. 23. Proving this point, the only precedent Plaintiff cites involved far more extreme facts—a months-long "deliberate and malicious campaign" to infiltrate and deceive a grieving family concerning the death of their son. Opp. 23 (citing *Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019)). And while Plaintiff insists that NYU intentionally violated Title IX, Opp. 24, he must also plead that NYU intentionally caused him emotional distress, Mot. 23–24.

***Negligence/negligent infliction of emotional distress.*** Plaintiff's argument that NYU's disciplinary procedures and its statement concerning the spreadsheet give rise to a duty to protect its students from the tortious acts of third parties lacks merit. *See* Opp. 24; *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 362 (N.D.N.Y. 2014); *Doe v. Union Coll.*, No. 19 Civ. 284, 2020 WL 1063063, at *7 (N.D.N.Y. Mar. 5, 2020). Indeed, Plaintiff's own allegations distinguish this case from the "special duty" case that he invokes. *Compare Doe v. Sarah Lawrence Coll.*, 453 F. Supp. 3d 653, 669 (S.D.N.Y. 2020) (emphasizing that defendant "led [plaintiff] to believe that an investigation and prompt action would occur"), *with* ¶¶ 69, 75–76 (Defendants "made clear" NYU would not take disciplinary action).

---

[9] Plaintiff withdraws one of his four claims of breach. Opp. 23 n.22. Plaintiff also does not dispute that the Sexual Misconduct and Anti-Harassment Policies would apply only if Plaintiff experienced gender-based harassment. Mot. 21–23. And while Plaintiff raises an issue relating to the applicable Sexual Misconduct Policy, *see* Opp. 22 n.27, the only difference between the versions dated October 14, 2020, and October 29, 2021, is the name and address of an NYU office. Finally, Plaintiff's implied covenant claim should be dismissed as duplicative, since he argues only that NYU did not comply with its policies as written. Opp. 23 (citing ¶¶ 194–96); *see also* Mot. 23.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' opening brief, the Court should dismiss the FAC with prejudice.[10]

Dated: New York, New York
August 4, 2023

Respectfully submitted,

/s/ Roberta A. Kaplan

Roberta A. Kaplan
Gabrielle E. Tenzer
Matthew J. Craig
Amit Jain
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
mcraig@kaplanhecker.com
ajain@kaplanhecker.com

Jackson Erpenbach, *admitted pro hac vice*
KAPLAN HECKER & FINK LLP
1050 K Street, NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jerpenbach@kaplanhecker.com

*Attorneys for Defendants New York University, Ezra Sacks, and Craig Jolley*

---

[10] Given the flaws in Plaintiff's case, any amendment here would be futile and Plaintiff barely argues otherwise. *See* Opp. 25 n.33.