UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE, <br><br>                 Plaintiff, <br><br>        -v.- <br><br> EZRA SACKS, CRAIG JOLLEY, and <br> NEW YORK UNIVERSITY, <br><br>               Defendants. | 23 Civ. 1307 (KPF) <br><br> **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Anonymous online allegations of sexual misconduct were lobbed at Plaintiff John Doe while he was a student at New York University ("NYU" or the "University"). Plaintiff now seeks damages from NYU for those events, principally on the theory that the University committed sex discrimination under Title IX of the United States Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681-1688, by not identifying and disciplining the individuals behind the anonymous allegations. In addition to his Title IX claims, Plaintiff asserts several state-law claims, over which he asks this Court to exercise supplemental jurisdiction. Plaintiff's state-law claims stem from the same conduct as his federal claims, but are brought against both the University and two of its officers, Ezra Sacks and Craig Jolley (together with NYU, "Defendants"). For the reasons explained below, the Court dismisses Plaintiff's federal claims with prejudice and declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.

## BACKGROUND[1]

### A.   Factual Background

### 1.   The Parties

Plaintiff John Doe is a May 2022 graduate of NYU's Tisch School of the Arts, where he attended classes in the Undergraduate Film and Television Department.  As discussed further *infra*, while attending NYU, Plaintiff was the subject of sexual misconduct allegations posted anonymously on a Google spreadsheet in March 2022.  (FAC ¶¶ 2, 6, 15).

Defendant NYU is a private university located in New York City.  (FAC ¶ 25).  NYU receives funding from the federal government for research and development, student loan advances, and infrastructure improvements.  (*Id.*).  The Tisch School is a school within the NYU educational system offering, *inter alia*, degrees in film and media.  (*Id.*).  Defendant Ezra Sacks is the Chair of the Undergraduate Film and Television Department at the Tisch School.  (*Id.* ¶ 27).  Defendant Craig Jolley is the Director of the Division of Student Affairs, Office of Student Conduct at NYU.  (*Id.* ¶ 28).

---

[1]   This Opinion draws its facts from the First Amended Complaint ("FAC." (Dkt. #18)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies, as appropriate, on certain of the exhibits attached to the Declarations of Gabrielle Tenzer ("Tenzer Decl." (Dkt. #36)) and Kara Gorycki ("Gorycki Decl." (Dkt. #44)), each of which is incorporated by reference in the Complaint.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #34); to Plaintiff's memorandum of law in opposition to Defendants' motion as "Pl. Opp." (Dkt. #43); and to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #45).

### 2.    The Sexual Misconduct Allegations

In March 2022, an anonymous group of NYU students published a Google spreadsheet, known as the "Blacklist," accusing several NYU students of sexual misconduct.  (FAC ¶ 6).  According to the FAC, the spreadsheet contained three anonymously submitted entries about Plaintiff; one entry labeled him a narcissist and two others accused him of sexual misconduct, including calling him a "rapist."  (*Id.* ¶¶ 6, 34).  Posters containing a quick-response ("QR") code — a barcode that, when scanned, linked to the web address of the spreadsheet — were posted around the NYU campus.  (*Id.* ¶ 36).

Plaintiff became aware of the spreadsheet on April 5, 2022, about a month before classes ended at NYU and roughly six weeks before his graduation, when a friend notified him of rumors arising from the spreadsheet's circulation.  (FAC ¶¶ 34-35).  Plaintiff alleges that the spreadsheet was created with "the purpose of" enabling "female and nonbinary NYU students to post unfounded sexual misconduct allegations against male students"; he sources this allegation to (i) an article about the spreadsheet published in the NYU student newspaper and (ii) his understanding that the posters containing the QR codes linking to the spreadsheet were posted only in women's restrooms.  (*Id.* ¶¶ 7, 35-36).

