UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFERSON SIEGEL,

                            Plaintiff,

            -against-

SING TAO NEWSPAPERS NEW YORK LTD.,

                            Defendant.

24-CV-1307 (JGLC)

**<u>OPINION AND ORDER</u>**

JESSICA G. L. CLARKE, United States District Judge:

Before the Court is Defendant Sing Tao Newspapers New York Ltd.'s ("Defendant" or "Sing Tao") motion for attorney's fees and costs pursuant to the remedial provision of the Copyright Act, 18 U.S.C. § 505, and sanctions pursuant to 28 U.S.C. § 1927. ECF Nos. 37, 38 ("Mem."). The motion seeks relief from and against Plaintiff and Sanders Law Group ("SLG") jointly and severally. The Court has carefully considered the parties' submissions in addition to the arguments raised at the June 25, 2025 oral argument. For the reasons set forth below, the Court DENIES Defendant's fee application because there is no basis to impose sanctions on SLG pursuant to 28 U.S.C. § 1927, and because the principles supporting a fee award under the Copyright Act would not be advanced by awarding fees against Plaintiff in this case.

## BACKGROUND

Given the recency of the June 25, 2025 oral argument, the Court assumes the parties' familiarity with this case's background and procedural history—including the facts discussed and revealed during the parties' briefing on the fees motion. The Court therefore only provides a brief summary of relevant facts below.

Plaintiff Jefferson Siegel ("Plaintiff" or "Siegel") is a freelance photojournalist who previously worked for New York Daily News (the "Daily News") and the New York Times

("NYT"). ECF No. 59 ("Siegel Decl.") ¶¶ 3, 8. NYT executed a freelance agreement with Siegel, which provided that NYT and Siegel would enjoy co-ownership over any photos. *Id.* ¶¶ 8, 46. NYT would license freelancers' images through a separate licensing website database to other publications. *Id.* ¶ 22. Siegel did not look at the freelance agreement again until after he filed this action, nor did he provide it to SLG and SLG did not ask for it. *Id.* ¶¶ 8, 26. Beginning in June 2023, Siegel communicated with SLG about potentially infringing listings that used his photographs, and SLG monitored Siegel's published photographs for the same reason. *Id.* ¶¶ 27–29.

Defendant Sing Tao Newspapers New York LTD subscribed to the NYT News Service and has done so over 30 years. ECF No. 37-1 ("Mui Decl.") ¶ 2. Through that subscription, NYT licenses its content, including photographs, to subscribers like Sing Tao. *Id.* NYT does not publicize members of that subscription service, and neither SLG nor Siegel knew of Sing Tao's subscription before bringing suit. ECF No. 59, ¶ 31; ECF No. 62, ¶ 37.

However, in various communications between SLG and Siegel, SLG made clear it knew about NYT's arrangement with subscribers generally and that those subscriptions would affect the viability of any infringement claim. *See e.g.*, ECF No. 59-11. For instance, on August 1, 2023, after Siegel asked about his photographs appearing in the Seattle Times, the Director of Client Services at SLG responded:

> The NY Times has many media subscribers that subscribe to the articles and therefore are authorized [sic] to use any article that they publish. The Seattle Times is on their list as a media subscriber and therefore, is not an infringer. I have attached a very short list of the many subscribers they have. I was unable to obtain a complete list. Maybe you can request a list of media subscribers so we can immediately assess whether a media outline is authorized to upload an article.

*Id.*

Before filing suit, on at least a few occasions, SLG asked Siegel to confirm no such licensing agreements existed. For instance, on July 25, 2023, SLG also asked Siegel to approve his pursuit of a claim regarding the photographs at issue on Sing Tao's website. ECF No. 59-12. The email instructed Siegel not to approve a claim if he licensed the image through a photo agency. *Id.* Siegel subsequently approved it. *Id.* A month later, on August 29, 2023, an SLG employee asked Siegel to confirm that Sing Tao's stories were infringements, and Siegel promptly provided that confirmation. ECF No. 59-13. Plaintiff also appears to have asked NYT at an unspecified date whether Defendant had licensed his photographs, and he understood Sing Tao did not have a license to use them. *See* ECF No. 59-16 at 2.[1] SLG also attempted to broach this issue with Sing Tao. On August 7, 2023, SLG sent an audit letter to Defendant at "info@nysingtao.com" regarding the usage of the plaintiff photographs, and received no response. ECF No. 54 ¶ 8.