### 3.    Plaintiff Reports the Allegations to NYU

After failed attempts to reach out to the purported creators of the spreadsheet to request removal of the entries about him, between April 7, 2022, and April 28, 2022, Plaintiff reported the spreadsheet to NYU faculty and

staff, including to NYU Campus Safety; Defendant Jolley in the Office of

Student Conduct; NYU's Bias Response Line and Office of Equal Opportunity;

an unnamed NYU professor; and Defendant Sacks, the Chair of the

Department in which Plaintiff attended classes.  (FAC ¶¶ 41-42, 56-57, 67-69,

71-75, 91).  Plaintiff was thereafter contacted by Lieutenant Gizelle Sanchez of

Investigations and Victim Services at NYU Campus Safety and, on or about

April 7, 2022, Plaintiff and Sanchez met via Zoom to discuss the accusations

lodged against Plaintiff and the effect it had on his mental health.  (*Id.* ¶ 57).

Sanchez subsequently referred Plaintiff to various resources for mental health

assistance and victim's support and assured him that she would continue to

monitor the situation.  (*Id.* ¶¶ 57-58).  Sanchez also looked into the

spreadsheet and informed Plaintiff that NYU Campus Safety was unable to

shut it down.  (*Id.* ¶ 66).

On April 11, 2023, four days after Plaintiff's report, NYU issued a

statement to the student body, signed by Defendant Sacks (the "NYU

Statement"), advising students against using the spreadsheet as a means of

reporting sexual misconduct.  (FAC ¶ 61).  The statement cautioned that

"public anonymous claims" of sexual misconduct made via the spreadsheet

posed "several challenges," including that "all parties involved are deprived of

impartiality and process to which they should be entitled."  (*Id.*).  The

statement urged accusers to instead "avail themselves to the reporting options

available at NYU," and noted that NYU had "long maintained policies and

procedures that are designed to address instances of misconduct with fairness;

that rely on thorough investigation; that provide resources and support to the parties involved; and that seek an impartial outcome." (*Id.*).  The statement also "reiterate[d] the support options for anyone impacted by the circulation of th[e] list." (*Id.*).

On April 14, 2022, Plaintiff emailed Defendant Jolley to offer his assistance in conducting an investigation into the origin of the spreadsheet by introducing Jolley to an outside contractor with the means to help identify the individuals who created the spreadsheet.  (FAC ¶ 67).  In response, Defendant Jolley informed Plaintiff that NYU had no intention of pursuing disciplinary action against the creators of the spreadsheet.  (*Id.* ¶ 69).

Around this time, Plaintiff also met with Defendant Sacks, with the hope that Sacks, in his official capacity as a mandatory reporter under NYU's Sexual Misconduct Policy, would assist Plaintiff in getting the spreadsheet taken down.  (FAC ¶¶ 73-75).  Plaintiff maintains, however, that Sacks refused to meet with him in his official capacity and "merely offer[ed] a proverbial 'sympathetic ear' for Plaintiff to vent." (*Id.*).  Sometime in late April, approximately one month after Plaintiff had become aware of its existence, the spreadsheet was taken down from public view.  (Def. Br. 4-5).

Plaintiff claims to have faced several difficult consequences stemming from the accusations lodged against him in the spreadsheet.  He alleges that, during his final weeks as an NYU student, he was removed from a classmate's film shoot and was no longer booked to work on professional gigs.  (FAC ¶ 43).  Plaintiff claims to have suffered bullying, harassment, and ostracism by other

students, including students pretending not to hear him when he spoke, ignoring his messages, changing seats if he sat near them, and walking the other way to avoid him. (*Id.*). Plaintiff also asserts that he fell behind on school assignments and was unable to attend certain classes. (*Id.* ¶ 49). As a result of the sexual misconduct accusations against him, Plaintiff claims to have experienced significant mental and emotional distress, which continues to severely impact Plaintiff. (*Id.* ¶¶ 18, 20, 38-39, 52, 142-143).