Thereafter, in reliance on Plaintiff's approval and representation that Sing Tao used the photographs without authorization or a license, SLG opted to move forward on the potential claim. On February 9, 2024, SLG provided Plaintiff with a draft complaint against Sing Tao, which he approved. ECF No. 58 at 2. Plaintiff, through SLG, then filed this action on February 21, 2024, asserting claims for copyright infringement. ECF No. 1 ("Compl."). The Complaint alleged that Sing Tao published certain of his copyrighted photographs on their news website without his permission or authorization. Compl. ¶¶ 70–79. Plaintiff later sought a default

---

[1] It should be noted, however, that Siegel appeared to misunderstand what NYT told him. Although he stated in July 2024 (shortly before this case was voluntarily dismissed) that NYT told him that Sing Tao did not have a license to use the photographs, the email that Siegel represented he originally from NYT *did* explain that Sing Tao was part of the NYT subscription service. ECF No. 59-16 at 3. The content of Siegel's email, however, suggests he did not understand the importance of the latter statement. *Id.* at 2–3.

judgment after Defendant failed to timely respond to the complaint. ECF Nos. 12–14. However, on April 18, 2024, Defendant appeared in this action after being successfully served through the Secretary of State,[2] and the parties stipulated to vacate the default. ECF Nos. 15, 18, and 20.

Plaintiff filed an amended complaint on May 27, 2024. ECF No. 21. Despite their involvement in settlement and resolution discussions with Siegel, neither Sing Tao nor its attorneys mentioned any licensing agreement with the New York Times. ECF No. 62 ¶ 33. Instead, they merely told Plaintiff that any infringement was not willful. ECF No. 37-3 ¶ 6. Shortly before filing an answer to the amended complaint, Sing Tao emailed the New York Times regarding whether the photographs at issue were properly licensed. *See* ECF No. 70-1 at 9; Mui Decl. ¶ 8. Only in Defendant's answer, filed on July 11, 2024, did Sing Tao reference a valid license or sublicense arrangement with the New York Times. ECF No. 24 ("Answer") at 23 (fourth affirmative defense).

On July 17, 2024, an employee at the New York Times, Jacklyn Kincade, informed both SLG and Defendant's counsel that the photos at issue in this action were properly licensed to the Defendant. ECF No. 37-3 at 18. A few days later, on July 19, 2024, SLG sought Defendant's consent for a mutual stipulation of dismissal, and a stay of the case pending entry of that stipulation. ECF Nos. 25, 27; ECF No. 37-3 at 20–21. Defendant refused to consent, and instead asserted a need for discovery before giving any such consent. ECF No. 28 at 4–6. The parties appeared for a hearing on August 30, 2024, following which the Court entered a dismissal of this action and set a briefing schedule for fees motions. ECF No. 29. Defendant appealed that decision. ECF No. 34.

---

[2] Although Defendant, at oral argument, suggested Plaintiff's method of service was gamesmanship to obtain "an easy default," Defendant does not (and cannot) dispute that service was properly effectuated under the law.

Defendant filed the pending fees motion on October 22, 2024, seeking attorney's fees and costs, as well as sanctions against Plaintiff and Sanders Law Group, jointly and severally. ECF Nos. 37, 38. Because Defendant's motion seeks relief from Plaintiff and SLG jointly and severally, SLG determined than an unwaivable conflict of interest was created, and they withdrew from representing Plaintiff. ECF No. 47. SLG now appears on their own behalf in answering the Defendant's motion. Mr. Siegel subsequently retained attorneys at Beldock Levine to respond to the Defendant's motion. ECF No. 50. The Court held oral argument on June 25, 2025 regarding Defendant's fees and sanctions motion.