In response to Plaintiff's concerns, NYU provided Plaintiff with academic accommodations for the remainder of the school year. (FAC ¶ 78). After graduation, the University gave Plaintiff a letter, signed by Defendant Jolley, stating that Plaintiff had never been the subject of a Title IX investigation at the school. (Tenzer Decl., Ex. A).[2] Plaintiff maintains, however, that Defendants' inaction towards the authors of the spreadsheet facilitated both the

---

[2]    Plaintiff contests the Court's ability to consider this letter in resolving the instant motion. (Pl. Opp. 16). The Court disagrees. A court may consider documents possessed by or known to the plaintiff and upon which he relied in bringing the suit. *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *accord Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (*per curiam*)). In his original complaint, Plaintiff alleged that NYU had not yet provided the letter. (*See* Original Compl. ¶ 75 (Dkt. #1) (stating that NYU "refused to issue a statement or provide Plaintiff with a letter clearly indicating that Plaintiff has never been the subject of a Title IX complaint filed against him to help him clear his name")). Plaintiff later removed that allegation from the FAC. (*See generally* FAC). As such, Plaintiff both "possessed" that letter and "relied" on it in bringing this suit and amending his complaint. Plaintiff "cannot plead around [the letter] by refusing to make reference to it" in the FAC. *Van Houtven* v. *Adams*, No. 13 Civ. 1964 (CM), 2014 WL 1338066, at *2 (S.D.N.Y. Apr. 3, 2014), *aff'd*, 605 F. App'x 37 (2d Cir. 2015) (summary order).

dissemination of the spreadsheet and the resulting harassment against him. (FAC ¶ 16).

### B.   Procedural Background

Approximately one year after his graduation, Plaintiff filed a defamation suit in state court against the individuals he believed were responsible for the spreadsheet. (Dkt. #30 at 9, 15). Around the same time, Plaintiff initiated the instant lawsuit by filing a seven-count complaint against NYU, Craig Jolley, Ezra Sacks, and the NYU Board of Directors (the "Board"). ("Original Compl." (Dkt. #1)). Upon receipt of the complaint, NYU objected to certain "inaccuracies" therein and requested that Plaintiff take "corrective action," noting that it "would consent to the filing of an amended complaint." (Pl. Opp. 16; Gorycki Decl., Ex. 3). On March 14, 2023, Plaintiff filed his First Amended Complaint, the operative complaint in this matter. ("FAC" (Dkt. #18)).[3]

On April 21, 2023, in lieu of an answer, Defendants filed a pre-motion letter seeking leave to file a motion to dismiss the FAC. (Dkt. #24). Plaintiff filed a letter in opposition to Defendants' pre-motion letter on April 25, 2023. (Dkt. #26). On May 17, 2023, the Court held a pre-motion conference, at which the parties discussed Defendants' arguments in support of their anticipated motion to dismiss. (*See* May 17, 2023 Minute Entry; Dkt. #30

---

[3]     In the FAC, Plaintiff removed the Board as a party to the action. (*See generally* FAC).

(transcript)).  During the conference, the Court set forth a schedule for briefing on the motion.

In accordance with the briefing schedule, on June 20, 2023, Defendants filed the instant motion to dismiss.  ("Def. Br." (Dkt. #34)).  On July 21, 2023, Plaintiff filed his opposition papers.  ("Pl. Opp." (Dkt. #43)).  On August 4, 2023, Defendants filed their reply memorandum in further support of their motion to dismiss.  ("Def. Reply" (Dkt. #45)).