## DISCUSSION

Under the Copyright Act, courts have broad discretion to award reasonable attorney's fees to a prevailing party. 17 U.S.C. § 505. Both a plaintiff and a defendant can be a "prevailing party" within the meaning of the statute. *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534 (1994) ("Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."). A "prevailing party" is one who is the beneficiary of a "judicially sanctioned change in the legal relationship of the parties." *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, No. 13-CV-7574 (KPF), 2015 WL 321877, at *4 (S.D.N.Y. Jan. 26, 2015) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res*., 532 U.S. 598, 605 (2001)). Neither SLG nor Plaintiff appear to dispute Defendant's ability to collect reasonable fees under the Copyright Act as a "prevailing party." Moreover, because the Court dismissed this case with prejudice, Defendant has "prevailed" in the sense that it is immunized from the risk of further litigation on the merits. *See BWP Media USA*, 2015 WL 321877, at *4. Therefore, Defendant can be considered a "prevailing party" for the purposes of obtaining reasonable fees under the Copyright Act.

The Court next considers whether to award fees, costs, and sanctions. Defendant seeks attorney's fees and costs in the amount of $226,149.97, jointly and severally from Sanders Law Group (pursuant to 28 U.S.C. § 1927) and Plaintiff Jefferson Siegel (pursuant to 17 U.S.C. § 505). ECF Nos. 37, 38, 70. Defendant submitted declarations and time entries in support of the application. *Id.* As discussed below, the Court first declines to impose sanctions on SLG, finding that they did not file or prosecute this action in bad faith. The Court then finds that the *Fogerty* factors do not support an award of attorney's fees against Plaintiff. The Court therefore denies Defendant's fee application in its entirety.

## I.     Sanctions Are Not Warranted Against Sanders Law Group

In order for SLG to be jointly and severally liable for any fees under the Copyright Act, the Court would need to impose Defendant's request as a sanction.[3] *See*, *e.g., Bechler v. MVP Group Int'l, Inc.,* No. 16-CV-8837 (LAP), 2021 WL 848024, at *7 (S.D.N.Y. Mar. 5, 2021) (holding plaintiff and their counsel jointly and severally liable, under Section 505 and Section 1927 respectively, based on continued litigation for two years despite evidence of license that mooted the claim). Here, Defendant seeks sanctions against SLG pursuant to 28 U.S.C. § 1927 and the Court's inherent power. As set forth below, the Court declines to impose sanctions on SLG.

Under Section 1927, any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. These sanctions may only be imposed "when there is a finding of conduct constituting or akin to

---

[3] At oral argument, both Plaintiff and Defendant's counsel appeared to agree that SLG could only be compelled to pay fees, jointly and severally as a "bad faith" sanction under Section 1927. Defendant also appears to concede this in its motion. ECF No. 38 at 12–13.

bad faith." *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997). Similarly, awarding sanctions under the Court's inherent power requires a finding that the offending party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc*., 501 U.S. 32, 45–46 (1991) (internal citation omitted); *accord Sakon*, 119 F.3d at 114. Any finding of bad faith "must be supported by a high degree of specificity in the [court's] factual findings." *Enmon v. Prospect Capital Corp*., 675 F.3d 138 (2012) (cleaned up and internal citation omitted). Therefore, to succeed on a motion for sanctions under either Section 1927 or the Court's inherent powers, the movant must demonstrate both "clear evidence that (1) the offending party's claims were entirely meritless **and** (2) the party acted for improper purposes." *Revson v. Cinque & Cinque, P.C*., 221 F.3d 71, 79 (2d Cir. 2000) (emphasis added and internal citation omitted).

Here, while the record indicates that SLG had some general awareness regarding NYT's licensing and media subscriptions, both SLG and Plaintiff have represented, and the evidence corroborates, that they lacked actual knowledge of the Sing Tao licensing agreement before filing this action. ECF No. 59 ¶ 31; ECF No. 62 ¶ 37. SLG has also detailed the reasonable steps it took in asking Plaintiff to inquire about the existence of a license that would extinguish Plaintiff's claim. ECF No. 62 ¶¶ 9–12, 16–20; *see generally* ECF No. 59-11; ECF No. 59-12; ECF No. 59-13. SLG also sent an audit letter to Sing Tao asking them to confirm whether they had a license for the photographs—that conduct does not indicate a desire to baselessly litigate an action.