## DISCUSSION

### A.   Applicable Law

Under Rule 12(b)(6), a defendant may seek dismissal of a plaintiff's action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in [p]laintiff['s] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff is entitled to relief if the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)).  Moreover,

"[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## B.    Analysis

In his FAC, Plaintiff claims that NYU's alleged failure to investigate and discipline the students responsible for the Google spreadsheet makes the University responsible for sex discrimination under Title IX (Counts I-II). Plaintiff further contends that the same conduct renders NYU (and, in certain instances, Defendants Sacks and Jolley) liable for violations of the New York State Human Rights Law ("NYSHRL") (Counts III-V), breach of contract (Count VI), intentional infliction of emotional distress (Count VII), negligent infliction of emotional distress (Count VIII), and negligence (Count IX).  In the remainder of this Opinion, the Court considers first the Title IX claims from which it derives subject matter jurisdiction, and then, as appropriate, Plaintiff's pendent state-law claims.

### 1.    The Court Dismisses Plaintiff's Title IX Claims

Plaintiff states two claims under Title IX.  *First*, Plaintiff alleges that NYU, in violation of Title IX, discriminated against him "on the basis of his male sex" by failing to adequately address his complaints of harassment.  (FAC ¶¶ 129-130).  More specifically, Plaintiff asserts that NYU's failure to adequately respond to his grievances amounts to "deliberate indifference," making the University liable for his peers' sexual harassment (the "peer harassment"

9

claim).  (*Id.*).  *Second*, Plaintiff claims that, as a result of NYU's inaction, he was subjected to a "hostile environment" at the University (the "hostile environment" claim).  (*Id.* ¶ 159).  Taking each claim in turn, the Court finds that, even when his allegations are construed in the most favorable light, Plaintiff fails to state a Title IX claim against NYU.

### a.    Plaintiff Fails to State a Title IX Claim Against NYU for His Peers' Sexual Harassment

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"  20 U.S.C. § 1681(a).  The statute applies to a school's disparate provision of programs, aid, benefits, or services, as well as the inequitable application of rules or sanctions on the basis of sex.  *Davis* v. *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646-47 (1999). As a threshold matter, to bring any kind of claim under Title IX, a plaintiff must adequately allege that (i) the plaintiff was denied the benefits of or excluded from participation in a federally funded education program or activity and (ii) such denial was due to the plaintiff's sex.  *Id.*

Title IX also prohibits a school's deliberate indifference to acts of sexual harassment committed by one student against another.  *Davis*, 526 U.S. at 646-47.  For a school to be liable under Title IX under a "peer harassment" theory, a plaintiff must demonstrate that: "[i] a federally funded educational institution [ii] was deliberately indifferent to and [iii] had actual knowledge of [iv] sexual harassment that was so severe, pervasive, and objectively offensive

that it could be said to have deprived the plaintiff of access to the educational opportunities or benefits [of attending the institution]." *Id.* at 650.  A plaintiff must also allege that the school "[v] exercise[d] substantial control over both the harasser and the context in which the known harassment occurs." *Id.* at 645; *see also Zeno* v. *Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012) (finding that a Title IX claim requires "[i] substantial control, [ii] severe and discriminatory harassment, [iii] actual knowledge, and [iv] deliberate indifference" (internal citations omitted)).

Defendants argue that Plaintiff's peer harassment claim should be dismissed because Plaintiff fails to allege either that students published the spreadsheet "out of a desire to harass him for being male" (i.e., on the basis of his sex) or that he was subject to systemic deprivation of educational opportunities, threshold requirements for bringing any kind of claim under Title IX.  (Def. Br. 14, 16).  Defendants also assert that Plaintiff fails to plead the requirements for holding schools liable for peer harassment, notably, that NYU (i) responded to the spreadsheet with "deliberate indifference" and (ii) "exercised substantial control" over the alleged harassment.  (*Id.* at 9, 17). A strong argument can be made that Plaintiff's harassment was *not* gender-based.[4]  However, even assuming *arguendo* that Plaintiff has met the general requirements of pleading a Title IX claim, the Court agrees with Defendants'

---

[4]    *See, e.g.*, *Nungesser* v. *Columbia Univ.*, 169 F. Supp. 3d 353, 364-65 (S.D.N.Y. 2016) (dismissing Title IX gender harassment claim where reference to plaintiff as "rapist" did not plausibly suggest gender-based motive, finding that mere use of words having "sexual content or connotations" is "not automatically considered to be gender based discrimination").

second prong of attack and finds that Plaintiff fails to satisfy Title IX's standard for holding an educational institution liable for its students' actions.