Moreover, SLG represented at oral argument that it could not otherwise obtain this information directly from the New York Times. It therefore reasonably relied on Siegel's assertions that no licensing agreement existed that would bar his claims. ECF No. 62 ¶ 18. SLG also took steps to ascertain whether Sing Tao had a license by sending them an audit letter

directly. SLG never received a response to that letter, and indeed, it was not until months after Defendant appeared in this action that Sing Tao expressly stated that it had a license to use Siegel's photographs. As such, the record does not support a finding that SLG initiated the action in bad faith.[4] Even if the Court construed SLG as having acted negligently, that would likewise be insufficient to impose sanctions. *See, e.g., Freedman v. Rakosi*, No. 23-CV-472 (AT) (SDA), 2024 WL 4559903, at *4 (S.D.N.Y. Aug. 14, 2024) (declining to impose sanctions pursuant to Section 1927 where counsel was "at most" negligent), *report and recommendation adopted*, 2025 WL 1078293, at *5 (S.D.N.Y. April 10, 2025).

Nor does the Court find that SLG "multipl[ied] the proceedings" unreasonably and vexatiously after discovering the existence of the license. Within days of receiving Ms. Kincade's email, Plaintiff sought Defendant's consent to mutually dismiss the action. ECF No. 37-3 at 18, 20–21. The subsequent delay that followed in entering the proposed dismissal resulted mostly, if not exclusively, from Defendant's non-responsiveness and requests for unrelated discovery. *Id.* at 20–21. And even before that point, SLG demonstrated a willingness to resolve the action through mediation and other settlement discussions, further suggesting SLG had no intention of needlessly prolonging the case.

---

[4] Defendant also argues that SLG did not properly register the copyrights at issue, which listed Siegel as the sole owner, rather than reflecting joint ownership between him and NYT. Mem. at 2. At the June 25, 2025 oral argument, SLG appeared to concede this fact. Still, the Court denies this fact alone as a basis for sanctions. The record does not indicate SLG knowingly registered the copyrights improperly, because, as discussed *supra*, SLG had no knowledge of Siegel's freelance agreement with NYT. Moreover, SLG could have filed amended registrations if necessary, and in any event, the amended registration would not undermine the fact of Plaintiff's valid interest in the copyright (and ability to sue to protect that interest). At most, SLG was negligent with the registrations, and as stated previously, that will not suffice to warrant sanctions.

Because the Court finds no evidence of bad faith by SLG, Defendant's motion for sanctions under Section 1927 is denied. *See Appel v. Hayut*, No. 20-CV-6265 (JPC), 2022 WL 214450, at *7 (S.D.N.Y. Jan. 25, 2022) (declining to impose Section1927 sanctions due to lack "of [a] clear and specific showing of bad faith" by the attorney).

## II.    Defendant Is Not Entitled to Fees Under the Copyright Act

The Court also denies Defendant's application for fees under the Copyright Act as against Plaintiff. An award of attorney's fees under Section 505 is not automatic. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (confirming that Section 505 did not enact the "British Rule" for automatic recovery of attorney's fees by the prevailing party and fees may only be awarded in court's discretion). The Supreme Court has advised district courts to "focus on the objective unreasonableness of the losing party's arguments" and to consider the nonexclusive "*Fogerty*" factors—frivolousness, motivation, unreasonableness, and the need for compensation and deterrence—before granting a fees application. *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 764 F. App'x 39, 41 (2d Cir. 2019). However, while the "unreasonableness" of the parties' position is an "important factor," it is not the controlling one. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 208–09 (2016). Ultimately, Section 505 still provides broad discretion and leeway to district courts in awarding attorney's fees.