### i.  Plaintiff Fails to Plead Deliberate Indifference

As noted above, an educational institution will be subject to liability for student-on-student sexual harassment under Title IX only when its "own deliberate indifference effectively caused the discrimination." *Davis*, 526 U.S. at 643.  In articulating a standard for "deliberate indifference," the Second Circuit has held that:

> A finding of deliberate indifference depends on the adequacy of a school district's response to the harassment.  A failure to respond, a response that only follows after a lengthy and unjustified delay, and a response that amounts to deliberate indifference to discrimination, have all been found inadequate.
>
> Nevertheless, a school district's actions are only deliberately indifferent if they were clearly unreasonable in light of the known circumstances.  Thus, when weighing the adequacy of a response, a court must accord sufficient deference to the decisions of school disciplinarians.

*Zeno*, 702 F.3d at 666 (internal quotation marks and citations omitted).  Stated differently, a defendant acts with deliberate indifference for Title IX purposes only "when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances."  *Gant ex rel. Gant* v. *Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999) (quotations and citation omitted); *see also Roskin-Frazee* v. *Columbia Univ.*, 474 F. Supp. 3d 618, 624 (S.D.N.Y. 2019) ("[T]o comply with Title IX, a university must respond to known student harassment in a manner that is not clearly unreasonable.").

Plaintiff argues that even though he repeatedly reported the harassment, NYU "took no action to investigate the origins of the Blacklist or pursue disciplinary action against its creators." (Pl. Opp. 14 (citing FAC ¶¶ 12, 66-70, 73-36)). Instead, Plaintiff asserts, NYU "encouraged the female students whose accusations were published" to report the potential misconduct, while "only offering 'support options' to the falsely accused." (*Id.* (citing FAC ¶ 61)). As a result, Plaintiff contends, NYU's actions were "clearly unreasonable."

While Plaintiff may certainly wish that NYU had gone to greater lengths to identify and discipline the creators of the spreadsheet, the University's response was not, in fact, "clearly unreasonable." As the *Davis* Court has counseled, "courts should refrain from second-guessing the disciplinary decisions made by school administrators," and plaintiffs have no "Title IX right to make particular remedial demands." 526 U.S. at 648; *see also Bailey* v. *N.Y. L. Sch.*, No. 19-3473, 2021 WL 5500078, at *3 (2d Cir. Nov. 24, 2021) ("Victims do not have a right to specific remedial measures.").

Here, Plaintiff does not allege that NYU knew (i) who posted the allegations, (ii) whether the allegations were true or false, or (iii) how to take the Google spreadsheet down. In light of those circumstances, NYU took the steps it could to respond to Plaintiff's reports about the spreadsheet, including referring Plaintiff to mental health assistance and victim's support services; investigating whether it could unilaterally shut down the list (and determining that it could not); providing academic accommodations to Plaintiff; providing Plaintiff with a letter stating that he had never been subject to a Title IX

investigation at the University; and issuing a public statement that, among other things, made it clear that the spreadsheet "deprived" accused students "of impartiality and process to which they should be entitled," and encouraged students to instead "avail themselves of the reporting options available at NYU" rather than resorting to "public anonymous claims."  (FAC ¶¶ 57-58, 61, 66, 78).[5]

What is more, the Court is mindful that, had NYU acceded to Plaintiff's demand to identify and to pursue disciplinary action against the students who allegedly created the spreadsheet, the University could find itself in the precarious position of discipling students for online speech on non-university accounts.  *See Mahanoy Area Sch. Dist.* v. *B.L.*, 141 S. Ct. 2038, 2046 (2021) ("[C]ourts must be more skeptical of a school's efforts to regulate off-campus speech for doing so may mean the student cannot engage in that kind of speech at all.").  This course of action would necessarily put the University at risk of impermissibly restricting students' speech-protected values.

Therefore, while it is clear that accusations like the ones at issue here can cause significant harm, NYU's refusal to identify the creators or take disciplinary action against them is not "clearly unreasonable" under the

---

[5]     Plaintiff argues that the NYU Statement "lent credibility to, and effectively sponsored, the Blacklist" because it "expressly encouraged the female students who made accusations on the Blacklist to report the 'potential misconduct.'"  (Pl. Opp. 15 & n.13). Plaintiff is wrong on multiple levels.  While the NYU Statement did not outright dismiss the misconduct allegations (and indeed, NYU had no basis to reject those allegations out of hand), it made clear the potential challenges and harm that could result from the publication of such allegations.  Conversely, the NYU Statement's entreaty to students that they instead lodge complaints through official University reporting options was, and can only be viewed as, a good-faith effort to dissuade students from potentially harmful anonymous reporting.

circumstances.  *See, e.g.*, *KF ex rel. CF* v. *Monroe Woodbury Cent. Sch. Dist.*, No. 12 Civ. 2200 (ER), 2013 WL 177911, at *7 (S.D.N.Y. Jan. 16, 2013) (finding school's violation of policy requiring formal investigation not "clearly unreasonable"), *aff'd*, 531 F. App'x 132 (2d Cir. 2013) (summary order); *Doe* v. *University of Chicago*, No. 16 Civ. 8298 (EEC), 2017 WL 4163960, at *8 (N.D. Ill. Sept. 20, 2017) (finding school's refusal to discipline a student who publicly accused plaintiff of sexual assault and lied about the outcome of her sexual assault complaint not "clearly unreasonable").

To be clear, this standard "does not categorically insulate school officials from liability in well-plead[ed] cases of unreasonable official responses to a student's harassment," *Cianciotto* v. *N.Y.C. Dep't of Educ.*, 600 F. Supp. 3d 434, 458 (S.D.N.Y. 2022), and there are certainly instances in which long-running inattention, inaction, or deflection by a school can demonstrate deliberate indifference.  *See, e.g.*, *Zeno*, 702 F.3d at 670 (noting that jury reasonably could have found that school district's remedial efforts "were little more than half-hearted measures"); *see also id.* at 669 (citing *Vance* v. *Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 262 (6th Cir. 2000) (finding school's response to professor's harassment was "clearly unreasonable," in part because it had "actual knowledge that its efforts to remediate [were] ineffective")).  However, on the factual record before this Court, Plaintiff fails to allege that NYU's actions were so clearly unreasonable as to impart liability under Title IX.  Accordingly, because Plaintiff fails to demonstrate deliberate indifference, Plaintiff's peer harassment claim is dismissed.  *See Davis*, 526 U.S. at 633 (stating that

schools are responsible for student-on-student harassment "*only* where [the school] acts with deliberate indifference" (emphasis added)).

### ii. Plaintiff Fails to Plead That NYU Exercised Substantial Control over the Harassment

Plaintiff's peer harassment claim independently fails because Plaintiff has not sufficiently alleged that NYU exercised "substantial control" over his alleged harassment.  An educational institution will be subject to liability for student-on-student sexual harassment under Title IX only if it "exercises substantial control over both the harasser and the context in which the known harassment occurs."  *Davis*, 526 U.S. at 645 (reasoning that the school must have "control over the alleged harassment" and "authority to take remedial action"); *see also Zeno*, 702 F.3d at 665.

Here, the FAC is devoid of any allegations that the Google spreadsheet was created using NYU resources; shared or administered by any NYU account or device; hosted on NYU servers; or was otherwise within NYU's ability to edit or delete.  (*See generally* FAC).  To the contrary, Plaintiff concedes that Campus Safety looked into the spreadsheet and informed Plaintiff that "there [wa]s nothing [it] could do to shut down the page."  (FAC ¶ 66).  The mere fact that the Google spreadsheet was created by NYU students and could be accessed via a QR code that was displayed on posters around campus does not confer substantial control over the spreadsheet itself.[6]

---

[6]   Plaintiff claims that "NYU acknowledged that it had control over the harassers and the context in which it occurred by issuing the NYU Statement."  (Pl. Opp. 10 (citing FAC ¶¶ 60-65).  However, the paragraphs of the FAC to which he cites, which concern the issuance and import of the NYU Statement, evidence no such control.  Similarly, even

Plaintiff's opposition relies heavily on a Fourth Circuit decision, *Feminist Majority Foundation* v. *Hurley*, 911 F.3d 674 (4th Cir. 2018).  (Pl. Opp. 9-11).  Notwithstanding the fact that *Feminist Majority* does not bind this Court, it is also readily distinguishable from the case at hand.  In *Feminist Majority*, the Fourth Circuit held that the plaintiffs there sufficiently pleaded that the university-defendants had "substantial control" over the harassment at issue, which occurred on a social media platform known as Yik Yak, when it "originated on or within the immediate vicinity of the [university's] campus."  *Id.* at 687.  On that point, the Court emphasized the uniqueness of Yik Yak's "location-based feature," which allowed the school to guarantee that the threatening messages originated from campus, as well as the fact that — "to the extent the sexual harassment was communicated through [the university's] wireless network" — plaintiff alleged that the university "could have disabled access to Yik Yak campus wide."  *Id.* at 687-88.  Here, by contrast, Plaintiff does not allege that the spreadsheet provided any means of identifying a user's location, or that NYU had the capability of disabling someone's access to the

---

accepting Plaintiff's contentions that "this case involves specific online content that targeted male NYU students, was subject to NYU's disciplinary policies and that was created and circulated by NYU students to NYU students" (*id.* at 11), the Court cannot accept Plaintiff's proffered legal conclusion that NYU therefore had control over his alleged harassers' online publication activities.  Further, Plaintiff argues that NYU's Anti-Harassment Policy and Student Conduct Policy "gave the University control over harassment" that occurs on "NYU premises" and over the internet "regardless of where the computer [wa]s located."  (*Id.* at 10-11 (citing FAC ¶¶ 83-85, 100)).  However, NYU anti-harassment policies themselves do not constitute proof of control over "both the harasser and the context in which the known harassment occurs."  *Davis* v. *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 630, 645 (1999).

spreadsheet.  Accordingly, for the independent reason that Plaintiff fails to demonstrate substantial control, Plaintiff's peer harassment claim is dismissed.

      **b.**      **Plaintiff Fails to State a Title IX Claim Against NYU for "Hostile Education Environment"**

Plaintiff brings a separate cause of action under Title IX for a hostile education environment.  (FAC ¶¶ 146-161).  Specifically, Plaintiff pleads that "[a]s a direct and proximate result of NYU's failure to promptly and adequately respond to Plaintiff's repeated complaints about the Blacklist and the resulting fallout, Plaintiff was subjected to a hostile environment."  (*Id.* ¶ 159).  Defendants argue that "because Plaintiff's [hostile environment] claim is premised on precisely the same facts as his first, the Court should dismiss it as duplicative."  (Def. Br. 20).

A plaintiff can establish a hostile educational environment claim under Title IX if he demonstrates that "he subjectively perceived the environment to be hostile or abusive and that the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of his educational environment.'"  *Papelino* v. *Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011).  However, for an educational institution to be liable, "the plaintiff must establish that a school official with 'authority to address the alleged discrimination and to institute corrective measures' had 'actual knowledge' of the discrimination and failed to adequately respond."  *Id.* "A school fails to adequately respond if it provides no response or if it provides a response that 'amount[s] to deliberate indifference to discrimination.'"  *Id.; see*

*also Doe* v. *Syracuse Univ.*, No. 22-2674, 2023 WL 7391653, at *1 (2d Cir. Nov. 8, 2023) (summary order) (upholding dismissal of hostile environment claim based on failure to plead deliberate indifference adequately).

While Plaintiff may have sufficiently pleaded facts that, if proven, establish that he was subject to a hostile environment, the Court finds that he has not sufficiently pleaded facts to establish that the University failed to adequately respond.  As the Court established in the preceding section, Plaintiff failed to plead that NYU's response to the spreadsheet and resulting harassment "amounts to deliberate indifference."  Accordingly, Plaintiff's hostile environment claim must also be dismissed.  *See Doe* v. *Syracuse Univ.*, No. 21 Civ. 977 (GLS), 2022 WL 4094555, at *6 n.3 (N.D.N.Y. Sept. 7, 2022) (dismissing purported student-on-student hostile environment claim "based on the same facts" as deliberate indifference claim), *abrogated on other grounds*, *Doe*, 2023 WL 7391653, at *1; *see also Novio* v. *N.Y. Acad. of Art*, 286 F. Supp. 3d 566, 576 (S.D.N.Y. 2017) ("[F]or an educational facility to be liable [for hostile environment], the plaintiff must establish that [it] ... failed to adequately respond" to the hostile environment by either "provid[ing] no response or ... provid[ing] a response that 'amount[s] to deliberate indifference.'" (quoting *Papelino*, 633 F.3d at 89)).

### 2. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State-Law Claims

In addition to his Title IX claims, Plaintiff raises several state-law claims in the FAC, including claims for discrimination under the NYSHRL, breach of contract, and intentional infliction of emotional distress.  Since Plaintiff's Title

IX claims have been dismissed, there are no federal claims remaining in this action.

A district court has discretion to "decline to exercise supplemental jurisdiction" after "dismiss[ing] all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c); *see Klein & Co. Futures, Inc.* v. *Bd. of Trade of City of New York*, 464 F.3d 255, 263 (2d Cir. 2006) ("[T]he decision to retain jurisdiction is discretionary and not a litigant's right[.]").  In making this determination, courts "balance[ ] the traditional 'values of judicial economy, convenience, fairness, and comity.'"  *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)).  In general, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."  *United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 726 (1966).  Moreover, "[a]lthough the exercise of supplemental jurisdiction is discretionary, the ordinary case 'will point toward declining jurisdiction over the remaining state-law claims.'"  *Jordan* v. *Chase Manhattan Bank*, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)).

The Second Circuit has deemed it proper to retain supplemental jurisdiction over state-law claims in limited circumstances — including actions that implicate preemption issues; state-law claims that remain when federal claims are voluntarily dismissed days before the scheduled start of trial; and in one instance where, by the time federal claims were dismissed, discovery had been completed, the court had decided three dispositive motions, and the case

was ready for trial. *Valencia ex rel. Franco* v. *Lee*, 316 F.3d 299, 305-06 (2d Cir. 2003). Here, all factors weigh in favor of declining supplemental jurisdiction over Plaintiff's state-law claims. There has been no discovery in this case; there have been no initial disclosures; no case management plan has been entered; no depositions have been taken; no expert discovery has been completed; and there is no trial date. Accordingly, sending the pendent claims to state court would not result in the wasteful and duplicative expenditure of resources. Further, the matter does not involve preemption issues. Plaintiff can continue to seek redress in state court, where he is able to bring his state-law claims.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims. Those claims are dismissed without prejudice, and Plaintiff is free to pursue them further in state court.

## CONCLUSION

For the reasons set forth in this Opinion, Defendants' motion to dismiss is GRANTED. Plaintiff's federal claims are dismissed with prejudice, and Plaintiff's state-law claims are dismissed without prejudice to their refiling.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:    February 2, 2024
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

21