Here, the *Fogerty* factors do not weigh in favor of a fee award. As previously mentioned, Siegel has credibly represented that he did not know of Sing Tao's licensing arrangement before July 2024, and the evidence presented to date supports this conclusion. Plaintiff filed an action based on the information reasonably known to him at the time: namely, that his photographs appeared on a website which did not have any apparent authorization to do so. Plaintiff brought this action in good faith, and simply found out later that he was mistaken. The Court therefore

cannot find that his position *when bringing this suit* was "clearly without merit or otherwise patently devoid of [a] legal or factual basis." *Hello I Am Elliot, Inc. v. Sine*, No. 19-CV-6905 (PAE), 2021 WL 1191971, at *9 (S.D.N.Y. Mar. 30, 2021) (cleaned up); *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999) (reversing imposition of sanctions under Section 1927 and holding that "a claim is colorable when it has some legal and factual support, considered in light of the *reasonable beliefs of the individual making the claim*.") (cleaned up and internal citation omitted) (emphasis added).

Still, Defendant argues Plaintiff should have known that Sing Tao had a license to use his photographs, pointing to the fact that Siegel admits he signed the agreement with NYT and did not examine it further. However, the agreement itself does not mention Sing Tao, and even if Plaintiff had consulted the agreement again before filing suit, it would not have alerted him to NYT's arrangement with Sing Tao.

Defendant also blames Plaintiff for not doing further due diligence to understand Sing Tao's relationship with NYT and its use of the photographs. However, Plaintiff reasonably relied on SLG for advice about infringement. Furthermore, Defendant's fee application undermines any argument that Plaintiff, a non-attorney, should have known about the license. As reflected in counsel's fee request, it took Defendant's counsel, an experienced copyright attorney, several months and more than 60 hours of attorney time before she confirmed through NYT that Sing Tao had a license to use the photographs. *See generally* ECF No. 70-1 (hours from April 15, 2024 through July 17, 2024).

The Court also sees little opportunity for meaningful "deterrence" or a substantial need for compensation. While Plaintiff appeared to monitor various sources for potential infringement of his photographs, nothing in the record demonstrates he has a propensity for filing

infringement suits, let alone frivolous ones. Ultimately, a reasonably mistaken belief, rather than bad faith or impropriety, explains Plaintiff's previous choice to bring this action.

With respect to compensation, "[a]n award can encourage parties to vindicate and protect their legitimate rights and discourage bad actors from infringing copyrights and bringing frivolous and unreasonable claims." *Hello I Am Elliot, Inc.*, 2021 WL 1191971, at *8. But as discussed above, the record is devoid of any suggestion that Plaintiff regularly files frivolous and unreasonable claims. Indeed, despite Defendant's arguments about copyright registration, the parties do not dispute that Siegel has a valid and legitimate right in the photographs that he shares with NYT.

Furthermore, although Defendant spent over $225,000 on attorney's fees, most of the fees incurred were unreasonable or unnecessary. Defendant seeks this exorbitant fee award in an action where no initial pretrial conference was held, no depositions were taken, no written discovery was requested or exchanged, and no dispositive motions were briefed or argued. In fact, more than half of Defendant's requested fees—approximately $120,000, which itself is an excessive amount—was spent by counsel in preparing *this motion* after the action was *voluntarily dismissed*. Other issues with the fee request include, but are not limited to, Defendant's counsel spending:

- over 5 attorney hours to submit one *pro hac vice* motion;

- over 10 attorney hours related to communications with the New York Times to confirm Sing Tao's license to use the photographs;

- over 26 hours between two attorneys and a paralegal on "analysis and strategy" and fact investigation in a simple case where Defendant had a license to use the photographs;

- over 8 hours of attorney time on "mediation scheduling"; and

11

- nearly 30 hours in preparation for a less than 30-minute conference about voluntarily dismissing the case.

The unreasonableness of the amount billed by Defendant's counsel is apparent, and there is no need to compensate Defendant for the work its counsel created. In short, because a fee award "would not further the Copyright Act's goals" here, the Court denies Defendant's motion. *Hello I Am Elliot*, 2021 WL 1191971, at *9 (denying defendant's fees motion).

## CONCLUSION

For the foregoing reasons, Defendant's application is DENIED, and the Clerk of Court is respectfully directed to terminate ECF Nos. 37 and 38.

Dated:  July 9, 2025
        New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge